# Plan Exhibit 8

Restated Certificate of Incorporation

[THIS PAGE INTENTIONALLY LEFT BLANK]

# SIXTH AMENDED AND RESTATED CERTIFICATE OF INCORPORATION
# OF
# AFFILIATED MEDIA, INC.

I, the undersigned, for the purpose of restating the certificate of incorporation of Affiliated Media, Inc. (hereinafter referred to as the "**Corporation**"), originally incorporated on January 25, 1994, under the General Corporation Law of the State of Delaware (the "**DGCL**"), do hereby certify that the Corporation has duly adopted the following Sixth Amended and Restated Certificate of Incorporation:

This Sixth Amended and Restated Certificate of Incorporation (this "**Certificate of Incorporation**") restates, integrates and further amends the Certificate of Incorporation of the Corporation as heretofore amended or supplemented under the DGCL pursuant to the Chapter 11 Plan of Reorganization (as it may be amended from time to time, the "**Plan**") for Affiliated Media, Inc., confirmed by the United States Bankruptcy Court for the District of Delaware ("**Bankruptcy Court**") in the case under chapter 11 of title 11 of the United States Code, as amended from time to time, ("**Bankruptcy Code**"), commenced by the Debtor (as defined in the Plan) in the Bankruptcy Court and styled *In re Affiliated Media, Inc.*, No. [_] (_). This Certificate of Incorporation has been duly adopted in accordance with Section 303 of the DGCL, pursuant to the authority granted to the Corporation under Section 303 of the DGCL to put into effect and carry out the Plan with the approval of the Bankruptcy Court under the Bankruptcy Code.

**FIRST:** The name of the Corporation is MediaNews Group, Inc.

**SECOND:** The address of the Corporation's registered office in the State of Delaware is 2711 Centerville Road, Suite 400, City of Wilmington, County of New Castle, Delaware 19808. The name of its registered agent at such address is Corporation Service Company.

**THIRD:** The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the DGCL.

**FOURTH:** The total number of shares of stock which the Corporation shall have authority to issue is [___], consisting of three shares of Class A Common Stock, par value of $0.001 per share ("**Class A Common Stock**"), [___] shares of Class B Common Stock, par value $0.001 per share ("**Class B Common Stock**,"), [___] shares of Class C Common Stock, par value $0.001 per share ("**Class C Common Stock**," together with the Class A Common Stock and Class B Common Stock, the "**Common Stock**") and [___] shares of Preferred Stock, par value $0.001 per share (the "**Preferred Stock**"). The Board of Directors of the Corporation (the "**Board**") is hereby empowered to authorize by resolution or

resolutions from time to time the issuance of one or more classes or series of Preferred Stock and to fix the designations, powers, preferences and relative, participating, optional or other rights, if any, and the qualifications, limitations or restrictions thereof, if any, with respect to each such class or series of Preferred Stock and the number of shares constituting each such class or series, and to increase or decrease the number of shares of any such class or series to the extent permitted by the DGCL. The Corporation shall not issue any class of non-voting equity securities until and unless a majority of the Board determines that it is no longer in the best interests of the Corporation for such prohibition to be effective. The Corporation shall publicly disclose such determination within a reasonable time after any such determination.

SECTION 1.   <u>Voting Rights</u>

(a)   <u>Class A Common Stock</u>. Subject to Section 1(e) of this Article FOURTH, each holder of Class A Common Stock is entitled to one vote for each share of Class A Common Stock held by such holder of record on the books of the Corporation on all matters on which stockholders of the Corporation are entitled to vote, voting together as a single class with the holders of Class B Common Stock and, to the extent the holders of Class C Common Stock are entitled to vote on the matter being voted on pursuant to Section 1(c) of this Article FOURTH, the holders of Class C Common Stock, *provided* that the holders of Class A Common Stock shall be entitled to vote as a separate class on any amendment, repeal or modification of any provision of this Certificate of Incorporation (whether directly or indirectly by amendment, merger, consolidation or otherwise) that adversely affects their respective powers, preferences or special rights in a manner differently from the adverse effect on the powers, preferences or special rights of any other class of Common Stock.

