THE SOLICITATION OF VOTES THROUGH THE DISCLOSURE STATEMENT TO THE PREPACKAGED PLAN SUPPLEMENTED HEREBY (THE "SOLICITATION") IS BEING CONDUCTED TO OBTAIN ACCEPTANCES OF THE PREPACKAGED PLAN UPON THE FILING OF A VOLUNTARY REORGANIZATION CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE. THE DEBTOR HAS NOT COMMENCED A BANKRUPTCY CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AT THIS TIME. BECAUSE A CHAPTER 11 CASE HAS NOT YET BEEN COMMENCED, THE DISCLOSURE STATEMENT (AS HERETOFORE AND PREVIOUSLY SUPPLEMENTED) HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE. FOLLOWING THE COMMENCEMENT OF ITS CHAPTER 11 CASE, THE DEBTOR EXPECTS TO PROMPTLY SEEK ORDERS OF THE BANKRUPTCY COURT (i) APPROVING THE DISCLOSURE STATEMENT (AS HERETOFORE AND PREVIOUSLY SUPPLEMENTED) AS CONTAINING ADEQUATE INFORMATION, (ii) APPROVING THE SOLICITATION OF VOTES AS BEING IN COMPLIANCE WITH SECTIONS 1125 AND 1126(b) OF THE BANKRUPTCY CODE AND (iii) CONFIRMING THE PREPACKAGED PLAN (AS HERETOFORE AND PREVIOUSLY SUPPLEMENTED).

THE SOLICITATION IS BEING MADE ONLY TO PERSONS WHO ARE "ACCREDITED INVESTORS" (AS DEFINED IN REGULATION D UNDER THE SECURITIES ACT OF 1933).

## SECOND SUPPLEMENT
## DATED JANUARY 9, 2010

### TO

## DISCLOSURE STATEMENT
## DATED DECEMBER 18, 2009

### AND

## THE PREPACKAGED PLAN OF REORGANIZATION
**(attached as Exhibit 1 to the Disclosure Statement dated December 18, 2009)**

### OF

# AFFILIATED MEDIA, INC.

### from the holders of outstanding

**Senior Loan Claims &**
**Subordinated Note Claims[1]**
**(CUSIP Numbers 58446MAE1 and 58446MAD3)**

HUGHES HUBBARD & REED LLP
Co-Counsel for the Debtor
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000

MORRIS NICHOLS ARSHT & TUNNELL LLP
Co-Counsel for the Debtor
1201 North Market Street, 18th Floor
P.O. Box 1347
Wilmington, DE 19899
Telephone: (302) 658-9200

THE VOTING DEADLINE TO ACCEPT OR REJECT THE PREPACKAGED PLAN HAS BEEN EXTENDED TO 5:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 15, 2010, UNLESS FURTHER EXTENDED BY THE DEBTOR IN A NOTICE PROVIDED TO ELIGIBLE VOTERS.

---

1.    Capitalized terms not otherwise defined in this Second Supplement have the meanings ascribed to them in the Prepackaged Plan and Disclosure Statement.

Affiliated Media, Inc., a Delaware corporation (the "**Debtor**" or "**AMI**"), submits this Second Supplement dated January 9, 2010 (the "**Second Supplement**") to the Disclosure Statement dated December 18, 2009 of Affiliated Media, Inc. (the "**Disclosure Statement**") and the Prepackaged Plan of Reorganization of Affiliated Media, Inc., dated December 18, 2009 (including all Plan Exhibits, the Plan Supplements, and the attached Exhibits, the "**Prepackaged Plan**") attached as Exhibit 1 to the Disclosure Statement, pursuant to section 1125 of title 11 of the United States Code, as now in effect or as hereafter amended, and rule 3017 of the Federal Rules of Bankruptcy Procedure, as now in effect or as hereafter amended.

The voting deadline to accept or reject the Prepackaged Plan has been extended from 5:00 P.M., prevailing Eastern time, on January 13, 2010 to **5:00 P.M., prevailing Eastern time, on January 15, 2010**.

Holders of Subordinated Notes, representing approximately 60% of the total amount of the Subordinated Note Claims, have advised AMI that they support the Prepackaged Plan in principle, subject to review of the Warrant Agreement attached to this Second Supplement.

The following Exhibits to the Prepackaged Plan are amended as follows:

1. **Amended Plan Exhibit 9**:  Plan Exhibit 9 (Singleton Warrants Term Sheet) is amended to read in full in the form attached hereto.

2. **Amended Plan Exhibit 11**:  Plan Exhibit 11 (Subordinated Note Warrants Term Sheet) is amended to read in full in the form attached hereto.

The form of Warrant Agreement to be issued to holders of Subordinated Note Claims (Class 5) if they vote to accept the Prepackaged Plan is attached hereto as Plan Exhibit 12 to the Prepackaged Plan (but, along with the Subordinated Note Warrants Term Sheet, will have no authorization, force or effect or be binding in any way on the Debtor if the Subordinated Note Claims (Class 5) do not vote in the numbers and amounts required by section 1126(c) of the Bankruptcy Code to accept the Prepackaged Plan).

FOR A COMPLETE UNDERSTANDING OF THE PREPACKAGED PLAN, YOU SHOULD READ THE DISCLOSURE STATEMENT (AS HERETOFORE AND PREVIOUSLY SUPPLEMENTED) [2], THE PREPACKAGED PLAN (AS HERETOFORE AND PREVIOUSLY SUPPLEMENTED) AND THE EXHIBITS THERETO.

If you have any questions about (a) the procedure for voting on your Class 2 or 5 Claim, (b) the package of materials that you have received or (c) the amount of your Claim, or if you wish to obtain an additional copy of the Disclosure Statement, the Prepackaged Plan, the First Supplement thereto or this Second Supplement or any exhibits to such documents, please contact the Voting Agent at:

Epiq Bankruptcy Solutions, LLC
Phone:  (646) 282-1800
E-mail: FBG@epiqsystems.com

---

2.    The Disclosure Statement and the Prepackaged Plan were previously supplemented by the First Supplement to the Disclosure Statement dated January 6, 2010.

# Plan Exhibit 9

Singleton Warrants Term Sheet

## Term Sheet for Singleton Warrants

| | |
|---|---|
| **Issuer**: | Debtor |
| **Expiration Date**: | Five years from the Effective Date. |
| **Exercise Price**: | An exercise price per share equal to (w) 1.1 <u>multiplied by</u> (x) an amount equal to the aggregate Allowed Amount of the Senior Loan Claims as specified in Section 4.2 of the Prepackaged Plan (i.e., $590 million; <u>provided</u> that the Senior Lender Emergence Payment is paid in full on the Effective Date as required by the Prepackaged Plan) <u>minus</u> $6.375 million <u>minus</u> $150 million <u>divided by</u> (y) the number of shares of New Common Stock issued to the Senior Lenders on the Effective Date. |
| **Amount:** | 8%[1] |
| **Exercisability**: | Each warrant will entitle the holder thereof to purchase from the Debtor one fully paid and nonassessable share of Class B New Common Stock at a price equal to the Exercise Price. All or any of the warrants may be exercised prior to the Expiration Date by surrendering the related warrant certificates to the Company, accompanied by payment in full in respect of each warrant that is exercised. |
| **Anti-dilution**: | Customary adjustments for stock splits, stock dividends, mergers and stock reorganizations. |
| **Stockholders' Agreement**: | Subject to the terms and conditions of the Stockholders' Agreement, including the transfer restrictions set forth therein. |
| **Governing Law**: | State of New York. |

---

1.    Calculated after giving effect to (i) the issuance of the total number of shares of Class B New Common Stock and Class C New Common Stock to be issued to the Senior Lenders on the Effective Date, (ii) the issuance of the full 12% of the equity ownership of Reorganized AMI reserved for issuance pursuant to the Equity Incentive Plan, (iii) exercise of the Subordinated Note Warrants in full and (iv) exercise of the Singleton Warrants in full.

