IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br><br> **AFFILIATED MEDIA, INC.,**[1] <br><br> Debtor. | Chapter 11 <br><br> Case No. 10-10202 (KJC) <br><br> Hearing Date: March 4, 2010 at 10:00 a.m. (prevailing Eastern time) <br><br> Objection Deadline: February 25, 2010 at 4:00 p.m. (prevailing Eastern Time) |

**APPLICATION OF THE DEBTOR PURSUANT TO SECTIONS
327(a) AND 328(a) OF THE BANKRUPTCY CODE, BANKRUPTCY
RULES 2014(a) AND 2016 AND LOCAL RULES 2014-1 AND 2016-1 FOR
AUTHORIZATION TO EMPLOY AND RETAIN
ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER
TO THE DEBTOR *NUNC PRO TUNC* TO THE PETITION DATE**

The debtor in possession in the above-captioned chapter 11 case (the "Debtor" or "AMI"), hereby submits this application (the "Application"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order, substantially in the form attached hereto as **Exhibit "A"**, authorizing the employment of Rothschild Inc. ("Rothschild") as financial advisor and investment banker to the Debtor *nunc pro tunc* to the Petition Date (as defined below). In support of the Application, the Debtor submits the Declaration of David Resnick (the "Resnick Declaration"), annexed hereto as **Exhibit "B"**, and respectfully submits as follows:

---

1. The last four digits of the Debtor's federal tax identification number are 5553. The Debtor's mailing address and corporate headquarters is 101 W. Colfax Avenue, Suite 1100, Denver, CO 80202.

## Background

1. On January 22, 2010 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in this case. The Debtor is operating its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. Prior to the Petition Date, beginning on December 18, 2009, the Debtor solicited votes on the Prepackaged Plan of Reorganization of Affiliated Media, Inc., dated December 18, 2009 (the "Prepackaged Plan"), through a Disclosure Statement dated December 18, 2009 (the "Disclosure Statement") distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code, both filed contemporaneously herewith. Terms used but not otherwise defined herein have the meanings assigned to such terms in the Prepackaged Plan and the Disclosure Statement. The Prepackaged Plan has been accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.

3. Additional information and more detail regarding the Debtor's business, the Debtor's capital structure, the events leading up to the Petition Date, and the Prepackaged Plan can be found in the *Declaration of Ronald A. Mayo, Vice President and Chief Financial Officer of Affiliated Media, Inc., in Support of First Day Relief* filed on January 22, 2010.

## Jurisdiction and Venue

4. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

5.     By this Application, the Debtor requests entry of an order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1 (i) authorizing the employment and retention of Rothschild as the Debtor's financial advisor and investment banker in accordance with the terms and conditions set forth in that certain engagement letter dated as of December 1, 2008 (the "Engagement Date"), as amended by the Debtor and its subsidiaries (collectively, the "Company") and Rothschild on January 21, 2010, and as otherwise amended, and the related indemnification, copies of which are attached as **Exhibit "C"** (together, the "Engagement Letter")[2] and (ii) waiving certain informational requirements of Local Rule 2016-2.

6.     The terms of this Application, as well as the terms of the order requested by this Application and entered pursuant thereto, shall apply to any and all affiliates of the Debtor that have not yet filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code as of the Petition Date, but which subsequently file such a petition during the pendency of AMI's chapter 11 case.

**Rothschild's Qualifications**

7.     The Debtor seeks to retain Rothschild as its financial advisor and investment banker (i) because Rothschild has been providing substantial financial advisory and investment banking services to the Debtor since December 2008 and (ii) because the Debtor understands that Rothschild has extensive expertise in providing high quality financial and related advisory services in restructurings and reorganizations and enjoys an excellent reputation

---

2.  Any references to or summaries of the Engagement Letter in this Application are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the summaries provided herein. Additionally, any capitalized terms used in this Application and not otherwise defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

for the services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. Rothschild is particularly well-qualified to serve as the Debtor's financial advisor and investment banker in AMI's chapter 11 case.

8. As a result of the substantial pre-petition work performed on behalf of the Debtor and its subsidiaries since the Engagement Date, Rothschild has acquired significant knowledge of the Debtor and its business and is now intimately familiar with the Debtor's financial affairs, debt structure, business operations, capital structure, key stakeholders, financing documents and related matters. Likewise, in providing pre-petition services to the Debtor and its subsidiaries, Rothschild's professionals have worked closely with the Debtor's management and its other advisors. Rothschild's pre-petition work for the Debtor and its subsidiaries has included but not been limited to: the building with management of financial forecast models for the coming years; negotiating forbearance agreements and extensions; exploration of strategic alternatives with existing stakeholders and third parties; and negotiating towards the pending restructuring. Accordingly, Rothschild has developed relevant experience and expertise regarding the Debtor that will assist it in providing effective and efficient services during the pendency of this chapter 11 case.

