## IN THE UNITED STATES BANKRUPTCY COURT
## IN THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

*In re*                                   :

                                          :

**AFFILIATED MEDIA, INC.,** [1]           :     **Chapter 11**

                                          :

                                          :     **Case No. 10-10202 (KJC)**

           **Debtor.**                    :

                                          :     Re: D.I. 13, 14, 15, 16, 17, 147, 149

                                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) APPROVING THE
DEBTOR'S (A) DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125 AND
1126(b) OF THE BANKRUPTCY CODE, (B) SOLICITATION OF VOTES AND VOTING
PROCEDURES AND (C) FORMS OF BALLOTS AND (II) CONFIRMING THE DEBTOR'S
PREPACKAGED PLAN OF REORGANIZATION UNDER
<u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

The debtor-in-possession in the above-captioned chapter 11 case (the "<u>Debtor</u>" or

"<u>AMI</u>"),[2] having proposed and filed (A) the Prepackaged Plan of Reorganization of Affiliated Media,

Inc., dated December 18, 2009 and filed with the United States Bankruptcy Court for the District of

Delaware (the "<u>Court</u>") on January 23, 2010 (the "<u>Original Prepackaged Plan</u>" [Docket No. 14] and

together with the plan supplement dated January 6, 2010 and filed with the Court on January 23,

2010 (the "<u>First Plan Supplement</u>") [Docket No. 15], the plan supplement dated January 9, 2010 and

filed with the Court on January 23, 2010 (the "<u>Second Plan Supplement</u>") [Docket No. 16] and that

certain plan supplement dated March 2, 2010 (the "<u>Third Plan Supplement</u>" [Docket No. 149] and

collectively with the First Plan Supplement and the Second Plan Supplement, the "<u>Plan</u>

---

[1]     The last four digits of the Debtor's federal tax identification number are 5553. The Debtor's corporate
        headquarters and mailing address is 101 W. Colfax Avenue, Suite 1100, Denver, CO 80202.

[2]     Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the
        Prepackaged Plan. The rules of construction in section 102 of the Bankruptcy Code shall apply to this
        Confirmation Order.

Supplements") and as amended by the Plan Supplements and the Amended Prepackaged Plan of

Reorganization of Affiliated Media, Inc., dated March 2, 2010 and filed with the Court on March 3,

2010 (the "Plan Amendment") [Docket No. 147], the "Prepackaged Plan"), annexed hereto as

**Exhibit "A"**, and (B)(i) the Disclosure Statement Relating to the Prepackaged Plan of

Reorganization of Affiliated Media, Inc., dated December 18, 2009 and filed with the Court on

January 23, 2010 (the "Original Disclosure Statement" [Docket No. 13] and, as supplemented by the

First Plan Supplement and the Second Plan Supplement, the "Disclosure Statement"), and (ii) the

Original Disclosure Statement, the Original Prepackaged Plan, the First Plan Supplement, the Second

Plan Supplement and appropriate ballots for voting on the Prepackaged Plan (the "Ballots", and with

the Original Disclosure Statement, the Original Prepackaged Plan, the First Plan Supplement and the

Second Plan Supplement, the "Solicitation Package") in the forms attached as Exhibits "2", "3" and

"6" to the Declaration of Service and Vote Certification of Epiq Bankruptcy Solutions, LLC (the

"Epiq Declaration"), sworn to by Stephanie Kjontvedt, Vice President, Senior Consultant of Epiq

Bankruptcy Solutions, LLC ("Epiq") and filed with the Court on January 23, 2010 (the "Voting

Certification") [Docket. No. 17], having been duly transmitted to holders of Claims in compliance

with the procedures set forth in the Voting Certification (the "Solicitation Procedures"); and the

Court having entered an order (I) Scheduling a Combined Hearing to Consider (A) Approval of the

Disclosure Statement, (B) Approval of the Solicitation Procedures and Form of Ballots and (C)

Confirmation of the Prepackaged Plan; (II) Establishing Deadlines and Procedures to File Objections

to the Disclosure Statement, the Solicitation Procedures and the Prepackaged Plan; (III) Approving

the Form and Manner of Notice of the Confirmation Hearing; and (IV) Granting Related Relief (the

"Scheduling Order"), which, among other things, scheduled the hearing to approve the Disclosure

Statement for March 4, 2010 (the "Disclosure Statement Hearing"), to be immediately followed by a

hearing to consider confirmation of the Prepackaged Plan (the "Confirmation Hearing" and, together with the Disclosure Statement Hearing, the "Combined Hearing"); and due notice of the Combined Hearing having been given to holders of Claims against the Debtor and other parties-in-interest in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Scheduling Order and the Solicitation Procedures, as established by the affidavits of service, mailing and/or publication filed with the Court, including (a) the Affidavit of Service of Stephenie Kjontvedt regarding the Notice of Commencement of Case Under Chapter 11 of the Bankruptcy Code and Notice of Combined Hearing to Approve Adequacy of Disclosure Statement and Confirmation of Prepackaged Plan of Reorganization dated February 5, 2010 [Docket No. 101], (b) the Affidavit of Service of Panagiota Manatakis regarding the Notice of Commencement of Case Under Chapter 11 of the Bankruptcy Code and Notice of Combined Hearing to Approve Adequacy of Disclosure Statement and Confirmation of Prepackaged Plan of Reorganization dated February 5, 2010 [Docket No. 100], and (c) the Affidavit of Erin Ostenson regarding publication in the *Wall Street Journal* (National Edition) of the Notice of Commencement of Case Under Chapter 11 of the Bankruptcy Code and Notice of Combined Hearing to Approve Adequacy of Disclosure Statement and Confirmation of Prepackaged Plan of Reorganization dated January 29, 2010 [Docket No. 104] (the "Notice Affidavits"), and such notice being sufficient under the circumstances and no further notice being required; and such filing and notice thereof being sufficient under the circumstances and no further notice being required; and based upon and after full consideration of the entire record of the Combined Hearing, including (A) the Disclosure Statement, the Prepackaged Plan (including the Plan Supplements), the Voting Certification, (B) the Debtor's memorandum of law, dated March 2, 2010, in support of confirmation

of the Prepackaged Plan, (C) the Declaration of Ronald A. Mayo in support of confirmation of the

Prepackaged Plan, dated March 2, 2010 [Docket No. 134] (the "Mayo Declaration"), (D) the

Declaration of Marc L. Pfefferle in support of confirmation of the Prepackaged Plan, dated March 2,

2010 [Docket No. 128] (the "Pfefferle Declaration"), (E) the Declaration of Daniel Gilligan in

support of confirmation of the Prepackaged Plan, dated March 2, 2010 [Docket No. 127] (the

"Gilligan Declaration" and together with the Mayo Declaration and the Pfefferle Declaration, the

"Declarations"), (F) the Notice Affidavits and (G) (i) no objections having been filed to the approval

of the Disclosure Statement, and (ii) any objections filed to the confirmation of the Prepackaged Plan

having been resolved or overruled; and the Court being familiar with the Disclosure Statement and

the Prepackaged Plan and other relevant factors affecting the Debtor's chapter 11 case; and the Court

being fully familiar with, and having taken judicial notice of, the entire record of the Debtor's

chapter 11 case; and upon the arguments of counsel and the evidence proffered and adduced at the

Combined Hearing; and the Court having found and determined that the Disclosure Statement should

be approved and the Prepackaged Plan should be confirmed as reflected by the Court's rulings made

herein and at the Combined Hearing; and after due deliberation and sufficient cause appearing

therefor;

It hereby is DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED

THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.    Findings and Conclusions.  The findings and conclusions set forth herein and

in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law

pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by

Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute

conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.  Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334).  The Court has jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334.  Approval of the Disclosure Statement and confirmation of the Prepackaged Plan are core proceedings pursuant to 28 U.S.C. § 157(b)(2) and this Court has jurisdiction to enter a final order with respect thereto.  The Debtor is an eligible debtor under section 109 of the Bankruptcy Code.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtor is a proper plan proponent under section 1121(a) of the Bankruptcy Code.

3.  Chapter 11 Petition.  On January 22, 2010 (the "Petition Date"), the Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Reorganization Case").  The Debtor is authorized to continue to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code.  No statutory committee of unsecured creditors has been appointed pursuant to section 1102 of the Bankruptcy Code.

4.  Judicial Notice.  The Court takes judicial notice of the docket of the Reorganization Case maintained by the Clerk of the Court and/or its duly appointed agent, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Reorganization Case.

5. <u>Burden of Proof</u>. The Debtor, as the Prepackaged Plan proponent, has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. The Debtor has met such burden.

6. <u>Adequacy of Disclosure Statement</u>. The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy law, including the Securities Act of 1933, as amended (the "Securities Act"), (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Prepackaged Plan, and the transactions contemplated therein and (c) is approved in all respects.

7. <u>Voting</u>. Votes on the Prepackaged Plan were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Voting Certification, votes to accept or reject the Prepackaged Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and applicable nonbankruptcy law.

8. <u>Solicitation</u>. Prior to the Petition Date, the Original Prepackaged Plan (including the First Plan Supplement and the Second Plan Supplement), the Disclosure Statement, and the Ballots, and, subsequent to the Petition Date, notice of the Combined Hearing, the Third Plan Supplement and the Plan Amendment were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rule 3018, the Local Rules and the Scheduling Order. The forms of the Ballots adequately addressed the particular needs of the Reorganization Case and were appropriate for holders of Class 2 (Senior Loan Claims) and Class 5 (Subordinated Note Claims) – the Classes of Claims entitled under the Prepackaged Plan to vote to accept or reject the Prepackaged Plan. The period during which the Debtor solicited acceptances of the Prepackaged Plan was a

reasonable period of time for holders to make an informed decision to accept or reject the Prepackaged Plan. The Debtor was not required to solicit votes from creditors holding Claims in any of Class 1 (Priority Non-Tax Claims), Class 3 (Other Secured Claims), Class 4 (General Unsecured Claims) and Class 6 (Intercompany Claims), as the claims in each of these classes are unimpaired under the Prepackaged Plan. The Debtor also was not required to solicit votes from the holders of Class 7 (Securities Litigation Claims) or Class 8 (Old AMI Equity Interests), as such Classes receive no recovery under the Prepackaged Plan and are deemed to reject the Prepackaged Plan. As described in and as evidenced by the Voting Certification and the Notice Affidavits, the transmittal and service of the Prepackaged Plan, the Disclosure Statement, the Ballots, the notice of the Combined Hearing, and publication of such notice of the Combined Hearing (all of the foregoing, the "Solicitation") was timely, adequate and sufficient under the circumstances. The Solicitation of votes on the Prepackaged Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Reorganization Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws and regulations. The Debtor, the Reorganized Debtor, the Administrative Agent, the Senior Lender Steering Committee, the Senior Lenders, the Subordinated Note Holders and any and all affiliates, members, managers, shareholders, partners, employees, attorneys and advisors of the foregoing are entitled to the protection of section 1125(e) of the Bankruptcy Code.

