## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **AFFILIATED MEDIA, INC.,**[1] | Case No. 10-10202 (KJC) |
| **Debtor.** | Hearing Date: May 25, 2010 at 11:00 a.m. (ET) |
| | Objection Deadline: May 18, 2010 at 4:00 p.m. (ET) |

## FIRST AND FINAL FEE APPLICATION OF ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTOR AND DEBTOR-IN-POSSESSION FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM JANUARY 22, 2010 THROUGH MARCH 19, 2010

## SUMMARY SHEET

| | |
|---|---|
| Name of Applicant: | Rothschild Inc. |
| Authorized to Provide Professional Services to: | Debtor and Debtor-in-Possession |
| Date of Retention: | March 2, 2010 *nunc pro tunc* to January 22, 2010 |
| Period for which compensation and reimbursement are sought: | January 22, 2010 through March 19, 2010 |
| Amount of Compensation sought as actual, reasonable, and necessary: | $4,338,709.67 |
| Amount of Expense Reimbursement sought as actual, reasonable, and necessary: | $25,315.03[2] |

This is a ___ monthly     ___ interim     _X_ final application

Prior Applications Filed:     None

---

1. The last four digits of the Debtor's federal tax identification number are 5553. The Debtor's mailing address and corporate headquarters is 101 W. Colfax Avenue, Suite 1100, Denver, CO 80202.

2. Rothschild has incurred $8,315.03 in expenses that have cleared Rothschild's internal expense reporting system. Rothschild requests final approval of a reimbursement amount that includes an additional $17,000.00, which is Rothschild's estimate of the reimbursement required for expenses that were incurred during the Application Period but which have not yet cleared Rothschild's internal expense reporting systems. Rothschild will request reimbursement from the Debtor only for such expenses as were actually incurred.

## EXPENSE SUMMARY
## JANUARY 22, 2010 THROUGH MARCH 19, 2010

| Expenses | Amount |
|---|---:|
| Travel | $640.00 |
| Ground Transportation/Taxis | 270.81 |
| Hotel | -- |
| Legal Fees | 4,326.35 |
| Miscellaneous | 25.44 |
| Meals | 295.41 |
| Word Processing | 2,225.96 |
| Copies | 448.00 |
| Research/Database | 83.06 |
| Telephone/Communications | -- |
| Courier Services | -- |
| In-Process Expense Estimate[3] | 17,000.00 |
| Professional Fees | 4,338,709.67 |
| **Total:** | **$4,364,024.70** |

---

3.  Rothschild has incurred $8,315.03 in expenses that have cleared Rothschild's internal expense reporting system. Rothschild requests final approval of a reimbursement amount that includes an additional $17,000.00, which is Rothschild's estimate of the reimbursement required for expenses that were incurred during the Application Period but which have not yet cleared Rothschild's internal expense reporting systems. Rothschild will request reimbursement from the Debtor only for such expenses as were actually incurred.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **AFFILIATED MEDIA, INC.,**[1] | Case No. 10-10202 (KJC) |
| **Debtor.** | Hearing Date: May 25, 2010 at 11:00 a.m. (ET) |
| | Objection Deadline: May 18, 2010 at 4:00 p.m. (ET) |

## FIRST AND FINAL FEE APPLICATION OF ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTOR AND DEBTOR-IN-POSSESSION FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM JANUARY 22, 2010 THROUGH MARCH 19, 2010

Rothschild Inc. ("Rothschild") hereby files this *First and Final Fee Application of Rothschild Inc. as Financial Advisor and Investment Banker for the Debtor and Debtor-in-Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period From January 22, 2010 Through March 19, 2010* (the "Application") for final approval of all compensation for fees earned and reimbursement of expenses incurred as financial advisor and investment banker to the above captioned debtor and debtor-in-possession (the "Debtor") for the period from January 22, 2010 through March 19, 2010 (the "Application Period"), pursuant to sections 328 and 330 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-2 (except as waived by the Retention Order, as defined below) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). By this Application, Rothschild seeks