(b)   <u>Class B Common Stock</u>. Subject to Section 1(e) of this Article FOURTH, each holder of Class B Common Stock is entitled to one vote for each share of Class B Common Stock held by such holder of record on the books of the Corporation on all matters on which stockholders of the Corporation are entitled to vote, voting together as a single class with the holders of Class A Common Stock and, to the extent the holders of Class C Common Stock are entitled to vote on the matter being voted on pursuant to Section 1(c) of this Article FOURTH, the holders of Class C Common Stock, *provided* that the holders of Class B Common Stock shall be entitled to vote as a separate class on any amendment, repeal or modification of any provision of this Certificate of Incorporation (whether directly or indirectly by amendment, merger, consolidation or otherwise) that adversely affects their respective powers, preferences or special rights in a manner differently from the adverse effect on the powers, preferences or special rights of any other class of Common Stock.

(c)   <u>Class C Common Stock</u>. Except as otherwise required by law, the holders of Class C Common Stock are not entitled to vote on any matter submitted to a vote of the stockholders of the Corporation, *provided* that (i) each

holder of Class C Common Stock is entitled to one vote for each share of Class C Common Stock held by such holder of record on the books of the Corporation, voting together with the holders of Class B Common Stock (and, to the extent the holders of Class A Common Stock are entitled to vote on the matter being voted on pursuant to Section 1(a) of this Article FOURTH, the holders of Class A Common Stock) as a single class on an "as converted" basis, on the following non-ordinary course transactions to the extent (if any) that the holders of Class B Common Stock have the right to vote thereon: (A) any authorization of, or increase in the number of authorized shares of, any class of capital stock of the Corporation ranking *pari passu* with or senior to the Common Stock as to dividends or liquidation preference; (B) any amendment to this Certificate of Incorporation or Section 3.02 of the Bylaws (as defined below); (C) any sale, lease or other disposition of all or substantially all of the assets of the Corporation and its subsidiaries in a single transaction or a series of related transactions; (D) any recapitalization, reorganization, consolidation or merger of the Corporation; (E) any issuance or entry into an agreement to issue capital stock of the Corporation or any options or other securities convertible into capital stock of the Corporation, except as may be provided for under the equity incentive plan contemplated by the Plan; and (F) any redemption, purchase or other acquisition by the Corporation of any of its capital stock or any options or other securities convertible into its capital stock (except for purchases from employees upon termination of employment) and (ii) the holders of Class C Common Stock shall be entitled to vote as a separate class on any amendment, repeal or modification of any provision of this Certificate of Incorporation (whether directly or indirectly by amendment, merger, consolidation or otherwise) that adversely affects the powers, preferences or special rights of the Class C Common Stock in a manner different from the adverse effect on the powers, preferences or special rights of any other class of Common Stock, voting as a separate class.

(d) Board. Except as otherwise provided in the DGCL, and subject to the terms and provisions of the Stockholders' Agreement, dated as of [●], 2009, of the Corporation (as such may be amended from time to time), the business and affairs of the Corporation shall be managed by or under the direction of the Board, *provided* that prior to the Class A Full Conversion Date (as defined below), the Class B Directors shall have the sole and exclusive power and authority to take the following actions by affirmative majority vote or written consent: (i) terminate the employment of either William Dean Singleton or Joseph J. Lodovic, or both, as the case may be, at any time and with or without cause; and (ii) approve any agreements or arrangements entered into by the Corporation or any of its subsidiaries with William Dean Singleton or Joseph J. Lodovic, as the case may be, in connection with any such termination, including any settlement entered into in connection with their respective employment agreements, *provided* that the rights of the Class B Directors in this Subsection (d) shall in no way limit the rights of Messrs. Singleton or Lodovic under any such agreement or arrangement.