# Plan Exhibit 11

Subordinated Note Warrants Term Sheet

**Term Sheet for Subordinated Note Warrants**

**Issuer**:               Debtor

**Expiration Date**:      Seven years from the Effective Date.

**Exercise Price**:       An exercise price per share equal to (x) an amount equal to the aggregate Allowed Amount of the Senior Loan Claims as specified in Section 4.2 of the Prepackaged Plan (i.e., $590 million; provided that the Senior Lender Emergence Payment is paid in full on the Effective Date as required by the Prepackaged Plan) minus $6.375 million minus $150 million divided by (y) the number of shares of New Common Stock issued to the Senior Lenders on the Effective Date.

**Amount:**              8.25%[1]

**Exercisability**:       Each warrant will entitle the holder thereof to purchase from the Debtor one fully paid and nonassessable share of Class B New Common Stock or Class C New Common Stock (at the election of the holder) at a price equal to the Exercise Price. All or any of the warrants may be exercised prior to the Expiration Date by surrendering the related warrant certificates to the Company, accompanied by payment in full in respect of each warrant that is exercised.

**Anti-dilution**:        Customary adjustments for stock splits, stock dividends, mergers and stock reorganizations.

**Sale of Company for Cash**  If the Company is sold for cash prior to expiration of the warrants, then the holders would be entitled to receive an amount in cash equal to the value thereof (determined in accordance with the Black Scholes option pricing model), not to exceed $2.5 million for all warrants.

**Stockholders' Agreement**:  Subject to the terms and conditions of the Stockholders' Agreement, including the transfer restrictions set forth therein.

**Governing Law**:        State of New York.

---

1.    Calculated after giving effect to (i) the issuance of the total number of shares of Class B New Common Stock and Class C New Common Stock to be issued to the Senior Lenders on the Effective Date, (ii) the issuance of the full 12% of the equity ownership of Reorganized AMI reserved for issuance pursuant to the Equity Incentive Plan and (iii) exercise of the Subordinated Note Warrants in full, but before giving effect to any exercise of the Singleton Warrants.

# Plan Exhibit 12

Warrant Agreement

WARRANT AGREEMENT


by


MEDIANEWS GROUP, INC.

AS ISSUER


in favor of

THE HOLDERS OF WARRANTS
REFERRED TO HEREIN


[●], 2010

# TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| Section 1. | | Certain Defined Terms | 1 |
| Section 2. | | Issuance of Warrants; Form, Execution and Delivery | 3 |
| | (a) | Issuance of Warrants | 3 |
| | (b) | Form of Warrant | 4 |
| | (c) | Execution of Warrants | 4 |
| | (d) | Stockholders' Agreement | 4 |
| Section 3. | | Warrant Registration; Transfer | 4 |
| | (a) | Registration | 4 |
| | (b) | Valid and Enforceable | 4 |
| | (c) | Endorsement | 4 |
| | (d) | No Service Charge | 5 |
| | (e) | Cancellation | 5 |
| | (f) | Treatment of Holders of Warrant Certificates | 5 |
| | (g) | Transfers | 5 |
| | (h) | Legends | 5 |
| Section 4. | | Duration and Exercise of Warrants | 6 |
| | (a) | Expiration Date | 6 |
| | (b) | Exercise Price | 6 |
| | (c) | Manner of Exercise | 6 |
| | (d) | Cashless Exercise | 7 |
| | (e) | When Exercise Effective | 7 |
| | (f) | Delivery of Certificates, Etc. | 7 |
| | (g) | Fractional Shares | 8 |
| | (h) | HSR Act | 8 |
| Section 5. | | Adjustment of Exercise Price and Number of Shares Purchasable or Number of Warrants | 9 |
| | (a) | Stock Dividends, Split-ups and Combinations of Shares | 9 |
| | (b) | Fundamental Transactions | 9 |
| | (c) | Special Dividends | 10 |
| | (d) | Notice of Adjustment in Exercise Price or Warrant Shares | 10 |

**TABLE OF CONTENTS**
**(continued)**

**Page**

(e)    No Change in Warrant Terms on Adjustment ..................................................... 10

(f)    Treasury Shares ................................................................................................. 10

Section 6.    Cancellation of Warrants ........................................................................ 10

Section 7.    Mutilated or Missing Warrant Certificates ............................................. 10

Section 8.    Reservation of Shares ............................................................................ 11

(a)    Reservation of Shares ........................................................................................ 11

(b)    Certain Actions .................................................................................................. 11

Section 9.    Notification of Certain Events ................................................................ 11

Section 10.    Warrantholder Not Deemed a Stockholder ............................................ 11

Section 11.    Notices to Company ............................................................................... 12

Section 12.    Supplements and Amendments ............................................................... 12

Section 13.    Successors and Assigns ......................................................................... 12

Section 14.    Termination ............................................................................................ 13

Section 15.    Governing Law and Consent to Jurisdiction ......................................... 13

Section 16.    WAIVER OF JURY TRIAL .................................................................. 13

Section 17.    Entire Agreement; Benefits of this Agreement ..................................... 13

Section 18.    Headings; Interpretation ........................................................................ 13

Section 19.    Information ............................................................................................. 14


Exhibit A    Form of Warrant Certificate ................................................................... A-1

## WARRANT AGREEMENT

This Warrant Agreement dated as of [●], 2010 (this **"Agreement"**) is made by MediaNews Group, Inc., a Delaware corporation, as issuer (the **"Company"**), in favor of the Holders (as defined below).

In connection with the financial restructuring of the Company pursuant to the Prepackaged Plan of Reorganization dated [●], 2010 (the **"Plan"**) under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§101, *et seq*., the Company has agreed to issue warrants, which, in the aggregate, are exercisable to purchase up to an aggregate of [●] shares (**"Shares"**) of the Company's Class B common stock, par value $[●] per share (**"Class B Common Stock"**), or Class C Common Stock, par value $[●] per share (**"Class C Common Stock"**), at the election of the holder thereof (such Class B Common Stock and Class C Common Stock referred to collectively as **"Common Stock"**), subject to adjustment as provided herein (the **"Warrants"**).

Pursuant to the Plan, the Company has agreed to exchange the Warrants in full satisfaction and discharge of the Subordinated Notes Claims (as defined in the Plan).

The Company desires to enter into this Agreement to set forth the terms and conditions of the Warrants and the rights of the holders thereof.

Accordingly, for good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Section 1.    <u>Certain Defined Terms</u>.  Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the meanings specified in this Section.