9. Rothschild is a member of one of the world's leading independent investment banking groups, with more than 40 offices in more than 30 countries, including an office located at 1251 Avenue of the Americas, 51st Floor, New York, New York 10020. Rothschild has expertise in domestic and cross-border restructurings, mergers and acquisitions, new capital raises and other financial advisory services, and with particular experience in providing high-quality financial advisory services to financially troubled companies. Rothschild is an experienced bankruptcy and restructuring advisor to debtors, bondholders, creditors'

committees, single creditor classes, and secured creditors in a variety of industries. Rothschild is highly qualified to advise on strategic alternatives and its professionals have extensive experience in deals involving complex financial and operating restructurings. Moreover, Rothschild is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

10. Rothschild and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out-of-court and in chapter 11 cases. Rothschild's business reorganization professionals have served as financial and strategic advisors in numerous cases. *See, e.g., In re Fairpoint Commc'ns, Inc.*, No. 09-16335 (Bankr. S.D.N.Y. Jan. 11, 2010); *In re MIG, Inc.*, No. 09-12118 (KG) (Bankr. D. Del. Sept. 4, 2009); *In re Sea Launch Co., LLC*, No. 09-12153 (BLS) (Bankr. D. Del. Sept. 4, 2009); *In re Visteon Corp.*, No. 09-11786 (CSS) (Bankr. D. Del. July 1, 2009); *In re Sun-Times Media Group, Inc.*, No. 09-11092 (CSS) (Bankr. D. Del. May 11, 2009); *In re Tronox Inc.*, No. 09-10156 (ALG) (Bankr. D. Del. Apr. 7, 2009); *In re PPI Holdings, Inc.*, No. 08-13289 (KG) (Bankr. D. Del. Feb. 4, 2009); *In re Recycled Paper Greetings Inc.*, No. 09-10002 (KG) (Bankr. D. Del. Jan. 2, 2009); *In re Circuit City Stores, Inc.*, No. 08-35653 (Bankr. E.D. Va. Nov. 10, 2008); *In re VeraSun Energy Corp.*, No. 08-12606 (BLS) (Bankr. D. Del. Oct. 31, 2008); *In re Motor Coach Industries Int'l, Inc.*, No. 08-12136 (BLS) (Bankr. D. Del. Sept. 15, 2008); *In re BHM Techs.*, No. 08-04413 (Bankr. W.D. Mich. May 19, 2008); *In re Hilex Poly Co. LLC*, No. 08-10890 (KJC) (Bankr. D. Del. May 6, 2008); *In re Werner Holding Co.*, No. 06-10578 (KJC) (Bankr. D. Del. June 12, 2006); *In re Delphi Corp.*, No. 05-44481 (Bankr. S.D.N.Y. Nov. 30, 2005); *In re Northwest Airlines Corp.*, No. 05-17930 (Bankr. S.D.N.Y. Sept. 14, 2005); *In re Solutia Inc.*, No. 03-17949 (Bankr. S.D.N.Y. Mar. 11, 2005); *In*

*re Int'l Wire*, No. 04-11991 (Bankr. S.D.N.Y. July 1, 2004); *In re James River Coal Co.*, No. 03-04095 (Bankr. M.D. Tenn. May 23, 2003); *In re Superior TeleCom Inc.*, No. 03-10607 (KJC) (Bankr. D. Del. Apr. 10, 2003); *In re VAL Corp.*, No. 02-48191 (Bankr. N.D. Ill. Dec. 9, 2002); *In re Viasystems Group, Inc.*, No. 02-14867 (Bankr. S.D.N.Y. Nov. 21, 2002); *In re Guilford Mills, Inc.*, No. 02-40667 (Bankr. S.D.N.Y. June 26, 2002).

11. In light of the size and complexity of this chapter 11 case, the resources, capabilities, and experience of Rothschild in advising the Debtor are crucial to the success of this chapter 11 case. An experienced financial advisor and investment banker, such as Rothschild, fulfills a critical service that complements the services provided by the Debtor's other professionals. As discussed in detail below, Rothschild will concentrate its efforts on serving as the Debtor's financial advisor and investment banker in this chapter 11 case and, more specifically, in continuing its pre-petition work in formulating strategic alternatives and assisting the Debtor in its efforts with regard to a restructuring. For the aforementioned reasons, the Debtor requires the services of a capable and experienced financial advisor and investment banker such as Rothschild.