9.      Notice. As is evidenced by the Voting Certification and the Notice Affidavits, the transmittal and service of the Prepackaged Plan, the Disclosure Statement, the Ballots, the Plan Supplements and the Plan Amendment were adequate and sufficient under the circumstances, and all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to confirmation of the Prepackaged Plan) have been given

7

due, proper, timely, and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable nonbankruptcy law and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

10.    Plan Supplements.  On January 6, 2010, the Debtor served by next business day service the First Plan Supplement to all holders of Claims, and on January 9, 2010, the Debtor served by next business day service the Second Plan Supplement to all holders of Claims. All such materials comply with the terms of the Prepackaged Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and no other or further notice is or shall be required. On March 2, 2010, the Debtor served and filed the Third Plan Supplement, which includes a list of six initial members of the Board and officers of Reorganized AMI.

11.    Plan Modifications (11 U.S.C. §1127).  Subsequent to solicitation, the Debtor made certain non-material modifications to the Prepackaged Plan contained in the Plan Amendment and the Third Plan Supplement that do not adversely change the treatment of the claim of any creditor or interest of any equity interest holder (the "Plan Modifications"). The mailing to holders of Claims entitled to vote to accept or reject the Prepackaged Plan and the filing with the Court of the Prepackaged Plan as modified by the Plan Modifications, constitutes due and sufficient notice thereof.

12.    Deemed Acceptance of Prepackaged Plan as Modified.  All Plan Modifications are warranted under the circumstances of the Reorganization Case, and are consistent with all of the provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123, 1125 and 1127 and Bankruptcy Rule 3019, and all holders of Claims who voted to accept the

8

Prepackaged Plan and who are conclusively presumed to have accepted the Prepackaged Plan are deemed to have accepted the Prepackaged Plan as modified by the Plan Modifications. No holder of a Claim or Equity Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

       13.    <u>Bankruptcy Rule 3016(a)</u>. The Prepackaged Plan reflects the date it was filed with the Court and identifies the entities submitting it as Prepackaged Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

<b><u>Compliance with the Requirements of Section 1129 of the Bankruptcy Code</u></b>

       14.    <u>Prepackaged Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(l))</u>. The Prepackaged Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

       (a)    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(l))</u>. In addition to Administrative Expense Claims, Professional Compensation and Reimbursement Claims and Priority Tax Claims, which need not be classified, Article III of the Prepackaged Plan classifies eight (8) Classes of Claims and Equity Interests for the Debtor. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Prepackaged Plan, and such classifications does not unfairly discriminate between holders of Claims and Equity Interests. The Prepackaged Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

       (b)    <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Article IV of the Prepackaged Plan specifies that Class 1 (Priority Non-Tax Claims), Class 3 (Other Secured Claims), Class 4 (General Unsecured Claims) and Class 6 (Intercompany Claims) are unimpaired under the

Prepackaged Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Articles III and IV of the Prepackaged Plan designate Class 2 (Senior Loan Claims), Class 5 (Subordinated Note Claims), Class 7 (Securities Litigation Claims) and Class 8 (Old AMI Equity Interests) as impaired within the meaning of section 1124 of the Bankruptcy Code and specifies the treatment of the Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)     No Discrimination (11 U.S.C. § 1123(a)(4)).  The Prepackaged Plan provides for the same treatment by the Debtor for each Claim or Equity Interest in each respective Class, and no holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)     Implementation of the Prepackaged Plan (11 U.S.C. § 1123(a)(5)).  The Prepackaged Plan and the various documents and agreements set forth in the Plan Supplements and described in the Prepackaged Plan provide adequate and proper means for the implementation of the Prepackaged Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including, without limitation, (i) all corporate action as set forth more fully in Section 6.1 of the Prepackaged Plan, including the adoption and filing with the Secretary of State of the State of Delaware the Restated Certificate of Incorporation and adoption of the Restated Bylaws; (ii) the issuance of New Senior Secured Term Notes, New Common Stock, Subordinated Note Warrants, Singleton Warrants, and the execution of certain related documents; (iii) the entry into the New Senior Credit Facility; (iv) the cancellation of existing securities and agreements and the surrender of existing securities; (v) adoption or assumption, if applicable, of the agreements with existing management; (vi) entry into

the Amended and Restated Employment Agreements; (vii) adoption of the Incentive Bonus Agreements; (viii) entry into the Stockholders' Agreement; and (ix) the authorization of all corporate actions necessary to effectuate the Prepackaged Plan.

(f)      Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. § 1123(a)(6)). The Restated Certificate of Incorporation of Affiliated Media, Inc. prohibits the issuance of non-voting equity securities and provides as to classes of securities an appropriate distribution of voting power among such classes, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(g)      Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). Section 6.1 of the Prepackaged Plan and the Restated Certificate of Incorporation of Affiliated Media, Inc. in Plan Exhibit 8 contain provisions with respect to the manner of selection of directors and officers of the Reorganized Debtor that are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code. The identities of the officers of Reorganized AMI have been disclosed in the Disclosure Statement. The identities of the members of the initial Board have been disclosed in the Third Plan Supplement.

(h)      Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)). Pursuant to Article III of the Prepackaged Plan, (a) Class 2 (Senior Loan Claims), Class 5 (Subordinated Note Claims), Class 7 (Securities Litigation Claims) and Class 8 (Old AMI Equity Interests) are impaired and (b) Class 1 (Priority Non-Tax Claims), Class 3 (Other Secured Claims), Class 4 (General Unsecured Claims) and Class 6 (Intercompany Claims) are unimpaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(i)      Assumption and Rejection (11 U.S.C. § 1123(b)(2)). Article VIII of the Prepackaged Plan governs the assumption and rejection of executory contracts and unexpired leases

11

and meets the requirements of section 365(b) of the Bankruptcy Code, thereby satisfying section 1123(b)(2) of the Bankruptcy Code. There have been no objections to the Debtor's assumption of executory contracts pursuant to Article VIII of the Prepackaged Plan.

        (j)     Additional Plan Provisions (11 U.S.C. § 1123(b)(6)). The provisions of the Prepackaged Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

        (k)     Cure of Defaults (11 U.S.C. § 1123(d)). Section 8.1 of the Prepackaged Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Prepackaged Plan in accordance with section 365(b)(1) of the Bankruptcy Code. All cure amounts will be determined in accordance with the underlying agreements and applicable bankruptcy and nonbankruptcy law. Thus, the Prepackaged Plan complies with section 1123(d) of the Bankruptcy Code

        15.     The Debtor's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtor, as the Prepackaged Plan proponent, has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically, *inter alia*:

        (a)     The Debtor is an eligible debtor under section 109 of the Bankruptcy Code;

        (b)     The Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by order of the Court; and

        (c)     The Debtor has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable nonbankruptcy law, the Scheduling Order, and all other applicable law, in transmitting the

Solicitation Package and related documents and notices and in soliciting and tabulating the votes on the Prepackaged Plan.

16.     Prepackaged Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtor has proposed the Prepackaged Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtor's good faith is evident from the facts and records of this Reorganization Case, the Disclosure Statement and the hearing thereon, and the record of the Combined Hearing and other proceedings held in this Reorganization Case.  The Prepackaged Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate and effectuating a successful reorganization of the Debtor.  The Senior Lenders and the Subordinated Note holders support confirmation of the Prepackaged Plan.  Further, the Prepackaged Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(5), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and is each necessary for the Debtor's successful reorganization.

17.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).

(a)     Any payment made or to be made by the Debtor for services or for costs and expenses of the Debtor's professionals in connection with the Debtor's Reorganization Case, or in connection with the Prepackaged Plan and incident to the Debtor's Reorganization Case, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

(b)     Pursuant to the Forbearance Agreement, the Prepackaged Plan and the Order Pursuant to Sections 105(a), 361 and 363(e) of the Bankruptcy Code and Bankruptcy Rule 4001 Granting Adequate Protection to Pre-Petition Senior Lenders, dated February 8, 2010 [Docket No.

80], the Debtor has agreed to pay (without any requirement to file any retention or fee applications) the accrued fees, costs, expenses and other charges of the Administrative Agent (including the reasonable fees and expenses of its counsel and advisors that are authorized to be paid under the Senior Credit Agreement Documents, including, but not limited to, fees and expenses of Davis Polk & Wardwell LLP, Dow Lohnes PLLC, Richards, Layton & Finger, P.A. and FTI Consulting, Inc.) and the reasonable out-of-pocket travel and other expenses incurred by each member of the Senior Lender Steering Committee and such payments satisfy section 1129(a)(4) of the Bankruptcy Code.

18.　　Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtor after confirmation of the Prepackaged Plan have been fully disclosed to the extent such information is available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Debtor and with public policy. As set forth in section 6.1 of the Prepackaged Plan, from and after the Effective Date, the Board shall consist of the six individuals listed in the Third Plan Supplement, which includes information about the directors' affiliations, and one director as yet unnamed, whose identity and affiliations will be determined prior to the Effective Date. Each member will serve in accordance with the terms and subject to the conditions of the Restated Certificate of Incorporation, Restated Bylaws, Stockholders' Agreement, and other relevant organizational documents, each as applicable. The identity of any insider that will be employed or retained by the Reorganized Debtor and the nature of such insider's compensation have also been fully disclosed.