---

1. The last four digits of the Debtor's federal tax identification number are 5553. The Debtor's mailing address and corporate headquarters is 101 W. Colfax Avenue, Suite 1100, Denver, CO 80202.

final allowance of $4,338,709.67 as compensation and $25,315.03[2] for reimbursement of actual and necessary expenses for a total of $4,364,024.70 for the Application Period. In support of this Application, Rothschild respectfully represents as follows:

## I. Background

1. On January 22, 2010, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. On March 4, 2010, this Court entered the *Findings of Fact, Conclusions of Law and Order (I) Approving the Debtor's (A) Disclosure Statement Pursuant to Sections 1125 and 1126(b0 of the Bankruptcy Code, (B) Solicitation of Votes and Voting Procedures and (C) Forms of Ballots and (II) Confirming the Debtor's Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 155], approving the Debtor's disclosure statement and confirming the Prepackaged Plan of Reorganization of Affiliated Media, Inc., dated as of December 18, 2009 (as amended and supplemented, the "Prepackaged Plan").

3. On February 1, 2010, the Debtor applied to the Court for an order under Bankruptcy Code sections 327(a) and 328(a) authorizing the employment and retention of Rothschild as financial advisor and investment banker to the Debtor pursuant to the terms and conditions set forth in an engagement letter dated as of December 1, 2008 (as amended by the Debtor and its subsidiaries, the "Engagement Letter"), and waiving certain informational requirements of Local Rule 2016-2, pursuant to Local Rule 2016-2(g), which was approved by order of the Court on March 2, 2010 (the "Retention Order") [Docket No. 136]. A copy of the

---

2. Rothschild has incurred $8,315.03 in expenses that have cleared Rothschild's internal expense reporting system. Rothschild requests final approval of a reimbursement amount that includes an additional $17,000.00, which is Rothschild's estimate of the reimbursement required for expenses that were incurred during the Application Period but which have not yet cleared Rothschild's internal expense reporting systems. Rothschild will request reimbursement from the Debtor only for such expenses as were actually incurred.

4

Engagement Letter is attached hereto as **Exhibit "A"** and a copy of the Retention Order is attached hereto as **Exhibit "B"**.

4.      On March 19, 2010 the Prepackaged Plan became effective, thereby culminating the Debtor and its professionals' efforts to bring this complex and highly successful chapter 11 case to conclusion.

### The Rothschild Engagement

5.      On or about December 1, 2008, the Debtor engaged Rothschild to advise the Debtor with respect to its financial restructuring. The Debtor chose to engage Rothschild, among other reasons, because of Rothschild's reputation as a leading investment banking firm and financial advisor and its substantial experience advising debtors, creditors' committees and other parties in interest in connection with all aspects of financial restructurings and chapter 11 case, including financial advice regarding public and private financing, evaluation of assets and liabilities, formulation and negotiation of plans of reorganization and the restructuring of indebtedness.

6.      Since its retention on December 1, 2008, Rothschild focused on developing and executing a financial restructuring plan that would minimize the potential negative impact on the Debtor's business and its vendors. As such, Rothschild prioritized pursuing an out of court or a prepackaged chapter 11 financial restructuring, with the Debtor ultimately choosing a prepackaged chapter 11 financial restructuring. In developing the Prepackaged Plan, Rothschild conducted the bulk of the analysis, negotiations and chapter 11 emergence preparations prior to the Petition Date. These efforts allowed the Debtor to minimize the time the Debtor spent in its chapter 11 proceeding and contributed significantly to the Debtor's successful emergence on March 19, 2010.

7.      Since its retention on December 1, 2008 and up to the Petition Date, Rothschild

provided prepetition services to the Debtor and its subsidiaries in preparation for the Debtor's financial restructuring efforts, including assisting management in developing a long-range business plan, analyzing various restructuring alternatives and numerous proposals, conducting extensive negotiations with creditors of the Debtor and assisting the Debtor in facilitating due diligence with the various parties in interest, and providing additional investment banking services in preparation for the filing of the Prepackaged Plan. As a result, Rothschild developed a reserve of institutional knowledge related to, and an intimate understanding of, the Debtor's business operations, capital structure, financing documents, and other material information. The Debtor believed Rothschild to be well-qualified to provide its services to the Debtor in a cost-effective, efficient, and timely manner. Rothschild indicated a willingness to provide services to the Debtor in chapter 11 subject to the terms of the Engagement Letter and subject to the jurisdiction and supervision of the Court.