(e) <u>Board Elections</u>. With respect to the election of directors of the Corporation, (i) prior to the date on which all Class A Common Stock has been converted to Class B Common Stock pursuant to Section 4(a) of this Article FOURTH (the "**Class A Full Conversion Date**"), (A) the holders of record of the Class A Common Stock, exclusively and as a separate class, shall be entitled to elect four directors (the "**Class A Directors**"), *provided* that each such Director must be a Qualified Individual, and (B) the holders of record of the shares of the Class B Common Stock, exclusively and as a separate class, shall be entitled to elect three directors (the "**Class B Directors**"), *provided* that each such Director must be a Qualified Individual, and (ii) from and after the Class A Full Conversion Date, the holders of record of the shares of the Class B Common Stock, exclusively and as a separate class, shall be entitled to elect the total number of directors of the Corporation. Any director elected as provided in the preceding sentence may be removed with or without cause by, and only by, the affirmative vote or written consent of the holders of a majority of the shares of the class entitled to elect such director, given either at an annual meeting of stockholders, a special meeting of such stockholders duly called for that purpose or pursuant to a written consent of such stockholders, *provided* that following the Class A Full Conversion Date (i) each Class A Director shall thereafter serve until his successor is duly elected and qualified or until his earlier resignation or removal and (ii) each Class A Director may be removed with or without cause by the affirmative vote or written consent of the majority of the Class B Directors or of the holders of a majority of the shares of Class B Common Stock. A vacancy in any directorship shall be filled only by vote or written consent in lieu of a meeting of the holders of the class entitled to elect such director pursuant to the first sentence of this Subsection (e) or by any remaining director or directors elected by the holders of such class pursuant to the first sentence of this Subsection (e).

SECTION 2. <u>Dividend Rights</u>. The holders of shares of each class of Common Stock shall be entitled to receive, share for share with the holders of each other class of Common Stock, dividends payable either in cash, in stock or otherwise when and if declared by the Board, out of the assets of the Corporation which are by law available therefor, *provided* that if the dividends declared are payable in shares of Class B Common Stock or Class C Common Stock, such dividends will be declared at the same rate on each class of Common Stock, and the dividends payable in Class B Common Stock will be paid only to holders of Class A Common Stock and Class B Common Stock and the dividends payable in Class C Common Stock will be paid only to holders of Class C Common Stock. No dividends will be payable in Class A Common Stock.

SECTION 3. <u>Liquidation Rights</u>. In the event of the voluntary or involuntary liquidation, dissolution, distribution of assets or winding-up of the Corporation, the holders of the shares of each class of Common Stock shall be entitled to receive, share for share with the holders of shares of each other class of Common Stock, all the assets of the Corporation of whatever kind available for

4

distribution to stockholders on a pro rata basis. A consolidation or merger of the Corporation with or into any other corporation or corporations shall not be deemed to be a liquidation, dissolution or winding-up of the Corporation as those terms are used in this Section 3 of this Article FOURTH.

SECTION 4. Conversion

(a) Mandatory Conversion of Class A Common Stock. (i) (A) Immediately prior to the consummation of a Qualified Public Offering, (B) on the date specified by the Class B Directors following termination of William Dean Singleton's employment with the Corporation (which date must be within six months after such termination if Joseph J. Lodovic's employment has been terminated concurrently with or prior to such termination), (C) on the date specified by the Class B Directors following termination of Joseph J. Lodovic's employment with the Corporation (which date must be within six months after such termination if William Dean Singleton's employment has been terminated concurrently with or prior to such termination) or (D) upon a determination by a majority of the Class B Directors to convert all of the shares of Class A Common Stock to Class B Common Stock (each a "**Class A Conversion Event**"), all outstanding shares of Class A Common Stock, or in the case of clause (B) or (C) in this Subsection (a)(i), only the shares held by such person (or any transferee of such person), shall automatically be converted into an equal number of fully paid and nonassessable shares of shares of Class B Common Stock.

(ii) Each holder of record of shares of Class A Common Stock whose shares are subject to mandatory conversion shall be given written notice of each Class A Conversion Event and the place designated for mandatory conversion of all such shares of Class A Common Stock pursuant to this Section 4(a) of this Article FOURTH. Such notice need not be given in advance of the occurrence of the Class A Conversion Event. Such notice shall be sent by first class or registered mail, postage prepaid, or given by electronic communication in compliance with the provisions of the DGCL, to each such record holder of Class A Common Stock. Upon receipt of such notice, each such holder of shares of Class A Common Stock shall surrender such shares in the manner designated in such notice (and, if such shares are held in certificated form, delivery and surrender to the Corporation of the certificates representing such shares of Class A Common Stock to be so converted), and shall thereafter receive the number of shares of Class B Common Stock to which such holder is entitled pursuant to this Section 4(a) of this Article FOURTH. On the date of a Class A Conversion Event, the applicable shares of Class A Common Stock shall be deemed to have been converted into Class B Common Stock, which shall be deemed to be outstanding of record, and all rights with respect to such Class A Common Stock so converted, including the rights, if any, to receive notices and vote (other than as a holder of Class B Common Stock) and such right to elect directors pursuant to Section 1(d)(i)(A) of this Article FOURTH, will terminate, except only the rights of the holders thereof, upon surrender of their shares (or, if such shares in held in certificated form, delivery and surrender to the Corporation of the