**"Affiliate"** has the meaning set forth in the Stockholders' Agreement.

**"Aggregate Exercise Price"** has the meaning specified in Section 4(c).

**"Agreement"** has the meaning specified in the preamble.

**"Alternate Consideration"** has the meaning specified in Section 5(b)(i).

**"Business Day"** means any date other than a Saturday or a Sunday or a day on which commercial banking institutions in New York City, New York are authorized or required by law to be closed; <u>provided</u>, <u>however</u>, that, in determining the period within which certificates or Warrants are to be issued and delivered at a time when shares of Common Stock (or Other Securities) are listed or admitted to trading on any national securities exchange or in the over-the-counter market and in determining Fair Value of any securities listed or admitted to trading on any national securities exchange or in the over-the-counter market, **"Business Day"** means any day when the principal exchange on which such securities are then listed or admitted to trading is open for trading or, if such securities are traded in the over-the counter market in the United States, such market is open for trading.

**"Class B Common Stock"** has the meaning specified in the recitals.

**"Class C Common Stock"** has the meaning specified in the recitals.

**"Common Stock"** has the meaning specified in the recitals.

**"Exchange Act"** means the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

**"Exercise Price"** means $[●], subject to adjustment pursuant to Section 5.

**"Expiration Date"** has the meaning specified in Section 4(a).

**"Fair Value"** means (a) with respect to Common Stock or any Other Security, in each case, if such security is listed on one or more stock exchanges, the average of the closing or last reported sales prices of a share of Common Stock or an Other Security, as the case may be, on the primary national or regional stock exchange on which such security is listed or (b) if the Common Stock or Other Security, as the case may be, is not so listed or quoted but is traded in the over-the-counter market, the average of the closing bid and asked prices of a share of such Common Stock or Other Security, in each case for the 20 Business Days (or such lesser number of Business Days as such Common Stock (or Other Security) shall have been so listed, quoted or traded) next preceding the date of measurement; provided, however, that if no such sales price or bid and asked prices have been quoted during the preceding 20-day period or there is otherwise no established trading market for such security, then "Fair Value" means the value of such Common Stock or Other Security as determined in good faith by the Board of Directors of the Company.

**"Fundamental Transaction"** means:  (a) any merger or consolidation of the Company with or into another Person; (b) any sale of all or substantially all of the assets of the Company in one or a series of related transactions; (c) any tender offer or exchange offer (whether by the Company or another Person) that is completed pursuant to which holders of a majority of Common Stock have tendered or exchanged their shares for securities, cash or other property; or (d) any reclassification or recapitalization of the Common Stock or any compulsory share exchange pursuant to which the Common Stock is effectively converted into or exchanged for securities, cash or other property.

**"Holder"** means the Person in whose name a Warrant is registered as set forth in the Warrant Register maintained by the Company.

**"HSR Act"** means the Hart-Scott-Rodino Antitrust Improvement Act of 1976, as amended.

**"IPO"** means an underwritten initial public offering of the Common Stock of the Company pursuant to an effective registration statement filed under the Securities Act.

**"Other Securities"** or **"Other Security"** means any stock (other than Common Stock) and other securities of the Company or any other Person (corporate or otherwise) that the holders of the Warrants at any time shall be entitled to receive or shall have received, upon the exercise of the Warrants, in lieu of or in addition to Common Stock, or that at any time shall be issuable

or shall have been issued in exchange for or in replacement of Common Stock or Other Securities.

**"Person"** means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint-stock company, trust or other entity.

**"Plan"** has the meaning specified in the recitals.

**"Securities Act"** means the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

**"Shares"** has the meaning specified in the recitals.

**"Special Dividend"** means (a) a cash dividend to the extent financed by the sale of assets, the incurrence of indebtedness or the issuance of equity or (b) a dividend consisting of a distribution of property (other than cash or pursuant to Section 5(a)).

**"Stockholders' Agreement"** means the Stockholders' Agreement dated as of the date of this Agreement among the Company and certain of its stockholders signatory thereto, as amended, modified, supplemented or restated from time to time.

"**Transfer**" means any sale, assignment, disposition, exchange, pledge, encumbrance, hypothecation or other transfer, including by merger, operation of law, bequest or pursuant to any domestic relations order, whether voluntarily or involuntarily and whether directly or indirectly.

**"Warrant Certificates"** has the meaning set forth in Section 2(b).

**"Warrant Register"** has the meaning set forth in Section 3(a).

**"Warrant Shares"** means the Shares issuable upon exercise of the Warrants.

**"Warrants"** means the Company's warrants issued pursuant to this Agreement to purchase Shares at the Exercise Price.

Section 2.    <u>Issuance of Warrants; Form, Execution and Delivery</u>.

(a)    <u>Issuance of Warrants</u>.  As soon as practicable following execution and delivery of this Agreement, the Company shall, pursuant to the Plan, deliver to the Company's disbursing agent under the Plan for re-distribution to the holders of Subordinated Note Claims an aggregate of [●] Warrants.  Each Warrant shall entitle the Holder, subject to the satisfaction of the conditions to exercise set forth in Section 4 hereof, to purchase from and after the date of issuance of Warrants to such Holder and until 5:00 p.m., New York City time, on the Expiration Date, one Share, subject to adjustment pursuant to Section 5, at the Exercise Price.  The number of Shares issuable on exercise of each Warrant and the Exercise Price are both subject to adjustment pursuant to Section 5 hereof.

(b)    <u>Form of Warrant</u>.  The certificates evidencing the Warrants (collectively, the **"Warrant Certificates"**) to be delivered pursuant to this Agreement and the forms of election to exercise and of assignment to be printed on the reverse thereof shall be in substantially the form set forth on <u>Exhibit A</u>, together with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Agreement, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with any law or with any rules made pursuant thereto or with any rules of any securities exchange or as may be determined, consistently herewith, by the officer or officers executing such Warrant Certificates, as evidenced by his, her or their execution of the Warrant Certificates.

The terms and provisions contained in the Warrants shall constitute, and are hereby expressly made, a part of this Agreement.  The Company, by its execution and delivery of this Agreement, expressly agrees to such terms and provisions and to be bound thereby.  However, to the extent any provision of any Warrant conflicts with the provisions of this Agreement, the provisions of this Agreement shall govern and be controlling.

(c)    <u>Execution of Warrants</u>.  Warrant Certificates shall be executed on behalf of the Company by its Chairman of the Board, Vice Chairman of the Board, President, any Vice President, General Counsel, Treasurer or Secretary, either manually or by facsimile signature printed thereon.

(d)    <u>Stockholders' Agreement</u>.  Pursuant to the Plan, each Person who is a Holder as of the date of this Agreement is deemed to be a party to, and bound by, the Stockholders' Agreement.  No Transfer of Warrants may be made unless the transferee has executed and delivered to the Company a Joinder Agreement (as defined in the Stockholders' Agreement).

Section 3.    <u>Warrant Registration; Transfer</u>.

(a)    <u>Registration</u>.  The Warrant Certificates shall be issued in registered form only and shall be registered in the names of the record Holders to whom they are to be delivered (any such delivery to a registered Holder will be at its last address as shown on the register of the Company).  The Company shall maintain or cause to be maintained a register in which it shall provide for the registration of Warrants and of transfers or exchanges of Warrant Certificates as provided in this Agreement (the **"Warrant Register"**).