12. The Debtor has also submitted an application to retain Hughes Hubbard & Reed LLP ("Hughes Hubbard") as counsel to the Debtor and Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols"), as co-counsel to the Debtor. In addition to Morris Nichols and HHR, the Debtor has filed, or expects to file shortly, applications seeking to employ Carl Marks Advisory Group LLC as its restructuring advisor, Epiq Bankruptcy Solutions, LLC as claims, noticing and balloting agent, Wilkinson Barker Knauer, LLP as its special FCC counsel, King & Ballow as its special anti-trust counsel, and Sitrick and Company Inc. as its communications consultant. The Debtor believes that the continuing services of Rothschild do not duplicate the

services that other professionals will be providing to the Debtor in this chapter 11 case. Specifically, Rothschild will carry out unique functions and will use all reasonable efforts to coordinate with the Debtor's other retained professionals to avoid the unnecessary duplication of services.

### Services to be Provided

13. As mentioned above, the terms and conditions of Rothschild's engagement by the Debtor and its subsidiaries are governed by the Engagement Letter, which was heavily negotiated between the Debtor and Rothschild. The terms of the Engagement Letter reflect the mutual agreement among the Debtor, its subsidiaries and Rothschild as to the substantial efforts that have been and are required of Rothschild in this engagement. The services that Rothschild will continue to provide to the Debtor are necessary to enable the Debtor to maximize the value of its estate.

14. Subject to further order of this Court, and consistent with the Engagement Letter, the Debtor requests the employment and retention of Rothschild to continue to render the following financial advisory and investment banking services as necessary, appropriate and feasible, and as requested by the Debtor:

    a. identifying and/or initiating potential Financings and Transactions;

    b. reviewing and analyzing the Company's assets and the operating and financial strategies of the Company;

    c. reviewing and analyzing the business plans and financial projections prepared by the Company;

    d. evaluating the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

    e. assisting the Company and its professionals in evaluating, structuring, reviewing and negotiating any proposed restructuring,

                    reorganization or other strategic alternative relating to the Company;

f.     determining a range of values for the Company and any securities that the Company offers or proposes to offer in connection with a Financing or Transaction;

g.     assisting the Company in developing and preparing any memorandum to be used in soliciting potential lenders, acquirers or investors;

h.     advising the Company on the risks and benefits of considering a Financing or a Transaction;

i.     reviewing and analyzing any proposals the Company receives from third parties in connection with a Financing or Transaction, including, without limitation, any proposals for debtor-in-possession financing;

j.     assisting or participating in negotiations with the parties in interest;

k.     advising the Company with respect to, and attending, meetings of the Company's board of directors, creditor groups, official constituencies and other interested parties;

l.     participating in hearings before the Court and providing relevant testimony;

m.     advising and assisting the Company in developing and seeking approval of any proposed Plan, and assisting the Company and participating in negotiations with entities or groups affected by the proposed Plan; and

n.     rendering such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Company.

**Professional Compensation**

15.     In connection with seeking any payment from the Debtor in compensation for professional services rendered or reimbursement of expenses incurred in connection with the Debtor's chapter 11 case, Rothschild will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules,

the guidelines established by the Office of the United States Trustee for the District of Delaware (the "Guidelines") and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Engagement Letter (the "Fee Structure").

16. In consideration of the services to be provided by Rothschild, and as more fully described in the Engagement Letter, the Debtor and its subsidiaries, jointly and severally, have agreed to pay Rothschild in cash under the Fee Structure, which is, in summary, as follows:

(a) Monthly Fee: An advisory fee of $175,000 per month (the "Monthly Fee").

(b) MNG Completion Fee: A fee (the "MNG Completion Fee") of (i) $4.5 million upon the consummation with the support of the Hearst Corporation of a Control Transaction prior to the commencement of any bankruptcy case involving the Company or as part of a "pre-packaged" or "pre-arranged" Plan conceived prior to the commencement of any Bankruptcy Case involving the Company; (ii) $4.0 million upon the consummation with the support of a third-party investor (other than Hearst Corporation) or the existing bank group and the Company of a Control Transaction prior to the commencement of any Bankruptcy Case involving the Company or as part of "pre-packaged" or "pre-arranged" Plan conceived prior to the commencement of any Bankruptcy Case involving the Company; (iii) $3.5 million upon the consummation of a Control Transaction that would not otherwise qualify for a MNG Completion Fee under clause (i) or (ii) above and is part of a chapter 11 case involving the support of the Hearst Corporation, a third party investor or the existing bank group supported by the Debtor; or (iv) $2.75 million upon the consummation of any other Control Transaction pursuant to a chapter 11 case.