19.　　No Rate Changes (11 U.S.C. § 1129(a)(6)). The Prepackaged Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and

does not require approval by any governmental regulator.  Therefore, the Prepackaged Plan satisfies section 1129(a)(6) of the Bankruptcy Code.

      20.    <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>.  The Prepackaged Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis set forth in Article VII of the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an impaired Claim or Equity Interest either has accepted the Prepackaged Plan or will receive or retain under the Prepackaged Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

      21.    <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  Class 1 (Priority Non-Tax Claims), Class 3 (Other Secured Claims), Class 4 (General Unsecured Claims) and Class 6 (Intercompany Claims) are Classes of unimpaired Claims that are conclusively presumed to have accepted the Prepackaged Plan in accordance with section 1126(f) of the Bankruptcy Code.  Class 2 (Senior Loan Claims) and Class 5 (Subordinated Note Claims) have voted to accept the Prepackaged Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code.  No Classes voted against the Prepackaged Plan; however Class 7 (Securities Litigation Claims) and Class 8 (Old AMI Equity Interests) (collectively, the "<u>Deemed Rejecting Classes</u>") are impaired by the Prepackaged Plan and are not entitled to receive or retain any property under the Prepackaged Plan and, therefore, are deemed to have rejected the Prepackaged Plan pursuant to section 1126(g) of the Bankruptcy Code.  Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Deemed Rejecting Classes, the Prepackaged Plan is confirmable because the Prepackaged Plan does

not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b)(1) of the Bankruptcy Code with respect to such Classes.

22.      Treatment of Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims (11 U.S.C. § 1129(a)(9). The treatment of Allowed Administrative Expense Claims pursuant to Section 2.1 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Non-Tax Claims pursuant to Section 4.1 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code, and the treatment of Priority Tax Claims pursuant to Section 2.3 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

23.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10). Class 2 (Senior Loan Claims) and Class 5 (Subordinated Note Claims) are impaired classes under the Prepackaged Plan, and both Class 2 and Class 5 voted to accept the Prepackaged Plan by the requisite majorities. As such, without including any acceptance of the Prepackaged Plan by any insider, there is at least one Class of Claims against the Debtor that is impaired under the Prepackaged Plan and has accepted the Prepackaged Plan. Thus, the Prepackaged Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

24.      Feasibility (11 U.S.C., § 1129(a)(11)). The evidence submitted regarding feasibility through the Disclosure Statement, the Supporting Declarations and the evidence proffered or adduced at or prior to the Confirmation Hearing (a) is persuasive and credible, (b) has not been controverted by other evidence, and (c) establishes that the Prepackaged Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

25.     Payment of Fees (11 U.S.C. § 1129(a)(12)).  As provided in Section 12.1 of the Prepackaged Plan, all fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court, have been paid or shall be paid on or before the Effective Date, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

26.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code.  On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtor shall continue to pay all retiree benefits (within the meaning of, and subject to the limitations of, section 1114 of the Bankruptcy Code), if any, of the Debtor at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to confirmation of the Prepackaged Plan, for the duration of the period for which the Debtor has obligated itself to provide such benefits.  The Reorganized Debtor may unilaterally modify the terms and conditions of the retiree benefits (including, without limitation, the Reorganized Debtor's right of termination and amendment thereunder), as otherwise permitted pursuant to the terms of the applicable plans, non-bankruptcy law, or section 1114(m) of the Bankruptcy Code.  Accordingly, the Prepackaged Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

27.     No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Reorganization Case.

28.     Debtor Is Not an Individual (11 U.S.C. § 1129(a)(15)).  The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Reorganization Case.

29.     No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. §
1129(a)(16)).  The Debtor is a moneyed, business, or commercial corporation, and accordingly,
section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Reorganization Case.

30.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  Based
upon the Mayo Declaration and all other evidence before the Court, the Prepackaged Plan does not
discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes, as
required by sections 1129(b)(1) and (2) of the Bankruptcy Code.  Thus, the Prepackaged Plan may be
confirmed notwithstanding the Debtor's failure to satisfy section 1129(a)(8) of the Bankruptcy Code.
Upon confirmation and the occurrence of the Effective Date, the Prepackaged Plan shall be binding
upon the members of the Deemed Rejecting Classes.

(a)     The Plan Does Not Unfairly Discriminate Against the Deemed Rejecting
Classes.  The Prepackaged Plan does not unfairly discriminate against the Deemed Rejecting Classes.
Therefore, the Prepackaged Plan satisfies section 1129(b)(1) of the Bankruptcy Code.

(b)     The Plan is Fair and Equitable.  The Prepackaged Plan is fair and equitable, in
that no holder of a Claim or Equity Interest that is junior to the Claims and Equity Interests classified
in the Deemed Rejecting Classes will receive or retain under the Prepackaged Plan any property on
account of such junior interest.  Therefore, the Prepackaged Plan satisfies section 1129(b)(2)(C)(ii) of
the Bankruptcy Code.

31.     Only One Plan (11 U.S.C. § 1129(c)).  The Prepackaged Plan is the only plan
filed in this case, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in this
Reorganization Case.

32.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The principal purpose of
the Prepackaged Plan, as evidenced by its terms,  is not the avoidance of taxes or the avoidance of the

application of section 5 of the Securities Act and no governmental entity has objected to the

confirmation of the Prepackaged Plan on any such grounds. The Prepackaged Plan, therefore,

satisfies the requirements of section 1129(d) of the Bankruptcy Code.

33.    Satisfaction of Confirmation Requirements.  Based upon the foregoing, the

Prepackaged Plan satisfies the requirements for confirmation set forth in section 1129 of the

Bankruptcy Code.

34.    Implementation.  All documents and agreements necessary to implement the

Prepackaged Plan, including, without limitation, those contained in the Plan Supplements, and all

other relevant and necessary documents including the Plan Documents have been negotiated in good

faith and at arm's-length and are in the best interests of the Debtor and the Reorganized Debtor and

shall, upon completion of documentation and execution, be valid, binding, and enforceable

documents and agreements not in conflict with any federal or state law.

35.    Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before

the Court in this Reorganization Case, including evidence presented at the Combined Hearing, the

Debtor, the Reorganized Debtor, the Senior Lender Steering Committee, the Senior Lenders, the

Administrative Agent, the Subordinated Note holders, the Indenture Trustee, and their respective

successors, predecessors, control persons, members, officers, directors, employees and agents and

their respective attorneys, financial advisors, investment bankers, accountants, and other

professionals retained by such persons (i) have acted in "good faith" within the meaning of section

1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy

Code, Bankruptcy Rules, the Local Rules and any applicable nonbankruptcy law, rule, or regulation

governing the adequacy of disclosure in connection with all their respective activities relating to the

solicitation of acceptances to the Prepackaged Plan and their participation in the activities described

in section 1125 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Prepackaged Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Prepackaged Plan or the offer and issuance of the securities under the Prepackaged Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are Released Parties, the exculpation provisions set forth in Section 10.5 of the Prepackaged Plan.

36.    <u>Good Faith Settlement and Compromise Among the Debtor, the Guaranteeing Subsidiaries, the Senior Lenders, the Administrative Agent and other Creditors</u>.  Except as otherwise provided in the Prepackaged Plan and this Confirmation Order, the Prepackaged Plan is (i) a settlement among the Debtor and its creditors of all Claims and litigation against the Debtor, pending or threatened, or that were or could have been commenced against the Debtor prior to the date of entry of this Confirmation Order (other than the Reorganized Debtor's ability to prosecute objections to Claims and other retained causes of action to the extent preserved under the Prepackaged Plan, including pursuant to Section 10.14 of the Prepackaged Plan) and (ii) a settlement among the Debtor, the Guaranteeing Subsidiaries, the Senior Lenders and the Administrative Agent of all Claims and litigation among them, pending or threatened, or that were or could have been commenced prior to the date of the entry of this Confirmation Order (other than such Claims and litigation in respect of express contractual obligations of any non-Debtor party due to any other non-Debtor party, except as provided in Sections 10.6, 10.7 and 10.8 of the Prepackaged Plan with respect to the Guaranteeing Subsidiaries).  The Debtor, the Guaranteeing Subsidiaries, the Senior Lenders and the Administrative Agent have exercised good faith in reaching a settlement and compromise of claims.  Such settlement

among the Debtor, the Guaranteeing Subsidiaries, the Senior Lenders and the Administrative Agent is (i) fair, equitable and reasonable; (ii) necessary and essential to the Debtor's successful reorganization; (iii) in exchange for good and valuable consideration provided by the Debtor, the Guaranteeing Subsidiaries, the Senior Lenders and the Administrative Agent; (iv) warranted by the exceptional and unique circumstances of the Debtor's reorganization; and (v) consistent with public policy and due process principles.

37.    Assumption or Rejection of Executory Contracts and Unexpired Leases. The Debtor has exercised its reasonable business judgment prior to the Confirmation Hearing in determining to assume each of its executory contracts and unexpired leases as set forth in Article VIII of the Prepackaged Plan, the Plan Supplements, this Confirmation Order or otherwise. Each assumption of an executory contract or unexpired lease pursuant to this Confirmation Order and in accordance with Article VIII of the Prepackaged Plan or otherwise shall be legal, valid and binding upon the Reorganized Debtor and all non-Debtor entities party to such executory contract or unexpired lease (subject to the rights of the non-debtor entities party to such agreements to object to such assumption and the rights of the Reorganized Debtor in response to any such objection); *provided, however*, that nothing herein shall be construed as an Order of this Court compelling performance under any assumed contract or lease.

38.    Adequate Assurance. The Debtor has provided adequate assurance of future performance for each of the executory contracts and unexpired leases that are being assumed by the Debtor pursuant to the Prepackaged Plan. The Debtor has cured or provided adequate assurance that the Reorganized Debtor will cure defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Debtor pursuant to the Prepackaged Plan. The

Prepackaged Plan and such assumptions, therefore, satisfy the requirements of section 365 of the Bankruptcy Code.