8.    By its Retention Order, this Court approved the appointment of Rothschild as financial advisor and investment banker to provide assistance to the Debtor in evaluating the complex financial and economic issues raised by the above-captioned chapter 11 case. As further set forth in the Engagement Letter, Rothschild was retained by the Debtor to provide the following services[3]:

(a)    identifying and/or initiating potential Financings and Transactions;

(b)    reviewing and analyzing the Company's assets and the operating and financial strategies of the Company;

(c)    reviewing and analyzing the business plans and financial projections prepared by the Company;

(d)    evaluating the Company's debt capacity in light of its projected cash flows

---

3.    Capitalized terms used in this Application without definition have the meanings assigned to them in the Engagement Letter.

and assist in the determination of an appropriate capital structure for the Company;

(e)    assisting the Company and its professionals in evaluating, structuring, reviewing and negotiating any proposed restructuring, reorganization or other strategic alternative relating to the Company;

(f)    determining a range of values for the Company and any securities that the Company offers or proposes to offer in connection with a Financing or Transaction;

(g)    assisting the Company in developing and preparing any memorandum to be used in soliciting potential lenders, acquirers or investors;

(h)    advising the Company on the risks and benefits of considering a Financing or a Transaction;

(i)    reviewing and analyzing any proposals the Company receives from third parties in connection with a Financing or Transaction, including, without limitation, any proposals for debtor-in-possession financing;

(j)    assisting or participating in negotiations with the parties in interest;

(k)    advising the Company with respect to, and attending, meetings of the Company's board of directors, creditor groups, official constituencies and other interested parties;

(l)    participating in hearings before the Court and providing relevant testimony;

(m)    advising and assisting the Company in developing and seeking approval of any proposed Plan, and assisting the Company and participating in negotiations with entities or groups affected by the proposed Plan; and

(n)    rendering such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Company.

9.    Pursuant to the terms of the Engagement Letter as approved by the Retention Order, the Debtor agreed to pay the following fees to Rothschild for its financial advisory and investment banking services;

(a)    <u>Monthly Fee</u>:  An advisory fee of $175,000 per month (the "<u>Monthly Fee</u>").

(b)    <u>MNG Completion Fee</u>:  A fee (the "<u>MNG Completion Fee</u>") of (i) $4.5 million upon the consummation with the support of the Hearst Corporation

7

of a Control Transaction prior to the commencement of any bankruptcy case involving the Company or as part of a "pre-packaged" or "pre-arranged" Plan conceived prior to the commencement of any Bankruptcy Case involving the Debtor and its subsidiaries (collectively, the "Company"); (ii) $4.0 million upon the consummation with the support of a third-party investor (other than Hearst Corporation) or the existing bank group and the Company of a Control Transaction prior to the commencement of any Bankruptcy Case involving the Company or as part of "pre-packaged" or "pre-arranged" Plan conceived prior to the commencement of any Bankruptcy Case involving the Company; (iii) $3.5 million upon the consummation of a Control Transaction that would not otherwise qualify for a MNG Completion Fee under clause (i) or (ii) above and is part of a chapter 11 case involving the support of the Hearst Corporation, a third party investor or the existing bank group supported by the Debtor; or (iv) $2.75 million upon the consummation of any other Control Transaction pursuant to a chapter 11 case.