5

certificates representing such shares of Class A Common Stock), to receive the number of shares of Class B Common Stock to which such holder is entitled pursuant to this Section 4(a) of this Article FOURTH. If so required by the Corporation, each share surrendered for conversion shall be endorsed or accompanied by written instrument or instruments of transfer, in form satisfactory to the Corporation, duly executed by the registered holder or by his, her or its attorney duly authorized in writing. As soon as practicable after the date of a Class A Conversion Event and the surrender of shares of Class A Common Stock, the Corporation shall cause to be issued and delivered to such holder, or on his, her or its written order, the number of full shares of Class B Common Stock issuable on such conversion in accordance with the provisions hereof.

(iii) Any certificates evidencing shares of Class A Common Stock that are required to be surrendered for conversion in accordance with the provisions hereof shall, from and after the date of the related Class A Conversion Event and until such surrender be deemed to represent the number of shares of Class B Common Stock into which the shares of Class A Common Stock represented thereby were converted.

(iv) From and after the Class A Full Conversion Date, (A) the Common Stock shall consist only of Class B Common Stock and Class C Common Stock and (B) the first proviso in Section 1(d) of this Article FOURTH will have no effect and without further action by any person be deemed removed from this Certificate of Incorporation.

(b) <u>Conversion Rights for Class B Common Stock</u>. (i) Subject to this Section 4(b) of this Article FOURTH, each share of Class B Common Stock shall be convertible, at the option of the holder thereof, at any time after the date of issuance of such share at the office of the Corporation or any transfer agent into an equal number of fully paid and nonassessable shares of Class C Common Stock, *provided* that such conversion shall not be permitted if, following and after giving effect to such conversion, no shares of Class B Common Stock would remain outstanding.

(ii) To effect a conversion of shares of Class B Common Stock, the holder of such shares of Class B Common Stock shall deliver signed written notice (or other such reasonable means as the Corporation may establish) to the Corporation specifying the number of shares to be converted (and, if such shares are held in certificated form, delivery and surrender to the Corporation of the certificates representing the shares of Class B Common Stock so converted), and shall thereafter receive the number of shares of Class C Common Stock to which such holder is entitled pursuant to Section 4(b) of this Article FOURTH.

(iii) On the date on which any share of Class B Common Stock is surrendered to the Corporation, such shares of Class B Common Stock shall be deemed to have been converted into Class C Common Stock, which shall be deemed to be outstanding of record, and all rights with respect to such Class B

6

Common Stock so converted, including the rights, if any, to receive notices and vote (other than as a holder of Class C Common Stock) and the right to elect directors pursuant to Section 1(d) of this Article FOURTH, will terminate, except only the rights of the holders thereof to receive the number of shares of Class C Common Stock to which such holder is entitled pursuant to Section 4(b) of Article FOURTH. If so required by the Corporation, each share of Class B Common Stock surrendered for conversion shall be endorsed or accompanied by written instrument or instruments of transfer, in form satisfactory to the Corporation, duly executed by the registered holder or by his, her or its attorney duly authorized in writing. As soon as practicable after the date of the surrender of shares of Class B Common Stock, the Corporation shall cause to be issued and delivered to such holder, or on his, her or its written order, the number of full shares of Class C Common Stock issuable on such conversion in accordance with the provisions hereof.

(c) <u>Conversion Rights for Class C Common Stock</u>. (i) Subject to this Section 4(c) of this Article FOURTH and any applicable rules of the Federal Communications Commission, each share of Class C Common Stock shall be convertible, at the option of the holder thereof, at any time after the date of issuance of such share at the office of the Corporation or any transfer agent into an equal number of fully paid and nonassessable shares of Class B Common Stock.