(b)    <u>Valid and Enforceable</u>.  All Warrant Certificates issued upon any registration of transfer or exchange of Warrant Certificates in accordance with this Agreement shall be the valid obligations of the Company, evidencing the same obligations, and entitled to the same benefits under this Agreement, as the Warrant Certificates surrendered for such registration of transfer or exchange.

(c)    <u>Endorsement</u>.  Every Warrant Certificate surrendered for registration of transfer or exchange shall (if so required by the Company) be duly endorsed, or be accompanied by an instrument of transfer in form reasonably satisfactory to the Company and duly executed

by the registered Holder thereof or such Holder's officer or representative duly authorized in writing.

(d)     <u>No Service Charge</u>.  No service charge shall be made to a Holder for any registration of transfer or exchange of Warrant Certificates.

(e)     <u>Cancellation</u>.  Any Warrant Certificate surrendered for registration of transfer, exchange or the exercise of the Warrants represented thereby shall, if surrendered to the Company, be delivered to the Company, and all Warrant Certificates surrendered or so delivered to the Company shall be promptly cancelled by the Company.  Any such Warrant Certificate shall not be reissued and, except as provided in this Section 3 in case of an exchange or transfer, in Section 7 in case of a mutilated Warrant Certificate and in Section 4 in case of the exercise of less than all the Warrants represented thereby, no Warrant Certificate shall be issued hereunder in lieu thereof.  The Company shall dispose of such cancelled Warrant Certificates in a reasonably prompt manner.

(f)     <u>Treatment of Holders of Warrant Certificates</u>.  The Company may treat the registered Holder of a Warrant Certificate as the absolute owner thereof for any purpose and as the Person entitled to exercise the rights represented by the Warrants evidenced thereby, any notice to the contrary notwithstanding.

(g)     <u>Transfers</u>.  Notwithstanding anything in this Agreement to the contrary, no Holder shall Transfer any Warrants to any Person if the Company reasonably determines that such Transfer would, if effected, result in the Company having 500 or more holders of record (as such concept is understood for purposes of Section 12(g) of the Exchange Act and any relevant rules promulgated thereunder), or if, after giving effect to such Transfer, the Company would otherwise be, or would otherwise be obligated to become, a reporting company under the Exchange Act.  The Company, if it deems it to be necessary, may require, as a condition to any Transfer of a Warrant in accordance with the terms hereof, that the Holder deliver to the Company an opinion of counsel, which opinion and counsel shall be reasonably satisfactory to the Company, to the effect that such Transfer is made in compliance with this Agreement and the Securities Act and all applicable state securities laws or pursuant to an exempt transaction under the Securities Act and state securities laws.  In addition, for the avoidance of doubt, any proposed Transfer of Warrants shall be subject to the restrictions on Transfer set forth in Section 3 of the Stockholders' Agreement.  The provisions of this Section 3(g) shall terminate upon such date that the Company becomes subject to the reporting obligations under Sections 13 or 15(d) of the Exchange Act.

(h)     <u>Legends</u>.  All Warrant Certificates shall conspicuously bear the following legends:

THE SECURITIES EVIDENCED BY THIS CERTIFICATE HAVE BEEN DISTRIBUTED BY THE COMPANY IN RELIANCE ON THE EXEMPTION FROM REGISTRATION PROVIDED UNDER SECTION 1145 OF THE BANKRUPTCY CODE AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES LAWS OR OTHER JURISDICTION WITHIN THE UNITED STATES AND MAY NOT BE OFFERED,

SOLD, PLEDGED OR OTHERWISE TRANSFERRED EXCEPT IN ACCORDANCE WITH THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT OF 1933, AS AMENDED, OR AN EXEMPTION THEREFROM AND, IN EACH CASE, IN COMPLIANCE WITH APPLICABLE STATE SECURITIES LAWS. AS A CONDITION TO ANY TRANSFER, THE COMPANY RESERVES THE RIGHT TO REQUIRE, IN ACCORDANCE WITH THE STOCKHOLDERS' AGREEMENT DATED AS OF ____ __, 2010, AS AMENDED FROM TIME TO TIME, AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE COMPANY, THAT SUCH REGISTRATION IS NOT REQUIRED.

THE SECURITIES EVIDENCED BY THIS CERTIFICATE ARE SUBJECT TO CERTAIN RESTRICTIONS ON TRANSFER AS SET FORTH IN THE WARRANT AGREEMENT DATED AS OF ____ __, 2010 BY THE COMPANY IN FAVOR OF THE HOLDERS OF WARRANTS, AS AMENDED FROM TIME TO TIME (THE "WARRANT AGREEMENT").  NO REGISTRATION OR TRANSFER OF THESE SECURITIES WILL BE MADE ON THE BOOKS OF THE COMPANY UNLESS AND UNTIL SUCH RESTRICTIONS SHALL HAVE BEEN COMPLIED WITH. THE COMPANY WILL FURNISH WITHOUT CHARGE TO THE HOLDER OF RECORD OF THIS CERTIFICATE A COPY OF THE WARRANT AGREEMENT UPON WRITTEN REQUEST TO THE COMPANY AT ITS PRINCIPAL PLACE OF BUSINESS.

Section 4.    Duration and Exercise of Warrants.

(a)    Expiration Date.  The Warrants shall expire at 5 p.m., New York City time, on [●], 2017 (the "**Expiration Date**").  After the Expiration Date, the Warrants will become void and of no value.

(b)    Exercise Price.  Subject to the provisions of this Agreement, each Warrant shall entitle the Holder thereof to purchase from the Company (and the Company shall issue and sell to such Holder) one fully-paid and nonassessable Share evidenced by the Warrant Certificate at a price equal to the Exercise Price (subject to adjustment pursuant to Section 5).

(c)    Manner of Exercise.  All or any of the Warrants represented by a Warrant Certificate may be exercised prior to the Expiration Date by the registered Holder thereof during normal business hours on any Business Day, by (i) surrendering such Warrant Certificate, and (ii) delivering the subscription form set forth therein duly executed by such Holder indicating whether the Share or Shares for which such Warrant is exercisable are Class B Common Stock or Class C Common Stock, and in each case by hand or by mail to the Company at its principal executive offices.  Such Warrant Certificate and subscription form shall be accompanied by payment in full in respect of each Warrant that is exercised (in the aggregate, the "**Aggregate Exercise Price**"), which shall be made by certified or official bank or bank cashier's check payable to the order of the Company, or by wire transfer to the Company in immediately available funds.  The Aggregate Exercise Price shall be in an amount equal to the product of the number of shares of Common Stock designated in such subscription form multiplied by the Exercise Price.  Upon such surrender and payment, such Holder shall thereupon be entitled to

6

receive the number of duly authorized, validly issued, fully paid and nonassessable Shares (or Other Securities) determined as provided in this Agreement.