(c) Non-Control Transaction Fee: A Non-Control Transaction fee equal to an amount based on the Aggregate Consideration as detailed below:

| Aggregate Consideration ($ in millions) | Non-Control Transaction Fee Percentage |
| --- | --- |
| $25.0 | 2.50 |
| 50.0 | 2.20 |
| 100.0 | 1.75 |
| 200.0 | 1.30 |
| 300.0 | 1.10 |

|           |       |
|-----------|-------|
| 400.0     | 1.00  |
| 500.0     | 0.90  |
| 500.0+    | 0.85  |

  (d) <u>New Capital Fee</u>: A fee (the "<u>New Capital Fee</u>") equal to (i) 1.50% of the face amount of any senior secured debt raised including, without limitation, any debtor-in-possession financing raised; (including the debtor-in-possession financing); (ii) 2.50% of the face amount of any junior secured debt raised, (iii) 3.00% of the face amount of any senior or subordinated unsecured debt raised and (iv) 5.00% of any equity capital, or capital convertible into equity, raised (each a "<u>Financing</u>"). The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed. No New Capital Fee shall be payable to Rothschild if and only to the extent that any new capital is raised from current holders (and affiliates thereof) of debt or equity securities issued by the Debtor or its subsidiaries ("<u>Current Holders</u>"), as of the date of the Engagement Letter, unless such Current Holders agree to put in new capital in response to a process in which third parties (other than or in addition to the Current Holders) are invited to participate.

  17. Rothschild and the Debtor agree that if the Prepackaged Plan is confirmed and consummated, the MNG Completion Fee amount payable to Rothschild will be $4.0 million, as described in paragraph 15(b)(ii) above, and there will be no Non-Control Transaction Fee and no New Capital Fee due or payable.

  18. In addition to the fees described above, the Debtor and its subsidiaries have agreed to reimburse Rothschild for all out-of-pocket expenses reasonably incurred by Rothschild in connection with the matters contemplated by the Engagement Letter, including, without limitation, reasonable fees, disbursements, and charges of Rothschild's counsel. Reasonable expenses also include, but are not limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research, and courier services.

  19. The hours worked, the results achieved, and the ultimate benefit to the Debtor for the work performed by Rothschild in connection with its engagement may vary and the Debtor and Rothschild have taken this into account in setting the above fees. The Fee

Structure described above was established to reflect the difficulty of the extensive assignments Rothschild anticipated in connection with this engagement pre-petition and expects to continue to undertake upon retention by the Debtor. Further, the Fee Structure is consistent with Rothschild's normal and customary billing practices for cases of this size and complexity which required the level of services to be provided. Accordingly, Rothschild and the Debtor believe the Fee Structure is both reasonable and market-based.

20. It is not the general practice of investment banking firms, including Rothschild, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d). Because Rothschild does not ordinarily maintain contemporaneous time records in one-tenth hour (0.1) increments or provide or conform to a schedule of hourly rates for its professionals, Rothschild should, pursuant to Local Rule 2016-2(g), be excused from compliance with such requirements and should be required only to maintain time records in half-hour (0.5) increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtor.

21. Rothschild will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. Rothschild's applications for compensation and expenses will be paid by the Debtor pursuant to the terms of the Engagement Letter, in accordance with the procedures established by the Court.

22. The Debtor acknowledges and agrees that Rothschild's restructuring expertise, as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Debtor during the term of Rothschild's engagement, were important factors in determining the amount of fees payable to Rothschild,

and that the ultimate benefit to the Debtor of Rothschild's services could not be measured merely by reference to the number of hours to be expended by Rothschild.

23. The Debtor also acknowledges and agrees that the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort has been and will be required of Rothschild and its professionals due to its continuing engagement pursuant to this Application and in light of the fact that (i) such commitment may foreclose other opportunities for Rothschild and (ii) the actual time and commitment required of Rothschild and its professionals to perform its services hereunder may vary substantially from week to week and month to month, creating "peak load" issues for Rothschild.