39. <u>Valuation</u>. In accordance with the estimated recoveries set forth in the Disclosure Statement, the enterprise value of the Debtor is insufficient to support a distribution to holders of Class 7 (Securities Litigation Claims) or Class 8 (Old AMI Equity Interests) under absolute priority principles.

40. <u>Retention of Jurisdiction</u>. The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Reorganization Case, including the matters set forth in Article XI of the Prepackaged Plan and section 1142 of the Bankruptcy Code and set forth below.

41. <u>Consequences of Not Confirming the Prepackaged Plan</u>. The Debtor has made an uncontroverted showing of the very substantial cost, harm, risk and prejudice to the Estate and its creditors that would result if the Prepackaged Plan is not consummated.

**DECREES**

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

42. <u>Findings of Fact and Conclusions of Law</u>. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

43. <u>Notice of the Combined Hearing</u>. Notice of the Combined Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Reorganization Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

44.    <u>Solicitation</u>. The solicitation of votes on the Prepackaged Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Reorganization Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable nonbankruptcy law.

45.    <u>Ballots</u>. The forms of Ballots annexed to the Voting Certification are in compliance with Bankruptcy Rule 3018(c), conform to Official Form Number 14, and are approved in all respects.

46.    <u>The Disclosure Statement</u>. The Disclosure Statement (a) contains adequate information of a kind generally consistent with the disclosure requirements of applicable nonbankruptcy law, including the Securities Act, (b) contains "adequate information" (as such term is defined in section 1125(a)(l) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Prepackaged Plan and the transactions contemplated therein, and (c) is approved in all respects. To the extent that the Debtor's solicitation of acceptances of the Prepackaged Plan is deemed to constitute an offer of new securities, the Debtor is exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such solicitation under section 4(2) of the Securities Act and Regulation D promulgated thereunder. Section 4(2) exempts from registration under the Securities Act all "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2). The Debtor has complied with the requirements of section 4(2) of the Securities Act, as the prepetition solicitation of acceptances would constitute a private placement of securities. The solicitation to creditors was made only to those creditors who are "Accredited Investors" as defined in Regulation D under the Securities Act, as creditors were required to certify on their Ballots that they were accredited investors.

47.     _Confirmation of the Prepackaged Plan_. The Prepackaged Plan and each of its provisions shall be, and hereby are, CONFIRMED under section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplements are authorized and approved. The terms of the Prepackaged Plan are incorporated by reference into and are an integral part of this Confirmation Order.

48.     _Objections_. All objections, responses to, and statements and comments, if any, in opposition to, the Prepackaged Plan and/or the Disclosure Statement, respectively, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Combined Hearing, shall be, and hereby are, overruled in their entirety for the reasons stated on the record.

49.     _Plan Supplements_. The documents contained in the Plan Supplements, and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto or contemplated thereby (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery and performance thereof by the Reorganized Debtor, are authorized and approved as finalized, executed and delivered. Without further order or authorization of this Court, the Debtor, Reorganized Debtor and their successors are authorized and empowered to make any and all modifications to all documents included as part of the Plan Supplements or otherwise contemplated by the Prepackaged Plan that are consistent with the Prepackaged Plan. Once finalized and executed, the documents comprising the Plan Supplements and all other documents contemplated by the Prepackaged Plan shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all Liens and other security interests purported to be created thereby.

50.    _Provisions of Prepackaged Plan and Confirmation Order Non-severable and Mutually Dependent_.  The provisions of the Prepackaged Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are each non-severable and mutually dependent.

51.    _Preparation, Delivery and Execution of Additional Documents by Holders of Claims_.  Each holder of a Claim receiving a distribution pursuant to the Prepackaged Plan and all other parties-in-interest shall, from time to time, take any reasonable actions as may be necessary or advisable to effectuate the provisions and intent of the Prepackaged Plan.

52.    _Prepackaged Plan Classifications Controlling_.  The classification of Claims and Equity Interests for purposes of distributions made under the Prepackaged Plan shall be governed solely by the terms of the Prepackaged Plan.  The classifications set forth on the Ballots tendered to or returned by the Claims and Equity Interests holders entitled to vote under the Prepackaged Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Prepackaged Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Prepackaged Plan for distribution purposes and (c) shall not be binding on the Debtor or the Reorganized Debtor.

53.    _Treatment in Full Satisfaction_.  The treatment of Claims and Equity Interests set forth in the Prepackaged Plan is in full and complete satisfaction of the legal, contractual and equitable rights that each holder of a Claim or Interest may have against the Debtor, the Debtor's Estate or their respective property, on account of such Claim or Equity Interest.

54.    _No Action_.  Pursuant to the appropriate provisions of the General Corporation Law of the State of Delaware and section 1142(b) of the Bankruptcy Code, no action of the respective directors or stockholders of the Debtor or Reorganized AMI shall be required to authorize

25

the Debtor or Reorganized AMI to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Prepackaged Plan and any contract, instrument, or other document to be executed, delivered, adopted or amended in connection with the implementation of the Prepackaged Plan, provided that such contract, instrument or other document shall be reasonably satisfactory to the Senior Lender Steering Committee.

55.   <u>Vesting of Assets</u>.  Except as otherwise provided in the Prepackaged Plan or in this Confirmation Order, from and after the Effective Date, all property comprising the Estate shall revest in the Debtor and, ultimately, in the Reorganized Debtor, free and clear of all Liens, Claims and Equity Interests (other than as expressly provided herein or in the Prepackaged Plan).  Except as otherwise provided in the Prepackaged Plan, the Debtor, as the Reorganized Debtor, shall continue to exist on and after the Effective Date as a separate Person with all of the powers available to such Person under applicable law, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law.  On and after the Effective Date, the Reorganized Debtor shall be authorized to operate its businesses, and to use, acquire or dispose of assets without supervision or approval by the Bankruptcy Court, and free from any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

56.   <u>Binding Effect</u>.  On or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Prepackaged Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Prepackaged Plan and whether or not such holder has accepted the Prepackaged Plan.

57.   <u>Corporate Action</u>.

(a)    On the Effective Date, all actions contemplated by the Prepackaged Plan shall be deemed authorized and approved in all respects, including (i) adoption or assumption, as applicable, of the agreements with existing management, (ii) selection of the directors and officers for the Reorganized Debtor, (iii) the issuance and distribution of the New Common Stock, (iv) entry into the Warrant Agreement, (v) the issuance and distribution of the Subordinated Note Warrants, (vi) entry into the New Senior Credit Facility, (vii) the issuance of the New Senior Secured Term Notes, (viii) adoption of the Incentive Bonus Agreements, (ix) entry into the Amended and Restated Employment Agreements, (x) the issuance and distribution of the Singleton Warrants, (xi) the adoption of the Restated Certificate of Incorporation and Restated Bylaws, (xii) entry into the Stockholders' Agreement, (xiii) adoption of the Equity Incentive Plan and (xiv) all other actions contemplated by the Prepackaged Plan (whether to occur before or on the Effective Date).  All matters provided for in the Prepackaged Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor in connection with the Prepackaged Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the equity security holders, directors or officers of the Debtor or the Reorganized Debtor.  On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, and instruments contemplated by the Prepackaged Plan (or necessary or desirable to effect the transactions contemplated by the Prepackaged Plan) in the name of and on behalf of the Reorganized Debtor, including (x) the Subordinated Note Warrants, (y) the New Senior Secured Credit Documents (including the New Senior Secured Credit Agreement and the New Senior Secured Term Notes to be issued pursuant thereto) and (z) any and all other agreements, documents, securities and instruments relating to the

27

foregoing. Without limiting the foregoing, the Equity Incentive Plan shall be deemed to have been unanimously approved by the stockholders of Reorganized AMI pursuant to section 303 of the Delaware General Corporation Law.

(b)    The Restated Bylaws, the Restated Certificate of Incorporation and Plan Exhibits 7 and 8, respectively, are (i) consistent with the provisions of the Prepackaged Plan, this Confirmation Order and the Bankruptcy Code and (ii) satisfactory to the Senior Lender Steering Committee. The Restated Certificate of Incorporation will, among other things, (A) authorize the New Common Stock and (B) pursuant to section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code. Any modification to the Restated Certificate of Incorporation as originally filed may be filed after the Confirmation Date and may become effective on or prior to the Effective Date. After the Effective Date, the Reorganized Debtor may file an amended and restated certificate of incorporation (or other formation documents, if applicable) with the Secretary of State in any appropriate jurisdiction.

(c)    On the Effective Date, the operation of the Reorganized Debtor shall become the general responsibility of its Board, subject to, and in accordance with, the Restated Certificate of Incorporation, the Restated Bylaws and the Stockholders' Agreement. The Board shall initially be comprised of seven members. The identities of the initial Class A Directors, as designated by the holders of the Class A New Common Stock, and the initial Class B Directors, as designated by the Senior Lender Steering Committee, have been disclosed.

(d)    The individuals currently serving as the senior officers of the Debtor will continue to serve in the same capacities through and following the Effective Date subject to any changes disclosed in the Plan Supplements. After the Effective Date, the selection and removal of

28

officers of the Reorganized Debtor shall be as provided in the respective Restated Certificate of Incorporation and Restated Bylaws or other organizational documents of the Reorganized Debtor.

58.    Effectuating Documents; Further Transactions.  Pursuant to section 6.15 of the Prepackaged Plan, on or after the occurrence of the Effective Date, the chief executive officer, the president, the chief financial officer or any other appropriate officer of the Debtor, or of the Reorganized Debtor, as the case may be, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Prepackaged Plan.  The secretary or assistant secretary of the Debtor, or the Reorganized Debtor, as the case may be, shall be authorized to certify or attest to any of the foregoing actions.