(c)     Non-Control Transaction Fee: A Non-Control Transaction fee equal to an amount based on the Aggregate Consideration as detailed below:

| Aggregate Consideration ($ in millions) | Non-Control Transaction Fee Percentage |
|---|---|
| $25.0 | 2.50 |
| 50.0 | 2.20 |
| 100.0 | 1.75 |
| 200.0 | 1.30 |
| 300.0 | 1.10 |
| 400.0 | 1.00 |
| 500.0 | 0.90 |
| 500.0+ | 0.85 |

(d)     New Capital Fee: A fee (the "New Capital Fee") equal to (i) 1.50% of the face amount of any senior secured debt raised including, without limitation, any debtor-in-possession financing raised; (including the debtor-in-possession financing); (ii) 2.50% of the face amount of any junior secured debt raised, (iii) 3.00% of the face amount of any senior or subordinated unsecured debt raised and (iv) 5.00% of any equity capital, or capital convertible into equity, raised (each a "Financing"). The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed. No New Capital Fee shall be payable to Rothschild if and only to the extent that any new capital is raised from current holders (and affiliates thereof) of debt or equity securities issued by the Debtor or its subsidiaries ("Current Holders"), as of the date of the Engagement Letter, unless such Current Holders agree to put in new capital in response to a process in which third parties (other than or in

8

addition to the Current Holders) are invited to participate.

(e) Reimbursement of all reasonable out-of-pocket expenses incurred by Rothschild in connection with the matters contemplated by the Engagement Letter, including, without limitation, reasonable fees, disbursements, and charges of Rothschild's counsel, expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services.

10. Rothschild and the Debtor agreed, and the Retention Order provided, that, were the Prepackaged Plan confirmed and consummated, the MNG Completion Fee amount payable to Rothschild would be $4.0 million, as described in paragraph 9(b)(ii) above, and there would be no Non-Control Transaction Fee and no New Capital Fee due or payable.

**Services Rendered**

11. Prior to and during the Application Period, Rothschild provided financial advisory and investment banking services to the Debtor. The nature of the work performed by Rothschild during the Application Period included the following:

**A. Financial Due Diligence**

12. Rothschild's due diligence prior to and during the Application Period involved numerous meetings and telephone calls with officers of the Debtor. The subjects reviewed on these occasions included the reasonableness of the assumptions underlying management's projections, the operating structure and financial results of the Debtor, financial reporting structure, legal and tax structure of the Debtor and numerous other subjects. This process included numerous teleconference calls and in-person meetings to review the business plan, sales and costs assumptions, balance sheet and cash flow assumptions, as well as visits to the Debtor's headquarters.

**B. Financial Analyses**

13. Rothschild, prior to the filing of these cases and during the Application Period,

prepared a number of financial analyses, including building with management a recapitalization and financial forecast model for the projection period, examining different potential warrant packages for management and the subordinated note holders, analyzing debt capacity and conducting analyses as needed for the Prepackaged Plan and Disclosure Statement. Rothschild conducted a variety of analyses which included, but was not limited to, setting covenants for the forbearance agreement and new credit agreement, analyzing share counts and warrant dilution and evaluating the necessity of debtor-in-possession financing. Rothschild also provided assistance to Debtor subsidiaries with various financial analysis.

### C. Forbearance Agreement and Restructuring Alternatives

14. Rothschild supported the negotiation of the forbearance agreements, as amended, including the negotiation and setting of financial covenants. Rothschild led the development, analysis and review of strategic restructuring alternatives, including developing and presenting restructuring proposals to the senior bank lenders ("Senior Lenders"), holders of the subordinated note claims and other parties and evaluating restructuring proposals developed by the Senior Lenders and their advisors. Rothschild participated with management in several meetings with Senior Lenders and their advisors to negotiate the key terms of the Prepackaged Plan.

### D. Prepackaged Plan and Disclosure Statement

15. Rothschild, prior to the filing of this case, assisted the Debtor in negotiating the Prepackaged Plan on behalf of the Debtor with the various stakeholders and in the preparation of the Debtor's Disclosure Statement. This included negotiating and analyzing numerous proposals from the Senior Lenders, evaluating recoveries for the stakeholders and projecting the new capital structure of the Debtor based on these proposals. Rothschild prepared an analysis of the Debtor's total enterprise value which was included in the Disclosure Statement. Rothschild also

assisted the Company in preparing certain sections of the Disclosure Statement, including analysis and write-ups discussing the Projections, total enterprise valuation, warrants for management and subordinated note holders and recoveries to various constituencies.