(ii) To effect a conversion of shares of Class C Common Stock, the holder of such shares of Class C Common Stock shall deliver signed written notice (or other such reasonable means as the Corporation may establish) to the Corporation specifying the number of shares to be converted (and, if such shares are held in certificated form, delivery and surrender to the Corporation of the certificates representing the shares of Class C Common Stock so converted), and shall thereafter receive the number of shares of Class B Common Stock to which such holder is entitled pursuant to Section 4(c) of this Article FOURTH.

(iii) On the date on which any share of Class C Common Stock is surrendered to the Corporation, such shares of Class C Common Stock shall be deemed to have been converted into Class B Common Stock, which shall be deemed to be outstanding of record, and all rights with respect to such Class C Common Stock so converted, including the rights, if any, to receive notices and vote (other than as a holder of Class B Common Stock), will terminate, except only the rights of the holders thereof to receive the number of shares of Class B Common Stock to which such holder is entitled pursuant to this Section 4(c) of this Article FOURTH. If so required by the Corporation, each share of Class C Common Stock surrendered for conversion shall be endorsed or accompanied by written instrument or instruments of transfer, in form satisfactory to the Corporation, duly executed by the registered holder or by his, her or its attorney duly authorized in writing. As soon as practicable after the date of the surrender of shares of Class C Common Stock, the Corporation shall cause to be issued and delivered to such holder, or on his, her or its written order, the number of full

shares of Class B Common Stock issuable on such conversion in accordance with the provisions hereof.

(d) <u>In Connection with an Underwritten Offering</u>. (i) If the conversion pursuant to Sections 4(b) and (c) of this Article FOURTH is in connection with a Public Offering the conversion may, at the option of any holder tendering such Class B Common Stock or Class C Common Stock, as applicable, for conversion, be conditioned upon the closing with the underwriters of the sale of securities pursuant to such offering, in which event the person(s) entitled to receive Class B Common Stock or Class C Common Stock, as applicable, upon conversion of Class B Common Stock or Class C Common Stock, as applicable, shall not be deemed to have converted such Class B Common Stock or Class C Common Stock, as applicable, until immediately prior to the closing of such sale of securities.

(e) <u>Protection of Conversion Rights</u>. The Corporation will not, by amendment of its Certificate of Incorporation or through any reorganization, recapitalization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms to be observed or performed under Section 4 of this Article FOURTH by the Corporation, but will at all times in good faith assist in the carrying out of all the provisions of this Article FOURTH and in the taking of all such action as may be necessary or appropriate in order to protect the conversion rights under Sections 4(b) and 4(c) of this Article FOURTH of the holders of Common Stock against impairment.

(f) <u>Reserved Class B and Class C Common Stock</u>. The Corporation shall at all times reserve and keep available out of its authorized but unissued shares of Class B Common Stock and Class C Common Stock, solely for the purpose of effecting the conversions provided for in this Section 4 of this Article FOURTH, such number of shares of Class B Common Stock and such number of shares of Class C Common Stock, respectively, as shall from time to time be sufficient to effect the conversion provided for in this Section 4 of this Article FOURTH and if at any time the number of authorized but unissued shares of Class B Common Stock or Class C Common Stock shall not be sufficient to effect the conversion of any class of Common Stock, the Corporation shall take such corporate action as may be necessary to increase its authorized but unissued shares of Class B Common Stock or Class C Common Stock, as the case may be, to such number of shares as shall be sufficient for such purpose.

(g) <u>Transfer Taxes</u>. If any shares of so converted Class B Common Stock or Class C Common Stock is to be issued in a name other than that in which such shares of Common Stock surrendered for conversion thereof is registered, the person requesting the issuance shall pay any transfer or other taxes required by reason of the issuance of such shares of Class B Common Stock or Class C Common Stock in a name other than that of the record holder of the shares surrendered, or establishes, to the satisfaction of the Corporation or its agent, that

8

such tax has been paid or is not applicable. Under no circumstances shall the Corporation be liable to (A) a holder of shares of Class A Common Stock or Class C Common Stock for any shares of Class B Common Stock or dividends or distributions thereon delivered to a public official pursuant to any applicable abandoned property, escheat or similar law and (B) a holder of shares of Class B Common Stock for any shares of Class C Common Stock or dividends or distributions thereon delivered to a public official pursuant to any applicable abandoned property, escheat or similar law.