        (d)    <u>Cashless Exercise</u>.  Payment of the Aggregate Exercise Price shall be made at the option of the Holder (i) as described in Section 4(c), (ii) following the consummation of an IPO, by the Holder's surrender to the Company of that number of Shares (or the right to receive such number of Shares) or other shares of Common Stock having an aggregate Fair Value equal to or greater than the Aggregate Exercise Price, or (iii) following the consummation of an IPO, any combination thereof, duly endorsed by or accompanied by appropriate instruments of transfer duly executed by such Holder or by such Holder's attorney duly authorized in writing.  If such Holder elects (and is permitted) to make payments of the Aggregate Exercise Price by surrendering Shares as provided in clause (ii) of this Section 5(d), such Holder shall tender to the Company the Warrant Certificate(s) for the amount being so exchanged, along with the notice of exercise indicating such Holder's election to exchange all or part of the Warrants, and the Company shall issue to such Holder the number of Shares (or other Securities) computed using the following formula:

$$X = \frac{Y(A-B)}{A}$$

Where

X = number of Shares be issued to the Holder upon exercise;

Y = total number of Shares purchasable under the Warrants (or, if only a portion,

the amount of Shares for which the Warrants are being exchanged);

A = Fair Value; and

B = Exercise Price.

        (e)    <u>When Exercise Effective</u>.  Each exercise of any Warrant in accordance with Section 4(c) shall be deemed to have been effected immediately prior to the close of business on the Business Day on which the Warrant Certificate representing such Warrant, duly executed, with accompanying payment shall have been delivered as provided in Section 4(c) or Section 4(d), and at such time the Person or Persons in whose name or names the certificate or certificates for Common Stock (or Other Securities) shall be issuable upon such exercise as provided in Section 4(f) shall be deemed to have become the holder or holders of record thereof.

        (f)    <u>Delivery of Certificates, Etc</u>.

        (i)    As promptly as practicable after the exercise of any Warrant and, subject to Section 7, delivery of the Warrant Certificate with respect thereto, the Company at its expense (other than as to payment of transfer taxes which will be paid by the Holder) will cause to be issued and delivered to such Holder,

(1)     a certificate or certificates for the number of Shares (or Other Securities) to which such Holder is entitled, and

(2)     if less than all the Warrants represented by a Warrant Certificate are exercised, a new Warrant Certificate or Certificates of the same tenor and for the aggregate number of Warrants that were not exercised.

(ii)     The Company shall register any new Warrant Certificate in such name or names of such Holder's permitted transferee pursuant to Section 3 as may be directed in writing by such Holder, and shall deliver it to the Holder or its permitted transferee pursuant to Section 3 entitled to receive the same in accordance with this Section 4(f).

(iii)     Upon any exercise of Warrants, the Company shall, as promptly as practicable, advise the Treasurer of the Company or his or her designee of (A) the number of Warrants exercised, (B) the instruction of each holder of the Warrant Certificates evidencing such Warrants with respect to delivery of the Common Stock to which such holder is entitled upon such exercise, (C) the timing of delivery of Warrant Certificates evidencing the balance, if any, of the Warrants remaining after such exercise, and (D) such other information as the Company shall reasonably require.

(iv)     The Company shall not be required to pay any stamp or other tax or other governmental charge required to be paid in connection with any transfer involved in the issuance of the Common Stock to a Person other than a Holder; and in the event that any such transfer is involved, the Company shall not be required to issue or deliver any Warrant Certificate or share of Common Stock until such tax or other charge shall have been paid or it has been established to the Company's satisfaction that no such tax or other charge is due.  The Company shall have no duty or obligation to deliver any Warrant Certificate(s) unless and until it is satisfied that all such taxes and/or governmental charges have been paid in full.

(g)     Fractional Shares.  Notwithstanding any adjustment pursuant to Section 5 in the number of Shares or Other Securities purchasable upon the exercise of a Warrant, the Company shall not be required to issue Warrants to purchase fractions of Shares or Other Securities, or to issue fractions of Shares or Other Securities upon exercise of the Warrants, or to distribute certificates which evidence fractional Shares.  In the event of an adjustment that results in a Warrant becoming exercisable for fractional Shares, the number of Shares or other securities subject to such Warrant shall be adjusted upward or downward to the nearest whole number of Shares or Other Securities.

(h)     HSR Act.  As a condition to the issuance of Shares upon the exercise of a Warrant by a Holder, such Holder must prepare and file all applicable documentation necessary to effect all notices, reports, and other filings required by the HSR Act and must cooperate with the Company with respect to any necessary filings to be made thereby, and any applicable waiting period (and any extension thereof) under the HSR Act applicable to the issuance of Shares to such Holder shall have expired or been terminated.

Section 5.    Adjustment of Exercise Price and Number of Shares Purchasable or Number of Warrants.

(a)    Stock Dividends, Split-ups and Combinations of Shares.  If, after the date of this Agreement, the number of outstanding shares of Common Stock is increased by a dividend or share distribution, in each case payable in shares of Common Stock, or adjusted by a split-up, combination or other reclassification of shares of Common Stock into a different number of shares of Common Stock, then, in the case of such events, the amount of Common Stock issuable for each Warrant and the Exercise Price will be adjusted as follows:  on the day following the date fixed for the determination of holders of shares of Common Stock entitled to receive such dividend or share distribution, and in the cases of split-ups, combinations and other reclassifications, on the day following the effective date thereof:  (i) the Exercise Price in effect immediately prior to such action shall be multiplied by a fraction, the numerator of which is equal to the total number of shares of Common Stock outstanding immediately prior to such event, and the denominator of which is equal to the total number of shares of Common Stock outstanding immediately after such event; and (ii) the number of shares of Common Stock purchasable upon the exercise of any Warrant after such event shall be the number of shares of Common Stock obtained by multiplying the number of shares of Common Stock purchasable immediately prior to such adjustment upon the exercise of such Warrant by the Exercise Price in effect immediately prior to such adjustment and dividing the product so obtained by the Exercise Price in effect after such adjustment.

(b)    Fundamental Transactions.

(i)    If, after the date of this Agreement, the Company shall consummate a Fundamental Transaction, then each Holder shall have the right thereafter to receive, upon exercise of this Warrant, the same amount and kind of securities, cash or other property as it would have been entitled to receive upon the occurrence of such Fundamental Transaction if it had been, immediately prior to such Fundamental Transaction, the holder of the number of Warrant Shares then issuable upon exercise in full of the Warrants then held by such Holder (the "**Alternate Consideration**").  The Company shall not effect any such Fundamental Transaction unless prior to or simultaneously with the consummation thereof, any successor to the Company, surviving entity or the entity purchasing or otherwise acquiring such assets or other appropriate entity shall assume the obligation to deliver to each Holder, such Alternate Consideration as, in accordance with the foregoing provisions, each Holder may then be entitled to purchase, and the other obligations under this Warrant.  The provisions of this Section 5(b) shall similarly apply to any subsequent transaction that is mutatis mutandis a Fundamental Transaction.

(ii)    Notwithstanding anything in Section 5(b)(i) to the contrary, in the event of a Fundamental Transaction that is an all-cash transaction, the Company or any successor entity shall pay to each Holder, in lieu of any Alternate Consideration, an amount of cash equal to the value of such Holder's Warrants as determined in accordance with the Black Scholes Option Pricing Model obtained from the "OV" function on Bloomberg using (A) a price per share of Common Stock equal to the amount of cash paid in respect thereof, (B) a risk-free interest rate equal to the 30-day LIBOR rate on the day immediately prior to the public announcement of such transaction, (C) an expected volatility equal to 100% and (D) a remaining

9

option time equal to the time between the date of the public announcement of such transaction and the Expiration Date; provided, however, that in no event shall the Company be required to pay an amount per Warrant in excess of the quotient obtained by dividing $2,500,000 by the aggregate number of Warrants issued pursuant to this Agreement.  For the avoidance of doubt, in the event the Company elects to pay the consideration set forth in this Section 5(b)(i), this Warrant shall terminate and be of no further force and effect upon such Holder's receipt of such consideration.