24. In light of the foregoing and given the numerous issues that Rothschild may be required to address in the performance of its services hereunder, Rothschild's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Rothschild's services for engagements of this nature both out-of-court and in a chapter 11 context, the Debtor believes that the Fee Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

25. Furthermore, all compensation from the Debtor will be sought in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines, and orders of the Court, and shall not be subject to the standard of review under section 330 of the Bankruptcy Code other than as set forth in the proposed form of order filed herewith.

**Indemnification Provisions**

26. As part of the overall compensation payable to Rothschild under the terms of the Engagement Letter, the Debtor and its subsidiaries have agreed to certain indemnification and contribution obligations as described in the Engagement Letter, including **Exhibit "A"** to the

Engagement Letter (the "Indemnification Obligations"). More specifically, the Indemnification Obligations provide that the Debtor will indemnify and hold Rothschild and its affiliates, other professional advisors, and its respective directors, officers, controlling persons, agents, and employees (collectively, the "Indemnified Parties") harmless against liabilities arising out of or in connection with its retention by the Debtor, except for any liability for losses, claims, damages, or liabilities incurred by the Debtor that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence, willful misconduct, or fraud of Rothschild.

27.     The Debtor and Rothschild believe that the Indemnification Obligations are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions. *See, e.g., In re New Century TRS Holdings, Inc.*, No. 07-10416 (Bankr. D. Del. Apr. 25, 2007); *In re Calpine Corp.*, No. 05-60200 (Bankr. S.D.N.Y. May 2, 2006); *In re FLYi, Inc.*, No. 05-20011 (Bankr. D. Del. Jan. 17, 2006); *In re Foamex Int'l, Inc.*, No. 05-12685 (Bankr. D. Del. Oct. 17, 2005); *In re Collins & Aikman Corp.*, No. 05-55927 (Bankr. E.D. Mich. July 18, 2005); *In re Oakwood Homes Corp.*, No. 02-13396 (Bankr. D. Del. July 21, 2003); *In re NTELOS, Inc.*, No. 03-32094 (Bankr. E.D. Va. Apr. 16, 2003); *In re U.S. Airways, Inc.*, No. 02-83984 (Bankr. E.D. Va. Aug. 12, 2002); *In re United Artists Theatre Co.*, No. 00-3514 (Bankr. D. Del. Nov. 14, 2000).

28.     The terms and conditions of the Engagement Letter, including the Indemnification Obligations contained therein, were negotiated by the Debtor and Rothschild at arm's-length and in good faith. The Debtor respectfully submits that the Indemnification Obligations contained in the Engagement Letter, viewed in conjunction with the other terms of

Rothschild's proposed retention, are reasonable and in the best interests of the Debtor, its estate, and all parties in interest in light of the fact that the Debtor requires Rothschild's services to successfully reorganize. Accordingly, as part of this Application, the Debtor requests that this Court approve the Indemnification Obligations.

## Basis for Relief

29. The Debtor seeks approval of the Fee Structure and Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis .... " 11 U.S.C. § 328(a). Accordingly, section 328 permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions, which is a significant departure from prior bankruptcy practice relating to the compensation of professionals. As the United States Court of Appeals for the Fifth Circuit recognized in *In re Nat'l Gypsum Co.*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present section 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present section 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted). Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy

14

Code. *See, e.g., In re U.S. Airways, Inc.*, 02-83984 (Bankr. E.D. Va. Aug. 12, 2002); *In re J.L. French Auto. Castings, Inc.*, No. 06-10119 (Bankr. D. Del. March 24, 2006).

30.     Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g., In re Tronox Inc.*, No. 09-10156 (Bankr. S.D.N.Y., January 12, 2009); *In re Dura Auto. Sys., Inc.*, No. 06-11202 (Bankr. D. Del., Dec. 7, 2006); *In re J.L. French Auto. Castings, Inc.*, No. 06-10119 (Bankr. D. Del., Mar. 24, 2006); *In re FLYi, Inc.*, No. 05-20011 (Bankr. D. Del., January 17, 2006); *In re Delphi Corp.*, No. 05-44481 (Bankr. S.D.N.Y., Nov. 30, 2005); *In re Foamex Int., Inc.*, No. 05-12685 (Bankr. D. Del. October 17, 2005); *In re Solutia Inc.*, No. 03-17949 (Bankr. S.D.N.Y. April 13 2003); *In re Superior TeleCom Inc.*, No. 03-10607 (Bankr. D. Del. Apr. 10, 2003); *In re UAL Corp.*, No. 02-48191 (Bankr. N.D. Ill. February 21, 2003); *In re Guilford Mills, Inc.*, No. 02-40667 (Bankr. S.D.N.Y. June 26, 2002); *In re Kaiser Aluminum Corp.*, No. 02-10429 (Bankr. D. Del. Mar. 9, 2002); *In re Federal-Mogul Global Inc.*, No. 01-10578 (Bankr. D. Del. Feb. 5, 2002); *In re Trans World Airlines, Inc.*, No. 01-0056 (Bankr. D. Del. Jan. 26, 2001); *In re Motor Coach Industries International, Inc.*, Case No. 08-12136 (Bankr. D. Del. September 15, 2008); *In re VeraSun Energy Corporation*, Case No. 08-12606 (Bankr. D. Del. October 31, 2008); *In re Recycled Paper Greetings Inc.*, No. 09-10002 (KG) (Bankr. D. Del. Jan. 2, 2009).