59.    New Senior Secured Credit Agreement.  On the Effective Date, the New Senior Secured Credit Documents (including the New Senior Secured Credit Agreement), and the New Senior Secured Term Notes will be executed and delivered and the Reorganized Debtor is authorized to execute, deliver and issue the New Senior Secured Credit Documents without the need for any further corporate action and without further action by the holders of Claims or Equity Interests.  Each Senior Lender, by its acceptance of its Pro Rata share of the Term Loan Facility and the Senior Lender Common Stock Distribution, shall be deemed to have accepted and become a party to and bound by, the New Senior Secured Credit Agreement as of the Effective Date, whether or not it has furnished a signature page thereto executed by it.

60.    Issuance of New Common Stock.  On the Effective Date, the Reorganized Debtor is authorized to (i) issue and distribute to Messrs. Singleton and Lodovic the Class A New Common Stock pursuant to the Amended and Restated Employment Agreements, and (ii) issue and distribute the Class B New Common Stock and, if necessary, the Class C New Common Stock to the

29

holders of the Senior Loan Claims. Each holder of a Claim that is entitled to receive a portion of the

Senior Lender Common Stock Distribution pursuant to the Prepackaged Plan will be issued Class B

New Common Stock, provided that any such holder shall be entitled to receive all or a portion of its

shares of the Senior Lender Common Stock Distribution in the form of Class C New Common Stock

if such holder informs the Debtor of its intent to receive such Class C New Common Stock by March

12, 2010.

       61.     Issuance of Subordinated Note Warrants. On the Effective Date, the Debtor

is authorized to issue and distribute the Subordinated Note Warrants to holders of Subordinated Note

Claims, pursuant to the Warrant Agreement and Plan Exhibit 11, and the Subordinated Note

Warrants in all cases shall be governed by the Stockholders' Agreement.

       62.     Singleton Warrants. On the Effective Date, the Debtor is authorized to issue

and distribute the Singleton Warrants to William Dean Singleton, pursuant to the Amended and

Restated Employment Agreement, and the Singleton Warrants in all cases shall be governed by the

Stockholders' Agreement.

       63.     New Stockholders' Agreement. By their acceptance of New Common Stock,

Subordinated Note Warrants and/or Singleton Warrants under the Prepackaged Plan, all Persons

receiving New Common Stock, Subordinated Note Warrants and/or Singleton Warrants pursuant to

the Prepackaged Plan shall be deemed to be parties to and bound by the Stockholders' Agreement

(including for this purpose any shares of New Common Stock issued upon the exercise of the

Subordinated Note Warrants or shares of New Common Stock issued under the Equity Incentive Plan

or Singleton Warrants).

       64.     Compliance with Section 1123(a)(6) of the Bankruptcy Code. The Restated

Certificate of Incorporation and the terms governing the issuance of the New Common Stock,

Singleton Warrants and Subordinated Note Warrants, comply in all respects with section 1123(a)(6) of the Bankruptcy Code, and are hereby approved. The adoption and filing by Reorganized AMI of the Restated Certificate of Incorporation is hereby authorized, ratified and approved.

65.    Exemption from Securities Law. The issuance of the New Common Stock, Singleton Warrants and Subordinated Note Warrants (and the New Common Stock for which such Singleton Warrants and Subordinated Note Warrants are exercisable), the New Senior Secured Term Notes (including the guarantees issued in connection with the foregoing), and any other securities issued pursuant to the Prepackaged Plan, and any subsequent sales, resales or transfers, or other distributions of any such securities shall be exempt from any federal or state securities laws registration requirements, including section 5 of the Securities Act, to the fullest extent permitted by section 1145 of the Bankruptcy Code.

66.    Cancellation of Agreements. On the Effective Date, the Senior Credit Agreement Documents and the Indentures shall be canceled and shall be of no further force and effect except as to obligations between parties other than the Debtor and its Affiliates except as otherwise provided herein or in the Prepackaged Plan.

67.    Cancellation of the Subordinated Notes and Equity Interests. On the Effective Date, except to the extent otherwise provided herein, all notes, instruments, certificates and other documents evidencing (a) the 6 3/8% Notes, (b) the 6 7/8% Notes and (c) the Equity Interests shall be canceled, and the obligations of the Debtor thereunder and in any way related thereto shall be fully satisfied, released and discharged; *provided, however*, that such cancellation shall not itself alter the obligations or rights of any third parties (apart from the Debtor, its Affiliates and the Subordinated Note Claim holders) under such notes, instruments, certificates or other documents, including, but not limited to any applicable rights to indemnification or to seek contribution from any

31

parties other than the Debtor or its Affiliates with respect to such notes, instruments, certificates or other documents. With respect to the Subordinated Notes, on the Effective Date, except to the extent otherwise provided in the Prepackaged Plan, the Indentures and any similar agreements, including, without limitation, any related note, guaranty or similar instrument of the Debtor shall be deemed to be canceled, as permitted by section 1123(a)(5)(F) of the Bankruptcy Code, and discharged (i) with respect to all obligations owed by the Debtor under any such agreement and (ii) except to the extent provided herein below, with respect to the respective rights and obligations of the Indenture Trustee under the Indentures against the holders of Subordinated Note Claims. Solely for the purpose of clause (ii) in the immediately preceding sentence, only the following rights of the Indenture Trustee shall remain in effect after the Effective Date: (A) rights as trustee, paying agent and registrar, including but not limited to any rights to payment of fees, expenses and indemnification obligations and Liens securing such rights to payment including, but not limited to, from or on property distributed under the Prepackaged Plan to the Indenture Trustee (but excluding any other property of the Debtor, the Reorganized Debtor or its Estate), (B) rights relating to distributions to be made to the holders of the 6 3/8% Notes or the 6 7/8% Notes by the Indenture Trustee from any source, including, but not limited to, distributions under the Prepackaged Plan including, without limitation, any Liens on distributions to the holders that may be provided to the Indenture Trustee pursuant to the Indentures (but excluding any other property of the Debtor, the Reorganized Debtor or its Estate), (C) rights relating to representation of the interests of the holders of the 6 3/8% Notes or the 6 7/8% Notes by the Indenture Trustee in the Reorganization Case to the extent not discharged or released by this Confirmation Order, the Prepackaged Plan or any order of the Bankruptcy Court and (D) rights relating to participation by the Indenture Trustee in proceedings and appeals related to the Prepackaged Plan. Notwithstanding the continued effectiveness of such rights after the Effective

32

Date, such Indenture Trustee shall have no obligation to object to Claims against the Debtor and the Indenture Trustee shall have no obligation to locate certificated holders of the 6 3/8% Notes or the 6 7/8% Notes who fail to surrender the 6 3/8% Notes and/or the 6 7/8% Notes in accordance with Section 6.8 of the Prepackaged Plan.

      68.    Settlement, Compromise and Release of Guarantee Obligations. On the Effective Date, except to the extent otherwise provided herein, the obligations, liabilities and claims arising under any and all (a) guarantees of the Guaranteeing Subsidiaries of obligations under the Senior Credit Agreement and (b) other agreements and obligations of the Guaranteeing Subsidiaries under the Senior Credit Agreement Documents (collectively, the "Guarantee Obligations") shall be settled and compromised as provided in the next sentence (the "Guarantor Settlement"). The Senior Lenders shall accept the distributions on account of the Senior Loan Claims and, in respect of the settlement of the Guarantee Obligations, the benefits conferred by the Guaranteeing Subsidiaries in the Guarantor Settlement, in full satisfaction, settlement, compromise, release, and discharge of and in exchange for all Claims arising under the Senior Credit Agreement Documents, including without limitation all such Claims against the Guaranteeing Subsidiaries, which Claims against the Guaranteeing Subsidiaries the Senior Lenders are releasing, settling and compromising hereby in exchange for, and subject to, (i) the execution by each of the Guaranteeing Subsidiaries of a guaranty of the New Senior Credit Facility in form and substance acceptable to the Senior Lender Steering Committee as of the Effective Date, (ii) the settlement, compromise and release by the Debtor and the Guaranteeing Subsidiaries of all Claims and causes of action against the Senior Lenders and/or the Administrative Agent of and from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, matured or

unmatured, existing or thereafter arising, at law, in equity, or otherwise, based in whole or in part upon any act, omission, transaction, event or other occurrence taking place before the Effective Date that relate to the Senior Credit Agreement and Senior Credit Agreement Documents (including the Forbearance Agreement and Restructuring Support Agreement) and the transactions contemplated thereby, and (iii) the granting by the Guaranteeing Subsidiaries of first priority Liens on substantially all property of the Guaranteeing Subsidiaries securing the guarantees referenced in subclause (i) of this sentence pursuant to security agreements in form and substance acceptable to the Senior Lender Steering Committee.

69.    Surrender of Existing Securities.  As soon as practicable, on or after the Effective Date, each holder of a Subordinated Note Claim shall surrender its note(s) to the Indenture Trustee or in the event such note(s) are held in the name of, or by a nominee of, The Depository Trust Company, the Reorganized Debtor shall seek the cooperation of The Depository Trust Company to provide appropriate instructions to the Indenture Trustee.  No distributions under the Prepackaged Plan shall be made for or on behalf of such holder unless and until such note is received by the Indenture Trustee or appropriate instructions from The Depository Trust Company shall be received by the Indenture Trustee or the loss, theft or destruction of such note is established to the reasonable satisfaction of the Indenture Trustee as applicable, which satisfaction may require such holder to submit (a) a lost instrument affidavit and (b) an indemnity bond holding the Debtor, the Reorganized Debtor, and the Indenture Trustee harmless in respect of such note and any distributions made on account thereof.  Upon compliance with this Confirmation Order and section 6.8 of the Prepackaged Plan by a holder of any note, such holder shall, for all purposes under the Prepackaged Plan, be deemed to have surrendered such note.  Any holder that fails to surrender such note or to satisfactorily explain its non-availability to the Indenture Trustee within one (1) year after the

34

Effective Date shall be deemed to have no further Claim against the Debtor and the Reorganized

Debtor (or their property) or the Indenture Trustee in respect of such Claim and shall not participate

in any distribution under the Prepackaged Plan. All property in respect of such forfeited

distributions, including interest thereon, shall be promptly returned to the Reorganized Debtor by the

Indenture Trustee and any such security shall be canceled.