**E.     Calls, Meetings and Due Diligence Requests for Creditor Groups**

16.     Prior to the filing of this case, and during the Application Period, Rothschild reviewed, coordinated and responded to numerous financial, operational and legal due diligence requests submitted by various creditor groups and their advisors.  Rothschild coordinated with the Debtor the collective effort of providing the information requested and helped with the distribution of documents to respond to certain items.  This included time spent attending due diligence meetings of the Senior Lender's financial advisors with the Debtor.  Rothschild often served as a conduit through which the creditors and their advisors discussed and negotiated various matters with members of the Debtor's management team.  This arrangement ensured efficient correspondence among the various parties and constituencies.  Rothschild also guided management in creating its initial weekly financial reporting template and organized weekly update calls with the Senior Lenders and their financial advisors.

**F.     Third Party Opportunities**

17.     Prior to the filing of this case, Rothschild explored potential new capital opportunities with third parties and existing stakeholders.  These discussions occurred over several months and included multiple detailed due diligence meetings and conference calls. Rothschild conducted various analyses for the potential third party investors on the newspaper industry and the Debtor's business.  Several third parties expressed an initial interest in the Debtor but ultimately decided not to present a formal proposal.  During the Application Period, Rothschild conducted analysis and met with interested parties on potential strategic alternatives for the Debtor, post-emergence from chapter 11, involving other participants in the newspaper

11

industry.

### G. Debtor Advisor Planning

18. Prior to the Petition Date and during the Application Period, Rothschild participated in meetings and calls with members of the Rothschild team, members of the Hughes Hubbard & Reed LLP team, members of the Carl Marks Advisory Group team, the Debtor's management team and board of directors, and other agents and advisors of the Debtor. In general, given the complexity and nature of these reorganization proceedings, Rothschild professionals participated, sometimes several times daily, on such internal meetings and calls. These discussions were necessary throughout Rothschild's engagement in order to synchronize efforts and determine the optimal course of action. Discussions included, among other things, the Debtor's overall reorganization strategy, appropriate steps and recommended timing of future actions, general preparation in anticipation of meetings with the board of directors, the creditors, meetings with other third parties and Court proceedings.

### H. Board of Directors

19. Rothschild provided updates to the board of directors, including meetings to approve key milestones in the solicitation and chapter 11 process. Rothschild prepared materials on the key highlights of the restructuring plan for the board of directors to review and discuss. Rothschild also prepared materials about the Debtor, the restructuring plan and other topics for new director candidates.

### I. Court Hearings and Filings

20. Rothschild's professionals were available in Court to provide testimony when required in its capacity as financial advisor and investment banker to the Debtor, including the hearing on first day motions and the confirmation hearing, and spent considerable time engaged in research and performing various analysis and collection of salient documents in preparation

12

for the Court proceedings. Rothschild also assisted in the review of key court filings including, but not limited to, several First Day Motions. Rothschild also prepared a declaration in support of confirmation of the Prepackaged Plan, which included its estimate of the value of the reorganized debtor.

**J.    Rothschild's Professionals**

21.    Rothschild's extensive upfront efforts prior to the Petition Date, as well as continued work during the Application Period, allowed the Debtor to develop and execute a successful Prepackaged Plan that minimized potential negative impacts to the Debtor's business and vendor relationships. Rothschild's efforts contributed significantly to the Debtor being able to get 100% of the claims amount of voting Senior Lenders and more than 95% of the claims amount of voting subordinated notes holders to vote in support of the Prepackaged Plan.