SECTION 5. <u>Certain Definitions</u>

(a) "**Public Offering**" means any public offering of Common Stock, whether involving a primary offering, a secondary offering or a combined primary and secondary offering, pursuant to an effective registration statement under the Securities Act other than pursuant to a registration statement on Form S-4 or Form S-8 or any successor or similar form.

(b) "**Qualified Individual**" means [independence and other criteria to come], *provided* that William Dean Singleton and Joseph J. Lodovic shall be deemed Qualified Individuals.

(c) "**Qualified Public Offering**" means an underwritten Public Offering involving the sale of at least 15% of the outstanding Common Stock of the Corporation after giving effect to such Public Offering.

(d) "**Securities Act**" means the Securities Act of 1933 and all rules, regulations and orders issued thereunder, as any of the same may be amended from time to time.

**FIFTH:** Except as set forth in the bylaws of the Corporation (as amended from time to time, the "**Bylaws**") or any agreement between the Corporation and one or more of its stockholders, the Board shall have the power to adopt, amend or repeal the Bylaws.

**SIXTH:** Election of directors need not be by written ballot unless the Bylaws so provide.

**SEVENTH:** The Corporation expressly elects not to be governed by Section 203 of the DGCL.

**EIGHTH:**

SECTION 1. <u>Director Liability</u>. (a) A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or

a knowing violation of law, (iii) under Section 174 of the DGCL, or (iv) for any transaction from which the director derived an improper personal benefit. If the DGCL is amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the DGCL, as so amended.

(b) Any repeal or modification of the foregoing paragraph shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification.

SECTION 2.  Indemnification

(a)  Each person (and the heirs, executors or administrators of such person) who was or is a party or is threatened to be made a party to, or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "**proceeding**"), by reason of the fact that such person is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee, fiduciary or other agent of another corporation or of a partnership, joint venture, trust, employee benefit plan or other enterprise (hereinafter an "**indemnitee**"), whether the basis of such proceeding is alleged action in an official capacity or in any other capacity, shall be indemnified and held harmless by the Corporation to the fullest extent permitted by the DGCL, as the same exists or may hereafter be amended (but, in the case of such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than such law permitted the Corporation to provide prior to such amendment), *provided* that, except as otherwise provided in the Bylaws, the Corporation shall indemnify any such indemnitee in connection with a proceeding (or part thereof) initiated by such indemnitee only if such proceeding (or part thereof) was authorized by the board of directors of the Corporation. The indemnitee shall also have the right to be paid by the Corporation the expenses incurred in connection with any such proceeding in advance of its final disposition to the fullest extent authorized by the DGCL and the Bylaws. The rights to indemnification and advancement conferred in this Article EIGHTH shall be contract rights.

(b)  The Corporation may, by action of its Board, provide indemnification and advancement to such of the employees and agents of the Corporation to such extent and to such effect as the Board shall determine to be appropriate and authorized by the DGCL.

SECTION 3.  Insurance. The Corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or

loss asserted against such person and incurred by such person in any such capacity or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under the DGCL.

SECTION 4. <u>Exclusivity</u>. The rights and authority conferred in this Article EIGHTH shall not be exclusive of any other right which any person may otherwise have or hereafter acquire.

SECTION 5. <u>Absolute Protection</u>. Neither the amendment nor repeal of this Article EIGHTH, nor the adoption of any provision of this Certificate of Incorporation or the Bylaws, nor, to the fullest extent permitted by the DGCL, any modification of law, shall adversely affect any right or protection of any person granted pursuant hereto existing at, or arising out of or related to any event, act or omission that occurred prior to, the time of such amendment, repeal, adoption or modification (regardless of when any proceeding (or part thereof) relating to such event, act or omission arises or is first threatened, commenced or completed).

**NINTH:** The Corporation reserves the right to amend this Certificate of Incorporation in any manner permitted by the DGCL and all rights and powers conferred herein on stockholders, directors and officers, if any, are subject to this reserved power.

      IN WITNESS WHEREOF, the undersigned has executed this Certificate of Incorporation this _____ day of _____, 20__.

                                              _____
                                              [Name]
                                              Incorporator