(c)    Special Dividends.    In the event the Company shall at any time pay a Special Dividend on the Common Stock, the Exercise Price in effect immediately prior to such payment shall be reduced by the per share amount of such Special Dividend; provided, however, that in the event such Special Dividend is made pursuant to clause (b) of the definition thereof, the value of such per share amount shall be determined in good faith by the Company's Board of Directors.  No adjustments shall be made pursuant to this Section 5(c) with respect to any action or event if an adjustment is made pursuant to Section 5(a) with respect to such action or event.

(d)    Notice of Adjustment in Exercise Price or Warrant Shares.  Whenever the Exercise Price and/or number of Warrant Shares issuable shall be adjusted as provided in this Section 5, the Company shall cause a notice setting forth any such adjustments to be sent by mail, first class, postage prepaid, to each registered Holder at its address appearing on the Warrant Register.  Failure to give such notice or any defect therein shall not affect the legality or validity of any such action.

(e)    No Change in Warrant Terms on Adjustment.  Irrespective of any adjustments in the Exercise Price or the number of Shares (or any inclusion of Other Securities) issuable upon exercise, Warrants theretofore or thereafter issued may continue to express the same prices and number of shares as are stated in the similar Warrants issuable initially, or at some subsequent time, pursuant to this Agreement, and the Exercise Price and such number of shares issuable upon exercise specified thereon shall be deemed to have been so adjusted.

(f)    Treasury Shares.  Shares of Common Stock at any time owned by the Company or its subsidiaries shall not be deemed to be outstanding for the purposes of any computation under this Section 5.

Section 6.    Cancellation of Warrants.  The Company shall cancel all Warrant Certificates surrendered for exchange, substitution, transfer or exercise in whole or in part by such method as it shall deem fair and appropriate.  Such cancelled Warrant Certificates shall thereafter be disposed of in a manner satisfactory to the Company.

Section 7.    Mutilated or Missing Warrant Certificates.  Upon receipt by the Company from any Holder of evidence reasonably satisfactory to them of the ownership of and the loss, theft, destruction or mutilation of such Holder's Warrant Certificate and indemnity and bond reasonably satisfactory to them, together with such additional documentation that the Company may require, and in case of mutilation upon surrender and cancellation thereof, the Company will execute and deliver in lieu thereof a new Warrant Certificate of like tenor and representing an equal number of Warrants to such Holder; provided, however, in the case of mutilation, no indemnity shall be required if such Warrant Certificate in identifiable form is surrendered to the

10

Company for cancellation.  Upon the issuance of any new Warrant Certificate under this Section 7, the Company may require the payment of a sum sufficient to cover any stamp tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the reasonable out-of-pocket fees and expenses of the Company) in connection therewith.  Every new Warrant Certificate executed and delivered pursuant to this Section 7 in lieu of any lost, stolen or destroyed Warrant Certificate shall be entitled to the same benefits of this Agreement equally and proportionately with any and all other Warrant Certificates, whether or not the allegedly lost, stolen or destroyed Warrant Certificate shall be at any time enforceable by anyone.  The provisions of this Section 7 are exclusive and shall preclude (to the extent lawful) all other rights or remedies with respect to the replacement of mutilated, lost, stolen or destroyed Warrant Certificates.

Section 8.    <u>Reservation of Shares</u>.

(a)    <u>Reservation of Shares</u>.  The Company shall at all times reserve and keep available, free from preemptive rights, out of its authorized but unissued Common Stock (or out of authorized Other Securities), solely for issuance and delivery upon exercise of Warrants, the full number of Shares (and Other Securities) from time to time issuable upon the exercise of all Warrants.  All Shares (and Other Securities) shall be duly authorized and, when issued upon such exercise, shall be duly and validly issued, and fully paid and nonassessable, and free from all taxes, liens, charges, security interests, encumbrances and other restrictions created by or through the Company.

(b)    <u>Certain Actions</u>.  Before taking any action that would cause an adjustment pursuant to Section 6 reducing any Exercise Price below the then par value (if any) of the Shares issuable upon exercise of the Warrants, the Company will take any reasonable corporate action that may be necessary in order to ensure that the Company may validly and legally issue fully paid and nonassessable Shares at such Exercise Price as so adjusted.

Section 9.    <u>Notification of Certain Events</u>.  In the event of:

(a)    any Fundamental Transaction; or

(b)    the voluntary or involuntary dissolution, liquidation, or winding up of the Company,

the Company shall cause to be mailed to each Holder a notice specifying the date or expected date on which any such Fundamental Transaction, dissolution, liquidation or winding up is expected to become effective, and the time, if any such time is to be fixed, as of which holders of record of Common Stock (or Other Securities) shall be entitled to exchange their shares of Common Stock (or Other Securities) for the securities or other property deliverable upon such Fundamental Transaction, dissolution, liquidation or winding up (not less than ten days prior to such date therein specified in the case of any such notice pursuant to clause (a) or (b) of this Section 9).  Failure to give such notice or any defect therein shall not affect the legality or validity of any such action.

Section 10.    <u>Warrantholder Not Deemed a Stockholder</u>.  Prior to the exercise of the Warrants represented thereby no holder of a Warrant Certificate, as such, shall be entitled to any

rights of a stockholder of the Company, including, but not limited to, the right to vote, to receive dividends or other distributions, to exercise any preemptive right or, except as otherwise expressly provided herein, to receive notice as stockholders in respect of the meetings of stockholders or for the election of directors of the Company or any other matter.

Section 11.    Notices to Company.  All notices, requests or demands authorized by this Agreement to be given or made by any Holder to or on the Company shall be in writing and given by certified or registered mail, return receipt requested, nationally recognized overnight delivery service, such as Federal Express, or facsimile (or like transmission) with confirmation of transmission by the transmitting equipment or personal delivery against receipt to the party to whom it is given, in each case, at the Company's address or facsimile number set forth below or such other address or facsimile number as the Company may hereafter specify by notice to the Holders.  Any such notice, request or demand shall be deemed to have been given when received by the Company

> If to the Company, to:
>
> MediaNews Group, Inc.
> 101 W. Colfax Avenue, Suite 110
> Denver, CO  80202
> Attention:  Treasurer
> Facsimile:  (303) 954-6320

Section 12.    Supplements and Amendments.  The Company may from time to time supplement or amend this Agreement (a) without the approval of any holders of Warrants in order to cure any ambiguity, manifest error or other mistake in this Agreement, or to correct or supplement any provision contained herein that may be defective or inconsistent with any other provision herein, or to make any other provisions in regard to matters or questions arising hereunder that the Company may deem necessary or desirable and that shall not adversely affect, alter or change the interests of the holders of the Warrants or (b) with the prior written consent of holders of the Warrants exercisable for a majority of the Shares then issuable upon exercise of the Warrants then outstanding.  Notwithstanding the foregoing, the consent of each Holder affected shall be required for any amendment pursuant to which the Exercise Price would be increased (other than pursuant to adjustments provided herein), the number of Shares (or Other Securities) purchasable upon exercise of Warrants would be decreased (other than pursuant to adjustments provided herein) or the Expiration Date shall be changed to an earlier date.  Upon execution and delivery of any amendment or supplement pursuant to this Section 12, such amendment or supplement shall be considered a part of this Agreement for all purposes and every holder of a Warrant Certificate theretofore or thereafter countersigned and delivered hereunder shall be bound thereby.