31.     The Debtor believes the Fee Structure and Indemnification Obligations set forth in the Engagement Letter are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The Fee Structure and Indemnification Obligations adequately reflect: (i) the nature of the services to be provided by Rothschild; and (ii) fee structures and indemnification provisions typically utilized by Rothschild and other leading financial advisory and investment banking firms, which do not bill their time

on an hourly basis and generally are compensated on a transactional basis. In particular, the Debtor believes the proposed Fee Structure creates a proper balance between fixed, monthly fees, and contingency fees based on the successful consummation of certain sales of the Debtor's assets, raises of new capital and the overall success of this chapter 11 case. Moreover, Rothschild's substantial experience with respect to financial advisory and investment banking services, coupled with the nature and scope of work already performed by Rothschild before the Petition Date, further suggest the reasonableness of the Fee Structure and Indemnification Obligations.

### Rothschild's Disinterestedness

32. To the best of the Debtor's knowledge, information and belief, and except and to the extent disclosed herein and in the Resnick Declaration, (a) Rothschild is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and holds no interest adverse to the Debtor or its estate in connection with the matters for which Rothschild is to be retained by the Debtor; and (b) Rothschild has no connection with the Debtor, its creditors, the U.S. Trustee, or other parties in interest in this chapter 11 case.

33. The Debtor's knowledge, information, and belief regarding the matters set forth herein are based upon, and made in reliance on, the Resnick Declaration. To the extent that Rothschild discovers any additional facts bearing on the matters described herein during the period of Rothschild's retention, Rothschild will supplement the information contained in the Resnick Declaration, as required by Bankruptcy Rule 2014(a).

### Waiver of Local Rule 2016-2(g)

34. As noted above, Rothschild's compensation will not be calculated and paid based on the number of hours Rothschild expends providing services to the Debtor.

16

Therefore, Rothschild requests that it be excused from filing time records in accordance with the Guidelines and Local Rule 2016-2(d). Rather, in its fee applications filed with the Court, Rothschild will present descriptions of the services it provided the Debtor, the approximate time expended in providing those services, and the individuals who provided such services.

## Notice

35. No trustee, unsecured creditors' committee or examiner has been appointed in this chapter 11 case. Notice of this Application shall be provided to (i) the attorneys for the Debtor, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004-1482, Attn.: Kathryn A. Coleman, Esq. and Eric J. Fromme, Esq.; (ii) the co-attorneys for the Debtor, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 18th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn.: Derek C. Abbott, Esq. and Daniel B. Butz, Esq.; (iii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801-3519; (iv) the attorneys for Bank of America, N.A., administrative agent under the Senior Credit Agreement, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017-3904, Attn.: John Fouhey, Esq. and Damian S. Schaible, Esq.; (v) the co-attorneys for Bank of America, N.A., administrative agent under the Senior Credit Agreement, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801-3361, Attn.: Mark D. Collins, Esq.; (vi) The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee under each of the Indentures, 700 South Flower Street, Suite 500, Los Angeles, CA 90017-4101, Attn.: Raymond Torres; (vii) those parties listed on the list of creditors holding the twenty (20) largest unsecured claims against the Debtor, as identified in its chapter 11 petition; and (viii) any persons who have filed a request for notice in this chapter 11 case pursuant to Bankruptcy Rule 2002 (collectively the "Notice Parties").

## No Previous Request

36.     No previous request for the relief sought herein has been made by the Debtor to this Court or any other court.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and such other relief as the Court may deem just and proper.

Dated: February 1, 2010
      Denver, Colorado

**AFFILIATED MEDIA, INC.**

By:/s/ Ronald A. Mayo
    Ronald A. Mayo
    Vice President and Chief Financial Officer of Affiliated Media, Inc.