70.     Subordination. Except as otherwise expressly provided in the Prepackaged

Plan, this Confirmation Order or a separate order of this Court, the classification and manner of

satisfying all Claims and Equity Interests under the Prepackaged Plan takes into consideration all

subordination rights, whether arising by contract or under general principles of equitable

subordination, section 510(b) or 510(c) of the Bankruptcy Code, or otherwise. All subordination

rights that a holder of a Claim or Equity Interest may have with respect to any distribution to be made

under the Prepackaged Plan shall be discharged and terminated, and all actions related to the

enforcement of such subordination rights shall be enjoined permanently. Accordingly, distributions

under the Prepackaged Plan to holders of Allowed Claims will not be subject to payment of a

beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other

legal process by a beneficiary of such terminated subordination rights.

71.     Amended and Restated Employment Agreements. Reorganized AMI is

hereby authorized, on or after entry of this Confirmation Order and subject to the occurrence of the

Effective Date, to enter into the Amended and Restated Employment Agreements, and they shall

thereupon immediately become effective.

72.     Equity Incentive Plan. Reorganized AMI is hereby authorized, on or after

entry of this Confirmation Order and subject to the occurrence of the Effective Date, to establish the

Equity Incentive Plan.

73.    <u>Incentive Bonus Agreements</u>.  Reorganized AMI is hereby authorized, on or after entry of this Confirmation Order and after the Effective Date, to make any payments approved under the Incentive Bonus Agreements and any actions taken or to be taken that are necessary or appropriate in connection therewith by Reorganized AMI, its officers, directors and shareholders are hereby authorized and approved.

74.    <u>Existing Liens</u>.  Except as otherwise provided in the Prepackaged Plan or this Confirmation Order, upon the occurrence of the Effective Date, any Lien securing any Secured Claim shall continue in effect notwithstanding the occurrence of the Effective Date.  Any Liens on assets of the Debtor securing obligations of the Debtor and the Guaranteeing Subsidiaries under the Senior Credit Agreement and Senior Credit Agreement Documents shall continue in effect securing obligations under the New Senior Secured Credit Documents (including the New Senior Secured Credit Agreement).

75.    <u>Compromise of Controversies</u>.  In consideration for the distributions and other benefits provided under the Prepackaged Plan, the provisions of the Prepackaged Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Prepackaged Plan and the entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of such compromises and settlements under Bankruptcy Rule 9019.

76.    <u>Assumption or Rejection of Contracts and Leases</u>.  Pursuant to Section 8.1 of the Prepackaged Plan, except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Prepackaged Plan, as of the Effective Date, the Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such contract or lease (i) previously expired or terminated pursuant to its own terms or by

agreement of the parties thereto, or (ii) is the subject of a motion to assume or reject filed by the

Debtor on or before the Confirmation Date. Such contract and lease assumptions are hereby

approved as of the Effective Date pursuant to sections 365(b) and 1123(b) of the Bankruptcy Code

and all objections, if any, are overruled.

77.     Senior Lender Emergence Payment. Upon the Effective Date, the Debtor and

Reorganized Debtor are authorized to make the Senior Lender Emergence Payment.

78.     Conditions to Effective Date. The Prepackaged Plan shall not become

effective unless and until the conditions set forth in Section 9.1 of the Prepackaged Plan have been

satisfied or waived pursuant to Section 9.2 of the Prepackaged Plan. Pursuant to Section 9.3 of the

Prepackaged Plan, substantial consummation of the Prepackaged Plan under section 1101(2) of the

Bankruptcy Code shall be deemed to occur on the Effective Date.

79.     Professional Compensation. Except as provided in Section 2.1 of the

Prepackaged Plan, all Persons seeking awards by the Bankruptcy Court of compensation for services

rendered or reimbursement of expenses incurred through and including the Confirmation Date under

section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file,

on or before the date that is sixty (60) days after the Effective Date, their respective applications for

final allowances of compensation for services rendered and reimbursement of expenses incurred (a

"Final Fee Application") and (b) be paid in full, in Cash, in such amounts as are Allowed by the

Bankruptcy Court in accordance with the order relating to or Allowing any such Administrative

Expense Claim. Notice of a hearing (the "Final Fee Hearing") on the Final Fee Applications shall be

provided in accordance with the Bankruptcy Rules and Local Rules. The Reorganized Debtor is

authorized to pay compensation for professional services rendered and reimbursement of expenses

incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

      80.    <u>Objections to Final Fee Applications</u>. All objections to any Final Fee Applications shall be filed with the Court, together with proof of service thereof, and served upon the applicant and (i) the attorneys for the Debtor, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004-1482, Attn.: Kathryn A. Coleman, Esq. and Eric J. Fromme, Esq.; (ii) the co-attorneys for the Debtor, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 18th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn.: Derek C. Abbott, Esq. and Daniel B. Butz, Esq.; (iii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801-3519; (iv) the attorneys for Bank of America, N.A., administrative agent under the Senior Credit Agreement, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017-3904, Attn.: John Fouhey, Esq. and Damian S. Schaible, Esq.; (v) the co-attorneys for Bank of America, N.A., administrative agent under the Senior Credit Agreement, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801-3361, Attn.: Mark D. Collins, Esq.; (vi) The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee under each of the Indentures, 700 South Flower Street, Suite 500, Los Angeles, CA 90017-4101, Attn.: Raymond Torres; (vii) those parties listed on the list of creditors holding the twenty (20) largest unsecured claims against the Debtor, as identified in its chapter 11 petition and (viii) any persons who have filed a request for notice in this chapter 11 case pursuant to Bankruptcy Rule 2002 (the "<u>Notice Parties</u>"), so as to be received not later than 4:00 p.m. prevailing Eastern Time on the date that is five (5) Business Days prior to the Final Fee Hearing.

81.     <u>Administrative Expenses</u>.  Administrative expenses incurred by the Debtor or the Reorganized Debtor after the Effective Date, for professionals' fees and expenses, shall not be subject to application and may be paid by the Debtor or the Reorganized Debtor, as the case may be, in the ordinary course of business and without further Bankruptcy Court approval.

82.     <u>Discharge of the Debtor</u>.  As of the Effective Date, pursuant to Section 10.4 of the Prepackaged Plan and except as otherwise provided herein or in the Prepackaged Plan, the treatment of all Claims against or Equity Interests in the Debtor under the Prepackaged Plan shall be in exchange for and in complete satisfaction, discharge and release of, all Claims against or Equity Interests in the Debtor of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred thereon (other than the Senior Loan Non-Principal Claim and subject to payment in full of the Senior Lender Emergence Payment) from and after the Petition Date, or against its Estate or properties or interests in property.  Except as otherwise provided in the Prepackaged Plan or this Confirmation Order, upon the Effective Date, all Claims against and Equity Interests in the Debtor shall be satisfied, discharged and released in full exchange for the consideration provided under the Prepackaged Plan.  Except as otherwise provided in the Prepackaged Plan or this Confirmation Order or under the terms of the documents evidencing the New Senior Credit Facility, all Persons shall be precluded from asserting, against the Debtor, the Reorganized Debtor, or their respective properties or interests in property, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date and from asserting against the Guaranteeing Subsidiaries any Claim under the Senior Credit Agreement Documents.  In accordance with the foregoing, except as provided herein or in the Prepackaged Plan, as of the Effective Date, all such Claims and other debts and liabilities of the Debtor, pursuant to sections 524 and 1141 of the Bankruptcy Code are hereby discharged, and such

discharge shall void and extinguish any judgment obtained against the Debtor or the Reorganized

Debtor at any time, to the extent such judgment is related to a discharged Claim.

83.    Exculpation.  The Released Parties shall not have any liability to any holder

of a Claim or Equity Interest for any act or omission in connection with, or arising out of, the

negotiation of the Restructuring Support Agreement, the negotiation and the pursuit of approval of

the Disclosure Statement, the Prepackaged Plan or the solicitation of votes for, or confirmation of,

the Prepackaged Plan, the funding of the Prepackaged Plan, the consummation of the Prepackaged

Plan, or the administration of the Prepackaged Plan (except for any liability that results from willful

misconduct as determined by a Final Order) or the property to be distributed under the Prepackaged

Plan and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their

duties and responsibilities under the Prepackaged Plan and this Confirmation Order.

84.    Releases by the Debtor and its Estate.  Except for the right to enforce the

Prepackaged Plan, the Debtor shall, on its own behalf and on behalf of its Estate, effective upon the

occurrence of the Effective Date, be deemed to forever release, waive and discharge the Released

Parties (except the Guaranteeing Subsidiaries) of and from any and all Claims, demands, causes of

action and the like, existing as of the Effective Date or thereafter arising from any act, omission,

event, or other occurrence that occurred on or prior to the Effective Date, whether direct or

derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or

undisputed, known or unknown, foreseen or unforeseen, at law, in equity or otherwise.  Such release,

waiver and discharge shall not operate as a release, waiver or discharge of any Released Party in

respect of any express contractual obligation of any such party effective from and after the Effective

Date, provided that no Person who voted to reject the Prepackaged Plan will receive the benefit of a

release.  On the Effective Date, each Guaranteeing Subsidiary will provide each holder of a Senior

Loan Claim and the Administrative Agent a release of such scope in partial consideration for the

Guarantor Settlement contemplated by the Prepackaged Plan.

        85.    <u>Consensual Releases by Holders of Claims and Equity Interests</u>.