22.    Senior level professionals with extensive experience in the area of investment banking and bankruptcy services have directed Rothschild's team. The investment banking services set forth above were performed primarily by David Resnick (Managing Director), Daniel Gilligan (Managing Director), Matthew Chou (Associate), Sonya Li (Analyst) and Mark Longenecker (Analyst), as well as other professionals and paraprofessionals, as needed. Rothschild's general staffing policy is to assign senior bankers, experienced junior bankers and financial analysts to each restructuring assignment. The senior bankers, David Resnick and Daniel Gilligan, have overall responsibility for the case. They are primarily responsible for developing strategy with respect to the case, directing negotiations and interfacing with the other senior professionals involved. The experienced junior banker, Matthew Chou, is responsible for day-to-day coordination of the case and the review of all financial analyses and works closely with the financial analysts, in this case Sonya Li and Mark Longenecker, who assist in the day-to-day coordination of the case and perform extensive financial analyses. The Managing

Directors, Associates and Analysts coordinate their actions so as to not duplicate efforts. Given that the Managing Directors, Associates and Analysts have different roles in the case but have overlapping responsibilities, there are frequent times where it is appropriate for two or more bankers to be present at a meeting.

### Rothschild's Request for Allowance and Final Approval of Fees Earned During the Application Period

23.     During the Application Period, Rothschild has provided financial advisory and investment banking services to the Debtor and earned fees for such services totaling $4,338,709.67, including its Monthly Fees and the MNG Completion Fee.

24.     Of these total fees of $4,338,709.67, the Debtor and Rothschild have agreed to deposit that portion of these fees not yet paid to Rothschild by the Debtor, $4,290,573.09 (the "Fund"), in escrow with JPMorgan Chase Bank, N.A. (the "Escrow Agent") on or about April 6, 2010 until such time as Rothschild notifies the Escrow Agent that this Court has entered an order approving the payments requested in this Application (the "Application Order") and stating the amounts approved thereunder. Upon such notice by Rothschild, the Escrow Agent will release from the Fund to Rothschild that amount approved under the Application Order together with a portion of any proceeds of any investment and reinvestment by the Escrow Agent of the Fund. The Escrow Agent will deliver to the Debtor the remainder of the Fund after delivery to Rothschild of the amounts identified in the preceding sentence.

25.     Prior to the Petition Date, on January 21, 2010, Rothschild received a payment of $175,000.00 from the Debtor, in accordance with the Engagement Letter, as payment of the Monthly Fee for the month of January. The Debtor additionally made a $15,000.00 pre-petition payment to Rothschild for estimated expenses for the month of January. Rothschild has invoiced the Debtor only for such expenses as were actually incurred. (Rothschild has and will apply

invoice credits in favor of the Debtor for any estimated expenses paid by the Debtor but not actually incurred by Rothschild).

26.     Rothschild respectfully submits that the compensation sought in this Application for services rendered by Rothschild to the Debtor during the Application Period is fully justified and reasonable based upon (a) the time and labor required, (b) the complexity of the issues presented, (c) the skill necessary to perform the financial advisory and investment banking services properly, (d) the preclusion of other employment, (e) the customary fees charged to clients in non-bankruptcy situations for similar services rendered, (f) time constraints required by the exigencies of the case and (g) the experience, reputation and ability of the professionals rendering services.

27.     Rothschild respectfully submits that the services it has rendered to the Debtor has been necessary and in the best interest of the Debtor and have furthered the goals of all parties in interest.  The effort expended by Rothschild in representing the Debtor, the complexity of the issues and the difficulty in negotiating this case have been substantial.

28.     Rothschild respectfully submits that under all of the criteria normally examined in chapter 11 reorganization cases, the compensation requested by Rothschild is reasonable in light of the work performed by Rothschild in this case.

### Rothschild's Application for Reimbursement of Out-Of-Pocket Expenses Incurred During the Application Period

29.     In connection with the advisory services rendered during the Application Period, Rothschild has recognized actual and necessary out-of-pocket expenses in the amount of $8,315.03.  Rothschild respectfully submits that the out-of-pocket expenses recognized during the Application Period were necessary and reasonable both in scope and amount.  Details of the expenses recognized during the Application Period are provided in **Exhibit "C"**.  Rothschild has

incurred $8,315.03 in expenses that have cleared Rothschild's internal expense reporting system. In addition, Rothschild requests final approval of a reimbursement amount that includes an additional $17,000.00, which is Rothschild's estimate of the reimbursement required for expenses that were incurred during the Application Period but which have not yet cleared Rothschild's internal expense reporting systems. Rothschild will request reimbursement from the Debtor only for such expenses as were actually incurred.