Section 13.    Successors and Assigns.  All the covenants and provisions of this Agreement by or for the benefit of the Company shall bind and inure to the benefit of its respective successors and assigns hereunder.

Section 14.    <u>Termination</u>.  This Agreement shall terminate on the Expiration Date. Notwithstanding the foregoing, this Agreement will terminate on any earlier date when all Warrants have been exercised or terminated.

Section 15.    <u>Governing Law and Consent to Jurisdiction</u>.  Except to the extent the Delaware General Corporation Law is mandatorily applicable, this Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to the conflicts of laws rules of such state.  The Company and, by its acceptance of a Warrant Certificate, each Holder hereby submit to the exclusive jurisdiction of (i) the United States Bankruptcy Court for the District of Delaware, and (ii) the United States District Court for the Southern District of New York and of any New York State Court sitting in the City of New York, and any judicial proceeding brought against the Company or any Holder with respect to any dispute arising out of this Agreement, any Warrant Certificate and any matter related hereto or thereto, shall be brought only in such courts.  The Company, by its acceptance of a Warrant Certificate, each Holder hereby irrevocably waive, to the fullest extent permitted by law, any objection it may have or hereafter have to the laying of the venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum.  Nothing herein shall affect the right of any Person to serve process in any manner permitted by law.  Notwithstanding anything in this Section 18, to the contrary, each party agrees that a final judgment in any such action, suit or other proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

Section 16.    <u>WAIVER OF JURY TRIAL</u>.  THE PARTIES HERETO WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

Section 17.    <u>Entire Agreement; Benefits of this Agreement</u>.  This Agreement contains the entire agreement by and among the parties with respect to the subject matter hereof and all prior negotiations, writings and understandings relating to the subject matter of this Agreement, including, without limitation, the Plan, are merged in and are superseded and canceled by, this Agreement.  Nothing in this Agreement shall be construed to give to any Person other than the Company and the Holders any legal or equitable right, remedy or claim under this Agreement, and this Agreement shall be for the sole and exclusive benefit of the Company and the Holders.

Section 18.    <u>Headings; Interpretation</u>.

(a)    The headings of sections of this Agreement have been inserted for convenience of reference only, are not to be considered a part hereof and in no way modify or restrict any of the terms or provisions hereof.

(b)    For the purposes hereof:  (i) words in the singular shall be held to include the plural and vice versa and words of one gender (or are neuter) shall be held to include the other gender (or the neuter) as the context requires; (ii) the terms "hereof," "herein," and "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement as a whole (including the Exhibit) and not to any particular provision of this Agreement, and Section, paragraph and Exhibit references are to the Sections, paragraphs

Exhibit to this Agreement unless otherwise specified; (iii) the word "including" and words of similar import when used in this Agreement shall mean "including, without limitation," unless the context otherwise requires or unless otherwise specified; and (iv) the word "or" shall not be exclusive.

      Section 19.    <u>Information</u>.    For so long as the Company is required to provide the holders of Common Stock with information pursuant to Section 6.01 of the Stockholders' Agreement, it will provide the same information to the Holders (for the avoidance of doubt, the provision of any such information shall be subject to Section 6.03 of the Stockholders' Agreement).

[The next page is the signature page]

The Company has caused this Warrant Agreement to be executed and delivered as of the date first written above.

MEDIANEWS GROUP, INC.

By:_____
     Name:
     Title:

EXHIBIT A


FORM OF WARRANT CERTIFICATE

[FORM OF FACE OF WARRANT CERTIFICATE]

THE SECURITIES EVIDENCED BY THIS CERTIFICATE HAVE BEEN DISTRIBUTED BY THE COMPANY IN RELIANCE ON THE EXEMPTION FROM REGISTRATION PROVIDED UNDER SECTION 1145 OF THE BANKRUPTCY CODE AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES LAWS OR OTHER JURISDICTION WITHIN THE UNITED STATES AND MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED EXCEPT IN ACCORDANCE WITH THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT OF 1933, AS AMENDED, OR AN EXEMPTION THEREFROM AND, IN EACH CASE, IN COMPLIANCE WITH APPLICABLE STATE SECURITIES LAWS. AS A CONDITION TO ANY TRANSFER, THE COMPANY RESERVES THE RIGHT TO REQUIRE, IN ACCORDANCE WITH THE STOCKHOLDERS' AGREEMENT DATED AS OF ____ __, 2010, AS AMENDED FROM TIME TO TIME, AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE COMPANY, THAT SUCH REGISTRATION IS NOT REQUIRED.

THE SECURITIES EVIDENCED BY THIS CERTIFICATE ARE SUBJECT TO CERTAIN RESTRICTIONS ON TRANSFER AS SET FORTH IN THE WARRANT AGREEMENT DATED AS OF ____ __, 2010 BY THE COMPANY IN FAVOR OF THE HOLDERS OF WARRANTS, AS AMENDED FROM TIME TO TIME (THE "WARRANT AGREEMENT"). NO REGISTRATION OR TRANSFER OF THESE SECURITIES WILL BE MADE ON THE BOOKS OF THE COMPANY UNLESS AND UNTIL SUCH RESTRICTIONS SHALL HAVE BEEN COMPLIED WITH. THE COMPANY WILL FURNISH WITHOUT CHARGE TO THE HOLDER OF RECORD OF THIS CERTIFICATE A COPY OF THE WARRANT AGREEMENT UPON WRITTEN REQUEST TO THE COMPANY AT ITS PRINCIPAL PLACE OF BUSINESS.

Warrant No.                                         Number of Warrants:  [        ]

Exercisable during the period that commences at 9:00 a.m., New York City time, on [●], 2010 and terminates at 5:00 p.m., New York City time, on [●], 2017, except as provided below.

## WARRANT TO PURCHASE

## COMMON STOCK, PAR VALUE $[●] PER SHARE,

### OF

## MEDIANEWS GROUP, INC.

This certifies that _____ or registered assigns, is the registered owner of the number of WARRANTS set forth above (the "**Warrants**"), each of which represents the right, subject to the provisions of the Warrant Agreement (as defined below) at any time after [●], 2010 (the "**Original Issue Date**") and on or before 5:00 p.m., New York City time, on the Expiration Date (as defined in the Warrant Agreement), to purchase from MediaNews Group, Inc., a Delaware

corporation (the "**Company**"), at a price per share equal to the Exercise Price (as defined in the Warrant Agreement), one share of Common Stock (as defined in the Warrant Agreement) as such stock was constituted as of the Original Issue Date, subject to adjustment as provided in the Warrant Agreement, upon surrender hereof, with the subscription form on the reverse hereof duly executed, by hand or by mail to the Company at its principal executive offices, and simultaneous payment in full (by certified or official bank or bank cashier's check payable to the order of the Company, or by wire transfer of immediately available funds to an account designated by the Company or, in the case of cashless exercise (if cashless exercise is permitted), by surrendering shares of Common Stock in accordance with the proceedings and calculations prescribed in the Warrant Agreement) of the Exercise Price in respect of each Warrant represented by this Warrant Certificate that is so exercised, all subject to the terms and conditions hereof and of the Warrant Agreement.