        (a)    Except for the right to enforce the Prepackaged Plan, each Person who voted

to accept the Prepackaged Plan shall be deemed to forever release, waive and discharge the Released

Parties, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and

all Claims, demands, causes of action and the like, existing as of the Effective Date or thereafter

arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective

Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or

unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, at law, in equity or

otherwise that is based on, relates to, or in any manner arises from, in whole or in part, the Debtor,

the Debtor's restructuring, the Reorganization Case, the purchase, sale or rescission of the purchase

or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to,

any Claim that is treated in the Prepackaged Plan, the business or contractual arrangements between

the Debtor and any Released Party relating to the restructuring of Claims prior to or in the

Reorganization Case or the negotiation, formulation or preparation of the Prepackaged Plan, or any

related agreements, instruments or other documents.  Except as otherwise provided herein or in the

Prepackaged Plan, upon the Effective Date, all such holders of Claims and their affiliates shall be

forever precluded and enjoined from prosecuting or asserting any such discharged Claim against the

Debtor or any Affiliates, including any Guaranteeing Subsidiary.

        (b)    Notwithstanding the foregoing, such release, waiver and discharge shall not

operate as a release, waiver or discharge of any Released Party in respect of any express contractual

obligation of any such Released Party incurred in connection with the Prepackaged Plan or, except as

provided in Sections 10.6, 10.7 and 10.8 thereof with respect to the Guaranteeing Subsidiaries, of any express contractual obligation of any non-Debtor party due to any other non-Debtor party.

      86.    <u>Settlement and Compromise Among Debtor, the Guaranteeing Subsidiaries and the Administrative Agent</u>. On the Effective Date, all holders of Senior Loan Claims shall be deemed to have granted a release to the Guaranteeing Subsidiaries and to have released the Administrative Agent from any claims arising therefrom or in connection therewith, and the Guaranteeing Subsidiaries shall be unconditionally relieved from any liability under the Senior Credit Agreement Documents or in connection with the Senior Loan Claims; provided that such release is dependent upon and only effective upon (a) the execution by each of the Guaranteeing Subsidiaries of a guaranty of the New Senior Credit Facility in form and substance acceptable to the Senior Lender Steering Committee as of the Effective Date, (b) the settlement, compromise and release by the Debtor and the Guaranteeing Subsidiaries of all Claims and Causes of Action (including, without limitation, those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or thereafter arising, at law, in equity, or otherwise against the Senior Lenders and/or the Administrative Agent, based in whole or in part upon any act, omission, transaction, event or other occurrence taking place before the Effective Date that relate to the Senior Credit Agreement and the Senior Credit Agreement Documents (including the Forbearance Agreement and Restructuring Support Agreement ) or the transactions contemplated thereby and (c) the granting by the Guaranteeing Subsidiaries of first priority Liens on substantially all property of the Guaranteeing Subsidiaries securing the guarantees referenced in subclause (a) of this sentence pursuant to security agreements in form and substance acceptable to the Senior Lender Steering Committee.

87.     Settlements, Releases and Discharges.  The settlements, releases and
discharges of Claims and Causes of Action described in the Prepackaged Plan, including releases by
the Debtor and by holders of Claims, constitute good faith compromises and settlements of the
matters covered thereby and are consensual.  Such compromises and settlements are made in
exchange for consideration and are in the best interest of holders of Claims, are fair, equitable and
reasonable and are integral elements of the resolution of the Reorganization Case in accordance with
the Prepackaged Plan.  Each of the discharge, release, indemnification and exculpation provisions set
forth in the Prepackaged Plan (a) is within the jurisdiction of the Bankruptcy Court under sections
1334(a), 1334(b) and 1334(d) of title 28 of the United States Code, (b) is an essential means of
implementing the Prepackaged Plan pursuant to section 1123(a)(5) of the Bankruptcy Code, (c) is an
integral element of the transactions incorporated into the Prepackaged Plan, (d) confers material
benefit on, and is in the best interests of, the Debtor, its Estate and its creditors, (e) is important to the
overall objective of the Prepackaged Plan to finally resolve all Claims among or against the parties-
in-interest in the Reorganization Case with respect to the Debtor and (f) is consistent with sections
105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

88.     Waiver of Avoidance Actions.  Pursuant to Section 10.9 of the Prepackaged
Plan, effective as of the Effective Date, the Debtor shall have waived the right to prosecute and to
have settled and released for fair value, any avoidance or recovery actions under sections 545, 547,
548, 549, 550, 551 and 553 of the Bankruptcy Code or other applicable law that belong to the Debtor
and/or which the Debtor could have prosecuted as debtor or debtor-in-possession against the
Released Parties relating to distributions made on account of interest or other obligations under or
relating to the Senior Credit Agreement or the Subordinated Debt.

89.    Term of Injunctions or Stays.  Pursuant to Section 10.10 of the Prepackaged Plan, this Confirmation Order shall, except as otherwise expressly provided in the Prepackaged Plan, and except with respect to enforcement of the Prepackaged Plan, constitute an injunction from and after the Effective Date, permanently enjoining all Persons or entities who have held, hold or may hold Claims against, or Equity Interests in, the Debtor from (i) commencing or continuing in any manner any action or other proceeding of any kind in any forum with respect to such Claim or Equity Interest against the Reorganized Debtor, the Guaranteeing Subsidiaries or their respective property, (ii) the enforcement, attachment, collection or recovery in any manner or by any means any judgment, award, decree or order against the Reorganized Debtor, the Guaranteeing Subsidiaries or their respective property, with respect to such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or other encumbrance of any kind against the Reorganized Debtor, the Guaranteeing Subsidiaries or against any property or interests in property of the Reorganized Debtor or the Guaranteeing Subsidiaries, as applicable, with respect to any such Claim or Equity Interest, (iv) asserting a right of setoff, subrogation or recoupment of any kind against any obligation due from the Reorganized Debtor, the Guaranteeing Subsidiaries or against any property or interests in property of the Reorganized Debtor or the Guaranteeing Subsidiaries, with respect to such Claim or Equity Interest, (v) commencing or continuing any action, in any forum, that does not comply or is inconsistent with the provisions of the Prepackaged Plan and (vi) pursuing any such Claim released pursuant to Section 10.6, 10.7 or 10.8 thereof.  Unless otherwise provided in the Prepackaged Plan or this Confirmation Order, all injunctions or stays arising under or entered during the Debtor's Reorganization Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

90.     Notwithstanding anything to the contrary in the Disclosure Statement, the Prepackaged Plan, any other Plan Documents or this Confirmation Order, nothing in the Disclosure Statement, the Prepackaged Plan, any other Plan Documents or this Confirmation Order (including any provision that purports to be preemptory or supervening) shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable or contractual rights and defenses of the insureds or insurers under any insurance policy issued by Liberty Mutual Insurance Company or its affiliates for the benefit of the Debtor or its affiliates or any related agreement (collectively, the "Liberty Mutual Insurance Agreements"). The rights and obligations of the insureds and the insurers shall be determined under the Liberty Mutual Insurance Agreements, including all terms, conditions, limitations and exclusions thereof, which shall remain in full force and effect, and any applicable non-bankruptcy law. To the extent the Liberty Mutual Insurance Agreements are considered executory, they will be assumed pursuant to the Prepackaged Plan.

91.     <u>Indemnification Obligations.</u>

(a)     Pursuant to Section 10.12 of the Prepackaged Plan, subject to the occurrence of the Effective Date, the obligations of the Debtor as provided in the Debtor's certificate of incorporation and bylaws as in effect through the Effective Date and under applicable law or other applicable agreements as in effect through the Effective Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of, the current and former directors, officers and employees of the Debtor (including in the case of officers and employees serving as directors, managers, officers and employees of any Affiliate of the Debtor or as trustee (or similar position) of any employee benefit plan or trust (or similar Person) of AMI and its Subsidiaries, in such capacities) against any damages, liabilities, obligations, claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured

45

or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, shall survive confirmation of the Prepackaged Plan, remain unaffected thereby after the Effective Date and not be discharged under section 1141 of the Bankruptcy Code or otherwise, irrespective of whether such indemnification, defense, advancement, reimbursement, exculpation or limitation is owed in connection with an event occurring before or after the Petition Date. Any Claim based on the Debtor's obligations therein shall not be subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

(b)    As of the Effective Date, the Restated Certificate of Incorporation and/or Restated Bylaws shall provide for the indemnification, defense, reimbursement, exculpation and/or limitation of liability of, and advancement of fees and expenses to, directors and officers and employees of the Debtor (including in the case of officers and employees serving as directors, managers, officers and employees of any Affiliate of the Debtor or as trustee (or similar position) of any employee benefit plan or trust (or similar Person) of AMI and its Subsidiaries, in such capacities), who were directors, officers or employees of the Debtor at any time prior to the Effective Date at least to the same extent as provided in the certificate of incorporation and bylaws of AMI in effect on the Petition Date, against any damages, liabilities, obligations, claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, in connection with any event occurring before the Petition Date.

(c)    The Debtor and the Reorganized Debtor shall indemnify and hold harmless (i) the Administrative Agent, (ii) the Senior Lender Steering Committee, (iii) the Senior Lender Steering Committee's individual members, (iv) the respective advisors, officers, directors and employees of the parties described in clauses (i) through (iii) hereof, and (v) each of their respective successors and

assigns (collectively, the "Indemnified Persons"), to the full extent lawful, from and against all losses, claims, damages, and liabilities incurred by them that are related to or arise out of (x) the formulation, negotiation and pursuit of the confirmation or consummation of the Prepackaged Plan or (y) the Indemnified Persons' consideration of other proposals for the reorganization of the Debtor under chapter 11 of the Bankruptcy Code.

(d)    Notwithstanding anything to the contrary set forth in the Prepackaged Plan or herein, the Reorganized Debtor shall not be obligated to indemnify and hold harmless any Person or entity for any claim, cause of action, liability, judgment, settlement, cost or expense that results from such Person's fraud or willful misconduct as determined by a Final Order.

92.    Preservation of Claims. Except as otherwise provided in the Prepackaged Plan, including Sections 10.5, 10.6, 10.7 and 10.9, as of the Effective Date, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, any action, cause of action, liability, obligation, right, suit, debt, sum of money, damage, judgment, claim and demand whatsoever, whether known or unknown, at law, in equity or otherwise (collectively, "Causes of Action") accruing to the Debtor shall become assets of the Reorganized Debtor, and the Reorganized Debtor shall have the authority to commence and prosecute such Causes of Action for the benefit of the Estate of the Debtor. After the Effective Date, the Reorganized Debtor shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Causes of Action without approval of the Bankruptcy Court.