30.     Rothschild's charges for expenses are determined in the same manner for clients in non-bankruptcy matters. Out-of-pocket expenses incurred by Rothschild are charged to a client if the expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client. Rothschild does not factor general overhead expenses into disbursements charged to its clients in connection with chapter 11 cases. Rothschild has followed its general internal policies with respect to out-of-pocket expenses billed to the Debtor as set forth below, with any exceptions specifically explained:

(a)     Rothschild often retains outside legal counsel in connection with Rothschild's retention in chapter 11 cases. In this case, Rothschild retained Debevoise & Plimpton LLP as legal counsel to assist Rothschild with the preparation of the Engagement Letter, Rothschild's application for retention, Rothschild's final fee application and similar matters;

(b)     Rothschild's general policy permits its employees to bill lunch or dinner meals to a client if the employee is required to provide services to the client during such mealtime due to extreme time constraints. Rothschild's employees are permitted to order meals in the office if Rothschild's employee is required to work after 8:00 p.m. on weekdays or more than five (5) consecutive hours on weekends or holidays. Meal expenses incurred during meetings which employees and other meeting participants are required to attend are billed at cost;

(c)     Messengers and couriers are used by Rothschild to deliver hard copy documents relating to a client matter, which require receipt on an expedited basis; otherwise Rothschild uses the regular postal system. Any charges for either messengers or couriers are billed to the client at cost;

(d)     All airfare and other transportation charges incurred by Rothschild's

16

employees directly in connection with services to the client are billed to the client at cost;

(e) The research/database category consists of the cost of using databases (e.g., Disclosure, Securities Data Corporation, Dow Jones, Lexis-Nexis, etc.) to which Rothschild subscribes to search for and obtain information used in Rothschild's financial analyses. Rothschild pays the vendor's standard rate for such database services. In certain instances, Rothschild has determined that paying a flat annual or monthly fee for such services is less costly than contacting for such services on a per use basis. Such annual or monthly services are allocated to clients based on such clients' use of such service. The research category also consists of charges from outside services, which supply, for a fee, financial documents from regulatory agencies, which cannot be obtained from databases subscribed to by Rothschild;

(f) Rothschild bills photocopying charges at a rate of $0.10 per page for black and white copies and $1.00 per page for color copies;

(g) With respect to local travel, Rothschild's general policy enables employees to travel by taxi or, in certain circumstances, by private car service, to and from meetings while rendering services to a client on a client related matter, for which the client is charged. This policy is based on Rothschild's determination that travel by taxi or private car service is the most efficient use of a professional's time. Rothschild's employees are not permitted to charge personal commuting expenses to a client unless the employee is traveling after 9:00 p.m. and has been required to work late as a result of the time exigencies of that client's matters;

(h) Telephone expenses are charged based on Rothschild's actual cost of telephone charges with respect to client matters; and

(i) Word processing charges represent actual costs incurred by Rothschild's in-hour vendor and actual cost of overtime secretarial support in connection with client matters.

31. A summary of all fees earned and out-of-pocket expenses applied for and received to date is provided below:

| Advisory Period(s) | A<br>Advisory Fees | B<br>Out-of-Pocket Expenses | C<br>= A + B<br>Total<br>Amount(s) Due |
|---|---|---|---|
| January 22-31, 2010[4] | $56,451.61 | $3,806.11 | $60,257.72 |

---

4. Advisory fee calculated as follows: 10 days/31 days x $175,000.00.

| | | | |
|---|---:|---:|---:|
| February 1-28, 2010 | 175,000.00 | 2,646.95 | 177,646.95 |
| March 1-19, 2010[5] | 4,107,258.06 | 18,861.97 | 4,126,120.03 |
| | $4,338,709.67 | $25,315.03[6] | $4,364,024.70 |

## Rothschild's Time Records

32.    The amount of the fees and out-of-pocket expenses sought in this application and Rothschild's billing processes are consistent with market practices for investment banking firms both in and out of a bankruptcy context.  Rothschild does not bill its clients based on the number of hours expended by its professionals.  Rothschild has, however, maintained contemporaneous time records in the Debtor's case in one-half hour increments.  A detailed breakdown of the number of hours expended by each professional during the Application Period is attached hereto as **Exhibit "D"**.

33.    A summary of the hours expended by Rothschild professionals during the Application Period is summarized below:

| Summary of Hours | | | | |
|---|---|---|---|---|
| **Professional** | **January 22-31, 2010** | **February 2010** | **March 1-19, 2010** | **Total Hours** |
| Resnick | 4.5 | 11.0 | 12.5 | 28.0 |
| Gilligan | 15.5 | 9.5 | 24.5 | 49.5 |
| Chou | 20.5 | 36.0 | 51.5 | 108.0 |
| Li | 11.0 | 43.0 | 15.0 | 69.0 |
| Longenecker | 8.0 | 25.0 | 20.5 | 53.5 |
| **Total(s)** | 59.5 | 124.5 | 124.0 | 308.0 |

34.    All services provided by Rothschild for which compensation is requested were performed for, and on behalf of, the Debtor after the filing of this case and were not rendered on behalf of any other person.

---

5.    Advisory fee calculated as follows: 19 days/31 days x $175,000.00, plus the MNG Completion Fee.

6.    Rothschild has incurred $8,315.03 in expenses that have cleared Rothschild's internal expense reporting system.  Rothschild requests final approval of a reimbursement amount that includes an additional $17,000.00, which is Rothschild's estimate of the reimbursement required for expenses that were incurred during the Application Period but which have not yet cleared Rothschild's internal expense reporting systems.  Rothschild will request reimbursement from the Debtor only for such expenses as were actually incurred.

18

## Requested Relief

WHEREFORE, Rothschild requests the Court to enter an order substantially in the form of **Exhibit "E"** attached hereto to: (a) approve the allowance of (i) Rothschild's Monthly Fees in the amount of $338,709.67, (ii) MNG Completion Fee in the amount of $4,000,000.00 and (iii) the reimbursement of Rothschild's out-of-pocket necessary expenses in the amount of $25,315.03 for the Application Period; and (b) that the Court grant Rothschild such other and further relief as is just.

Dated: April 5, 2010
New York, New York

/s/ Daniel Gilligan
Daniel Gilligan
Managing Director
ROTHSCHILD INC.
1251 Avenue of the Americas, 51st Floor
New York, New York 10020

*Financial Advisor and Investment Banker to the Debtor*

60974941_2

## <u>VERIFICATION</u>

STATE OF NEW YORK     )
                                  ) ss.:
COUNTY OF NEW YORK  )

      Daniel Gilligan, being duly sworn, deposes and says:

      1.     I am a Managing Director of the investment banking firm Rothschild Inc. ("Rothschild"), which maintains an office located at 1251 Avenue of the Americas, 51st floor, New York, New York 10020. Rothschild has acted as financial advisor and investment banker to, and rendered professional services on behalf of the Debtor.

      2.     I have personally performed many of the financial advisory and investment banking services rendered by Rothschild as financial advisor and investment banker to the Debtor and am thoroughly familiar with all other work performed on behalf of the Debtor by the professionals and paraprofessionals in the firm.

      3.     I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief. Moreover, I have reviewed Del. Bankr. L.R. 2016-2, and submit that the Application substantially complies with such order received or to be received for services rendered in or in connection with this case.


                                                  _____
                                                Daniel Gilligan
                                                  Managing Director, Rothschild Inc.

SWORN AND SUBSCRIBED before me
this _____ day of April 2010


_____
Notary Public
My Commission Expires: _____

_[signature]_

Daniel Gilligan
Managing Director, Rothschild Inc.

SWORN AND SUBSCRIBED before me
this 5th day of April 2010

_[signature]_

Notary Public
My Commission Expires: _May 7, 2011_

DONNA GRASSO SHANDLEY
Notary Public, State Of New York
No.01GR6058322
Qualified In Westchester County
Commission Expires May 7, 20 11

2