Upon any partial exercise of the Warrants represented by this Warrant Certificate, there shall be issued to the holder hereof a new Warrant Certificate representing the Warrants that were not exercised.

No fractional shares may be issued upon the exercise of rights to purchase hereunder, and as to any fraction of a share otherwise issuable, such fraction shall be adjusted upward or downward to the nearest whole number of shares, as provided in the Warrant Agreement.

This Warrant Certificate is issued under and in accordance with a Warrant Agreement dated as of [●], 2010 (the "**Warrant Agreement**") by the Company in favor of the holders of Warrants and is subject to the terms and provisions contained therein. The Warrant Agreement is hereby incorporated by reference in and made a part of this instrument and is hereby referred to for a description of the rights, limitation of rights, obligations, duties and immunities thereunder of the Company and the registered holders of the Warrants. The holder of this Warrant Certificate consents to all terms and provisions of the Warrant Agreement by acceptance hereof. Copies of the Warrant Agreement are on file at the above-mentioned office of the Company and may be obtained by writing to the Company.

REFERENCE IS HEREBY MADE TO THE FURTHER PROVISIONS OF THIS WARRANT SET FORTH ON THE REVERSE HEREOF, WHICH FURTHER PROVISIONS SHALL FOR ALL PURPOSES HAVE THE SAME EFFECT AS IF SET FORTH BELOW.

Dated:  [            ], 2010


MEDIANEWS GROUP, INC.


By:_____
        Name:
        Title:

A-2

## REVERSE OF WARRANT CERTIFICATE

## MEDIANEWS GROUP, INC.

The transfer of this Warrant Certificate and all rights hereunder is registrable by the registered holder hereof, in whole or in part, on the register of the Company upon surrender of this Warrant Certificate at the principal executive offices of the Company, duly endorsed or accompanied by a written instrument of transfer duly executed and in form satisfactory to the Company by the registered holder hereof or his attorney duly authorized in writing and upon payment of any necessary transfer tax or other governmental charge imposed upon such transfer or registration thereof.  Upon any partial transfer the Company will cause to be delivered to such transferring holder a new Warrant Certificate or Certificates with respect to any portion not so transferred.

This Warrant Certificate may be exchanged at the principal executive offices of the Company for one or more Warrant Certificates representing the same aggregate number of Warrants, each new Warrant Certificate to represent such number of Warrants as the holder hereof shall designate at the time of such exchange.

Prior to the exercise of the Warrants represented hereby, the holder of this Warrant Certificate, as such, shall not be entitled to any rights of a stockholder of the Company, including, but not limited to, the right to vote, to receive dividends or other distributions, to exercise any preemptive right or to receive any notice of meetings of stockholders, and shall not be entitled to receive notice of any proceedings of the Company except as expressly provided in the Warrant Agreement.  Nothing contained herein shall be construed as imposing any liabilities upon the holder of this Warrant Certificate to purchase any securities or as a stockholder of the Company, whether such liabilities are asserted by the Company or by creditors or stockholders of the Company or otherwise.

This Warrant Certificate shall be void and all rights represented hereby shall cease unless exercised before the close of business on [●], 2017 or, if earlier, as provided in the Warrant Agreement.

This Warrant Certificate shall not be valid for any purpose until it shall have been signed by an authorized signatory of the Company.

The Company may deem and treat the registered holder hereof as the absolute owner of this Warrant Certificate (notwithstanding any notation of ownership or other writing hereon made by anyone) for the purpose of any exercise hereof and for all other purposes, and the Company shall not be affected by any notice to the contrary.

In the event of any conflict or inconsistency between this Warrant Certificate and the Warrant Agreement, the Warrant Agreement shall control.

## SUBSCRIPTION FORM

**(To be executed only upon exercise of warrant)**

To:     MEDIANEWS GROUP, INC., a Delaware corporation

Attention:  _____

     The undersigned (i) irrevocably exercises [     ] Warrants represented by the enclosed Warrant Certificate, (ii) purchases the shares of Class B common stock, par value $[●] per share, and/or Class C common stock, par value $[●] per share, of MediaNews Group, Inc. (before giving effect to the adjustments provided in the Warrant Agreement referred to in the enclosed Warrant Certificate) for each Warrant so exercised and herewith makes payment in full of the purchase price equal to the Exercise Price (as defined in the Warrant Agreement) per share, in respect of each Warrant so exercised as provided in the Warrant Agreement (such payment being by certified or official bank or bank cashier's check payable to the order of MediaNews Group, Inc., or, if the box below is checked (and is pursuant to the Warrant Agreement permitted to be checked), by a cashless exercise, as provided in the Warrant Agreement referred to in the enclosed Warrant Certificate), all on the terms and conditions specified in the enclosed Warrant Certificate and the Warrant Agreement, (iii) surrenders this Warrant Certificate and all right, title and interest therein to MediaNews Group, Inc. and (iv) directs that the securities or other property deliverable upon the exercise of such Warrants be registered or placed in the name and at the address specified below and delivered thereto.

[    ] _____ shares of Class B Common Stock

[    ] _____ shares of Class C Common Stock

Dated:  [              ], 20[    ]

 

_____
(Owner)*

_____
(Signature of Authorized Representative)

_____
(Street Address)

_____
(City) (State) (Zip Code)

Securities or property to be
issued and delivered to:

_____
Signature Guaranteed**

Please insert social
security or other
identifying number
_____

Name _____

Street Address _____

City, State and Zip Code _____

\*      The signature must correspond with the name as written upon the face of the within
Warrant Certificate in every particular, without alteration or enlargement or any change
whatsoever.

**\*\*      The signature must be guaranteed by a Securities Transfer Association medallion
program ("stamp") participant or an institution receiving prior approval from the
Company.**

## FORM OF ASSIGNMENT

FOR VALUE RECEIVED, the undersigned registered holder of the within Warrant Certificate hereby sells, assigns and transfers unto the Assignee named below all of the rights of the undersigned under the within Warrant Certificate, with respect to the number of warrants set forth below:

| Name of Assignee | Address | No. of Warrants |
|---|---|---|
| | | |

Please insert social
security or other
identifying number
of Assignee
_____

and does hereby irrevocably constitute and appoint _____ attorney to make such transfer on the books of MediaNews Group, Inc. maintained for the purpose, with full power of substitution in the premises.

Dated:  [              ], 20[    ]

Name _____ *

Signature of Authorized
Representative _____

Signature Guaranteed _____ **

\*      The signature must correspond with the name as written upon the face of the within Warrant Certificate in every particular, without alteration or enlargement or any change whatsoever.

\*\*      **The signature must be guaranteed by a Securities Transfer Association medallion program ("stamp") participant or an institution receiving prior approval from the Company.**