93.    No Acquisition of a Majority of Voting Interests. The entry of this Confirmation Order, the confirmation and consummation of the Prepackaged Plan and the issuance of New Common Stock pursuant thereto, shall not, and shall not be deemed to, constitute or result in an acquisition of a majority of the voting interests of the Debtor or any of its Subsidiaries for purposes of any agreement to which the Debtor or any of its Subsidiaries is a party.

94.     No Change of Control. Neither the entry of this Confirmation Order, nor the confirmation or consummation of the Prepackaged Plan, nor the consummation of any or all transactions contemplated hereby and thereby shall constitute or effect a change in control under any agreement to which the Debtor, the Reorganized Debtor or any Affiliate of the Debtor is a party.

95.     Payment of Statutory Fees. All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Combined Hearing, shall be paid on or before the Effective Date.

96.     Payment of Indenture Trustee Fees and Administrative Agent Fees Related to Distributions Received Under the Prepackaged Plan. The Reorganized Debtor shall pay all reasonable and documented fees, costs and expenses incurred by the Indenture Trustee in connection with the distributions required pursuant to the Prepackaged Plan. The Reorganized Debtor shall pay all reasonable fees, costs and expenses incurred by the Administrative Agent in connection with the distributions required pursuant to the Prepackaged Plan and the implementation of any provisions of the Prepackaged Plan. Notwithstanding the foregoing, the fees, costs and expenses discussed in Section 12.2 of the Prepackaged Plan, in respect of the Administrative Agent and the Indenture Trustee, shall be paid only in the event that the Effective Date occurs.

97.     Intercompany Claims. Notwithstanding anything to the contrary herein or in the Prepackaged Plan, on or after the Effective Date, any claims held by the Debtor against one of its Affiliates may be adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid, continued, or discharged to the extent reasonably determined appropriate by the Debtor.

98.     Amendment or Modification of the Prepackaged Plan. Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the

Bankruptcy Code, alterations, amendments or modifications of the Prepackaged Plan or the Plan Exhibits may be proposed in writing jointly by the Debtor and the Senior Lender Steering Committee at any time prior to the Effective Date. Holders of Claims that have accepted the Prepackaged Plan shall be deemed to have accepted the Prepackaged Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder; provided, however, that any holders of Claims who were deemed to accept the Prepackaged Plan because such Claims were unimpaired shall continue to be deemed to accept the Prepackaged Plan only if, after giving effect to such amendment or modification, such Claims continue to be unimpaired.

99.    Compliance with Tax Requirements.  All instruments issued in connection with the Prepackaged Plan and distributed thereunder, and any party issuing any instruments or making any distribution under the Prepackaged Plan, shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Prepackaged Plan shall be subject to any withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Prepackaged Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instruments or making any distribution under the Prepackaged Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.

100.    Determination of Tax Filings and Taxes.  The Reorganized Debtor shall have the right to request an expedited determination of its tax liability, if any, under section 505(b) of the

Bankruptcy Code with respect to any tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date. The Reorganized Debtor shall have the right, at its expense, to control, conduct, compromise and settle any tax contest, audit or administrative or court proceeding relating to any liability for taxes of the AMI Group.

101.   <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities (including issuance of warrants) under or in connection with the Prepackaged Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Prepackaged Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Prepackaged Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

102.   <u>Documents, Mortgages, and Instruments</u>. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Prepackaged Plan and this Confirmation Order.

103.   <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or the Reorganized Debtor, as applicable, prior to the effective date of such reversal, stay, modification,

or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation

Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this

Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be

governed in all respects by the provisions of this Confirmation Order and the Prepackaged Plan or

any amendments or modifications thereto.

104.    Retention of Jurisdiction.  Notwithstanding the entry of this Confirmation

Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy

Code, this Court, except as otherwise provided in the Prepackaged Plan or herein, shall retain

exclusive jurisdiction over all matters arising out of, and related to, the Reorganization Case and the

Prepackaged Plan to the fullest extent that is legally permissible, and for, among other things, the

following purposes: (a) to hear and determine pending applications for the assumption or rejection of

executory contracts and unexpired leases and the allowance of Claims resulting therefrom; (b) to

determine any and all adversary proceedings, applications and contested matters in the Debtor's

Reorganization Case and grant or deny any application involving the Debtor that may be pending on

the Effective Date; (c) to ensure that distributions to holders of Allowed Claims are accomplished as

provided in the Prepackaged Plan; (d) to hear and determine any timely objections to Administrative

Expense Claims or to proofs of claim and equity interests, including any objections to the

classification of any Claim or Equity Interest, and to allow or disallow any disputed claim in whole

or in part; (e) to enter and implement such orders as may be appropriate in the event this

Confirmation Order is for any reason stayed, revoked, modified or vacated; (f) to issue such orders in

aid of execution of the Prepackaged Plan, to the extent authorized by section 1142 of the Bankruptcy

Code; (g) to consider any amendments to or modifications of the Prepackaged Plan, or to cure any

defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including

this Confirmation Order; (h) to hear and determine all applications of retained professionals under sections 330, 331 and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date; (i) to hear and determine any dispute concerning the compromise by and between the Senior Lenders, the Debtor and the Guaranteeing Subsidiaries, and the Senior Lenders' release of all Claims arising under the Senior Credit Agreement Documents, including the release of all Claims against the Guaranteeing Subsidiaries; (j) to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Confirmation Order, Prepackaged Plan, the Plan Supplements, any transactions or payments contemplated by the Restructuring Support Agreement including the Prepackaged Plan or any agreement, instrument or other document governing or relating to any of the foregoing; (k) to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code); (l) during the period of time that the FCC Trust is in place, to enter and implement such orders as may be necessary or appropriate regarding the actions of the FCC Trust pursuant to the Prepackaged Plan and the FCC Trust Agreement, including, without limitation, orders regarding the FCC Trustee's operating decisions over the Broadcast Operations; (m) to hear any other matter not inconsistent with the Bankruptcy Code; (n) to hear and determine all disputes involving the existence, scope and nature of the discharges granted under Sections 10.3 and 10.4 of the Prepackaged Plan; (o) to hear and determine all disputes involving or in any manner implicating the exculpation provisions granted under Section 10.5 of the Prepackaged Plan; (p) to issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any Person with the consummation or implementation of the Prepackaged Plan; (q) to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and

rulings entered in connection with the Prepackaged Plan with respect to any Person; (r) to enter a final decree closing the Debtor's Reorganization Case; (s) to hear and determine all disputes relating to whether the confirmation and consummation of the Prepackaged Plan, and the issuance of New Common Stock pursuant thereto, shall have, or shall be deemed to, constitute or result in an acquisition of a majority of the voting interests of AMI or any of its Affiliates for purposes of any agreement to which AMI or any of its Affiliates is a party; (t) to hear and determine all disputes relating to the effect of the Prepackaged Plan under any agreement to which AMI, Reorganized AMI or any Affiliate of AMI is a party and (u) to hear and determine all disputes relating to whether any third party consent is required for the assumption under the Prepackaged Plan of any executory contract.

105.    Governing Law.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Prepackaged Plan or Plan Supplements provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties and obligations arising under the Prepackaged Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

106.    Applicable Nonbankruptcy Law.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Prepackaged Plan and all Prepackaged Plan-related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

107.    Waiver of Filings.  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtor to file any list, schedule, or statement with the

Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

108.    Effectiveness of All Actions.  All actions authorized to be taken pursuant to the Prepackaged Plan shall be effective on, prior to, or after, the Effective Date pursuant to this Confirmation Order, without further application to, or order of, the Court, or further action by the respective officers, directors, members or stockholders of the Reorganized Debtor and with the effect that such actions had been taken by unanimous action of such officers, directors, members or stockholders.

109.    Approval of Consents.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Prepackaged Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Prepackaged Plan, the Plan Supplements, the Disclosure Statement, and any documents, instruments or agreements, and any amendments or modifications thereto.

110.    Notice of Confirmation Order and Effective Date.  Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Reorganized Debtor shall file and serve notice of entry of this Confirmation Order and Effective Date in substantially the form annexed hereto as **Exhibit "B"** (the "Notice of Confirmation") on all holders of Claims and Equity Interests, the United States Trustee, the attorneys for the Administrative Agent and other parties-in-interest by causing the Notice of Confirmation to be sent to such parties by first-class mail, postage prepaid, within 10 business days after the Effective Date. The Notice of Confirmation shall also be published in *The*

*Wall Street Journal, National Edition,* and posted on the Debtor's case information website (located at http://chapter11.epiqsystems.com/AffiliatedMedia). Such notice is adequate under the particular circumstances and no other or further notice is necessary. A Notice of Confirmation substantially in the form annexed hereto as **Exhibit "B"** is approved. Such Notice of Confirmation shall also serve as the notice of the Effective Date.

111. <u>Substantial Consummation</u>. On the Effective Date, the Prepackaged Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

112. <u>Waiver of Stay</u>. The stay of this Confirmation Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)), whether for fourteen (14) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

113. <u>References to Prepackaged Plan Provisions</u>. The failure to include or specifically describe or reference any particular provision of the Prepackaged Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Prepackaged Plan be approved and confirmed in its entirety.

114. <u>Findings of Fact</u>. The determinations, findings, judgments, decrees and orders set forth and incorporated herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

55

115.    Conflicts Between Confirmation Order and the Prepackaged Plan. The provisions of the Prepackaged Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any Prepackaged Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Prepackaged Plan and shall control and take precedence; provided, further, that nothing herein shall affect the enforceability of any security interests or liens granted pursuant to (i) the New Senior Secured Credit Agreement or (ii) the New Senior Secured Credit Agreement Documents.

116.    Final Order. This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated:  March [4], 2010
        Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE