# EXHIBIT A

**Engagement Letter**

As of December 1, 2008

Joseph (Jody) J. Lodovic, IV
President
MediaNews Group, Inc.
101 W. Colfax Avenue, Suite 100
Denver, Colorado 80202



Dear Mr. Lodovic:

This letter (this "Agreement") will confirm the terms and conditions of the agreement among MediaNews Group, Inc. ("MNG", and collectively with its direct and indirect subsidiaries, the "Company") and Rothschild Inc. ("Rothschild"), regarding the retention of Rothschild as exclusive financial advisor and investment banker to the Company in connection with a possible restructuring of its businesses and/or certain liabilities of the Company.

Section 1    Services to be Rendered.    In connection with the formulation, analysis and implementation of various options for a restructuring, reorganization or other strategic alternative relating to the Company, whether pursuant to a Financing or a Transaction (each as defined below) or any series or combination of Financings or Transactions, Rothschild will perform the following services:

(a)    to the extent deemed desirable by the Company, identify and/or initiate potential Financings and Transactions;

(b)    to the extent Rothschild deems necessary, appropriate and feasible, or as the Company may request, review and analyze the Company's assets and the operating and financial strategies of the Company;

(c)    review and analyze the business plans and financial projections prepared by the Company, including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(d)    evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(e)    to the extent requested by the Company, assist the Company and its professionals in evaluating, structuring, reviewing and negotiating any proposed restructuring, reorganization or other strategic alternative relating to the Company, whether pursuant to a Financing or a Transaction or any series or combination of Financings or Transactions;

(f)    determine a range of values for the Company and any securities that the Company offers or proposes to offer in connection with a Financing or a Transaction;

Rothschild Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com

David L. Resnick
Managing Director
Telephone 212 403-5252
Facsimile 212 403-5454
Email david.resnick@us.rothschild.com

(g)    to the extent Rothschild deems necessary, appropriate and feasible and as requested by the Company, assist the Company in developing and preparing any memorandum to be used in soliciting potential lenders, acquirors or investors, it being agreed that any such memorandum shall be based entirely upon information supplied by the Company and the Company shall be solely responsible for the accuracy and completeness of any such memorandum;

(h)    advise the Company on the risks and benefits of considering a Financing or a Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company;

(i)    review and analyze any proposals the Company receives from third parties in connection with a Financing or a Transaction or other transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

(j)    to the extent requested by the Company, assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Financing or a Transaction;

(k)    advise the Company with respect to, and attend, meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(l)    in the event the Company determines to commence a Bankruptcy Case or Cases (as defined below) under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code") or a Bankruptcy Case or Cases under the Bankruptcy Code is commenced against the Company, and if requested by the Company, participate in hearings before the bankruptcy court in which such Bankruptcy Case or Cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan (as defined below);

(m)    to the extent requested by the Company, advise and assist the Company in developing and seeking approval of any proposed Plan (as defined below), and assist the Company and participate in negotiations with entities or groups affected by any proposed Plan; and

(n)    render such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Company.

During the term of this Agreement, to the extent requested by the Company, David Resnick, for so long as he is employed by Rothschild, shall supervise Rothschild's performance of services hereunder.

The parties acknowledge that it is anticipated that Denver Newspaper Agency LLP, a Delaware limited liability partnership ("DNA"), of which 50% of the outstanding limited partnership interests are held by The Denver Post Corporation ("Denver Post"), a subsidiary of MNG, and 50% of the outstanding limited partnership interests are held by a subsidiary of E.W. Scripps Company ("Scripps"), and its direct corporate parents will be the subject of a separate restructuring, reorganization or other strategic alternative, which may include a Transaction or Financing or series or combinations of Transactions or Financings (the "Denver Transaction"), and Rothschild will perform the services described in this Section 1 in connection with the Denver Transaction.

As used herein, the term "Transaction" shall mean any one or more of the following, whether pursuant to a plan of reorganization (a "Plan") confirmed in connection with any case or cases commenced by or against MNG, any of its subsidiaries, any of its affiliates, partnerships, other similar entities with which it has joint operating arrangements or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under the Bankruptcy Code or otherwise: (a) any transaction or series of transactions that effects or proposes to effect material amendments to, or other material changes in, the economic terms of all or a material portion of the Company's or DNA's, as the case may be, outstanding indebtedness, trade claims, leases, unfunded pension and retiree medical liabilities, and/or other liabilities (whether on or off balance sheet), including, without limitation, any exchange, repurchase or forgiveness of any portion thereof; (b) any transaction or series of transactions involving (i) an acquisition, merger, consolidation or other business combination pursuant to which a majority of or a controlling interest in the business or assets of the Company or DNA is, directly or indirectly, combined with another company, (ii) the acquisition, directly or indirectly, of equity interests (including partnership interests) or options or any combination thereof, constituting a majority of or a controlling interest in the outstanding stock or voting power of the Company or DNA, (iii) any other purchase or acquisition, including without limitation any recapitalization, directly or indirectly, of a majority of or a controlling interest in the business, assets, securities or voting power of the Company or DNA, or (iv) any restructuring, reorganization or other transaction similar to any of the foregoing, including without limitation those effected through an acquisition of assets, tender offer, exchange offer or refinancing (each of clause (i),(ii), (iii) or (iv) above, a "Control Transaction"), or (v) other than in the ordinary course, any purchase or acquisition, directly or indirectly, of an interest in the business, assets, securities or voting power of the Company or DNA in excess of $10 million that does not constitute a Control Transaction under clause (i), (ii), (iii) or (iv) above, (a "Non-Control Transaction"). For the avoidance of doubt, a sale or other transfer solely by Scripps of its direct or indirect interest in DNA shall not by itself constitute a Control Transaction in respect of DNA.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Rothschild is not assuming any responsibility for the Company's decision to

pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction or other transaction and acknowledges that the Company has the right to reject any and all offers to enter into any potential Transaction or other transaction for any reason whatsoever in the Company's absolute discretion. Rothschild shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

For the avoidance of doubt, the Company need not use the services of Rothschild in connection with any particular Non-Control Transaction, but may not engage any other financial advisor in connection with any such Non-Control Transaction; provided, that if the Company requests that Rothschild assist it with any Non-Control Transaction subject to the terms of Section 4(d) hereof, the Company shall pay Rothschild the relevant Non-Control Transaction Fee(s) upon the consummation of any Non-Control Transaction.

Section 2    Information Provided by the Company.

(a)    The Company will cooperate with Rothschild and furnish to, or cause to be furnished to, Rothschild any and all information as Rothschild reasonably deems appropriate to enable Rothschild to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that Rothschild (i) will use and rely solely on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently the same; (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information, and (iii) will not act in the official capacity of an appraiser of specific assets of the Company or any other party. The Company confirms that the information to be furnished by the Company, when delivered, to the best of its knowledge will be true and correct in all material respects, will be prepared in good faith, and will not contain any material misstatement of fact or omit to state any material fact. The Company will promptly notify Rothschild if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild.

(b)    The Company acknowledges that in the course of this engagement it may be necessary for Rothschild and the Company to communicate electronically. The Company further acknowledges that although Rothschild will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, the Company agrees that Rothschild shall have no liability to the Company with respect to any error or omission (except and only to the extent that such error or omission was the result of Rothschild's gross negligence or willful misconduct) arising from or in connection with:



(i) the electronic communication of information to the Company; or (ii) the Company's reliance on such information.

    (c)    All non-public Information concerning the Company which is given to Rothschild or its affiliates or its or their directors, officers or employees, or counsel to or other representatives of Rothschild or its affiliates, shall be subject to the terms of the letter agreement dated November 26, 2008 (the "<u>Confidentiality Agreement</u>"), between Rothschild and MNG.

    <u>Section 3</u>    <u>Application for Retention of Rothschild</u>.  In the event a Bankruptcy Case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (<u>a</u>) this Agreement and (<u>b</u>) Rothschild's retention by the Company under the terms of this Agreement (including, without limitation, the reimbursement of the fees, disbursements and other charges of Rothschild's counsel pursuant to Section 6 hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), *nunc pro tunc* to the date the Chapter 11 case was commenced, and shall use its reasonable best efforts to obtain Bankruptcy Court authorization thereof.  The Company shall use its reasonable best efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code.  The Company shall supply Rothschild and its counsel with a draft of such application and any proposed order authorizing Rothschild's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild and its counsel to review and comment thereon.  In the event a Bankruptcy Case is commenced, Rothschild shall have no obligation to provide any services under this Agreement unless Rothschild's retention under the terms of this Agreement is approved in the manner set forth above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Rothschild.

    Rothschild acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 3, payment of Rothschild's fees and expenses shall be subject to (<u>a</u>) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Rothschild's retention, (<u>b</u>) any applicable fee and expense guidelines and/or orders and (<u>c</u>) any requirements governing interim and final fee applications.  In the event that Rothschild's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Rothschild hereunder as promptly as practicable in accordance with the terms hereof and the orders governing interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any.



In agreeing to seek Rothschild's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Rothschild's general restructuring experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company, that the value to the Company of Rothschild's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Fee, the Completion Fees and the New Capital Fee (each as defined below) are reasonable regardless of the number of hours expended by Rothschild's professionals in performance of the services provided hereunder.

Section 4    Fees of Rothschild. As compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay Rothschild (via wire transfer or other mutually acceptable means) the following fees in cash:

(a)    Commencing as of the date hereof, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Fee") of $175,000 per month. The initial Monthly Fee shall be pro-rated based on the commencement of services as of the date hereof. The initial Monthly Fee shall be payable by the Company upon the execution of this Agreement by the Company, and thereafter the Monthly Fee shall be payable by the Company in advance on the first day of each subsequent month.

(b)    A fee (the "Denver Completion Fee") of $1.15 million, payable upon the consummation of a Control Transaction solely involving of DNA and/or Denver Post; provided, however, if such Control Transaction is consummated (i) as part of a "pre-packaged" or "prearranged" Plan conceived prior to DNA's and/or Denver Post's entering into a bankruptcy proceeding, the Denver Completion Fee shall be $1 million or (ii) in connection with DNA's and/or Denver Post's exit from bankruptcy as part of a Plan developed while DNA and/or Denver Post are debtors in a bankruptcy proceeding, the Denver Completion Fee shall be $750,000.

(c)    A fee (the "MNG Completion Fee" and together with the Denver Completion Fee, the "Completion Fees") of (i) $4.5 million upon the consummation with the support of the Hearst Corporation of a Control Transaction prior to the commencement of any Bankruptcy Case involving the Company or as part of a "pre-packaged" or "pre-arranged" Plan conceived prior to the commencement of any Bankruptcy Case involving the Company; (ii) $4.0 million upon the consummation with the support of a third-party investor (other than Hearst Corporation) or the existing bank group and MNG of a Control Transaction prior the commencement of any Bankruptcy Case involving the Company or as part of a "pre-packaged" or "pre-arranged" Plan conceived prior to the commencement of any Bankruptcy Case involving the Company; (iii) $3.5 million upon the consummation of a Control Transaction that would not otherwise qualify for a MNG Completion Fee under clause (i) or (ii) above and is part of a Chapter 11 case involving the



support of the Hearst Corporation, a third party investor or the existing bank group supported by MNG; or (iv) $2.75 million upon the consummation of any other Control Transaction pursuant to a Chapter 11 case.

(d)     A fee (the "Non-Control Transaction Fee") determined in accordance with Exhibit B attached hereto, payable upon the consummation of a Non-Control Transaction in respect of the Company or DNA where the Company expressly requests Rothschild's assistance as broker or placement agent or otherwise as manager of the process of seeking third parties to participate in such Non-Control Transaction.

(e)     A new capital fee (the "New Capital Fee") equal to (i) 1.50% of the face amount of any senior secured debt raised, including, without limitation, any debtor-in-possession financing raised; (ii) 2.50% of the face amount of any junior secured debt raised, (iii) 3.00% of the face amount of any senior or subordinated unsecured debt raised and (iv) 5.00% of any equity capital, or capital convertible into equity, raised (each a "Financing"). The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed. For the avoidance of doubt, the term "raised" shall include the amount committed or otherwise made available to the Company whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company. Notwithstanding the foregoing, no New Capital Fee shall be payable to Rothschild hereunder if and only to the extent that any new capital is raised from current holders (and affiliates thereof) of debt or equity securities issued by the Company or its subsidiaries ("Current Holders"), as of the date of this Agreement, unless such Current Holders agree to put in new capital in response to a process in which third parties (other than or in addition to the Current Holders) are invited to participate.

(f)     To the extent the Company requests that Rothschild perform additional services not contemplated by this Agreement, such additional fees as shall be mutually agreed upon by Rothschild and the Company, in writing, in advance.

The parties acknowledge that it is contemplated that DNA will pay such fees and expenses and other obligations hereunder to the extent relating to DNA; provided that such acknowledgement shall not in any way limit or effect the Company's obligations hereunder in respect of such payments to the extent not made by DNA, or otherwise obligate Rothschild to pursue legal action or exhaust remedies against DNA to collect such payments.

The Company and Rothschild acknowledge and agree that (a) the hours worked, (b) the results achieved and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild have taken such factors into account in setting the fees hereunder.



Section 5  Credit.  Rothschild shall credit against the Completion Fee: (a) 50% of any Non-Control Transaction Fees paid (the "Non-Control Fee Credit") and (b) 50% of any New Capital Fees paid (the "New Capital Fee Credit"; provided that the sum of any Non-Control Fee Credit and New Capital Fee Credit shall not exceed the aggregate Completion Fees.

Section 6  Expenses.  Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse Rothschild for its reasonable expenses incurred in connection with the performance of its engagement hereunder, including, without limitation, the reasonable fees, disbursements and other charges of Rothschild's counsel (without the requirement that the retention of such counsel be approved by the Bankruptcy Court). Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services.  If a Bankruptcy Case is commenced, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild for such expenses under this Section 6 upon presentation of an invoice or other similar documentation with reasonable detail.

Section 7  Indemnity.  The Company agrees to the provisions of Exhibit A hereto which provide for indemnification by the Company of Rothschild and certain related persons.  Such indemnification is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein.  Such indemnification shall survive any termination, expiration or completion of this Agreement or Rothschild's engagement hereunder.

Section 8  Term.  This Agreement may be terminated by either the Company or Rothschild with or without cause by providing ten (10) days advance notice in writing.  If terminated, (a) Rothschild shall be entitled to reimbursement of any and all reasonable expenses described in Section 6 and (b) Rothschild shall be entitled to payment of any fees which are due and owing to Rothschild upon the effective date of termination (including, without limitation, any Monthly Fees required by Section 4(b) hereof); provided, that the final Monthly Fee will be pro-rated for any incomplete monthly period of service.  Termination of Rothschild's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Rothschild and certain related persons as provided in Exhibit A.  Without limiting any of the foregoing, in the event that this Agreement is terminated (other than by the Company for Cause (as defined below) or by Rothschild without Cause), the Completion Fee(s), Non-Control Transaction Fee(s) and New Capital Fee(s) shall be payable in the event that this Agreement is terminated prior to the consummation of a Control Transaction and (i) as applicable, a Transaction or a Financing, is consummated at anytime prior to the expiration of one (1) year after such termination, or (ii) a letter of intent or definitive agreement with respect thereto is executed at any time prior to one (1) year after such termination (which letter of intent or definitive agreement subsequently results in the consummation of a Transaction or Financing, as applicable, within one (1) year thereafter).  As used herein, the term "Cause" means (x) from the Company's perspective, (A) the material breach by Rothschild of its obligations under this Agreement which is not cured within ten days of notice



thereof by the Company to Rothschild or (B) the gross negligence or willful misconduct by Rothschild relating to the Company or its performance of its obligations under this Agreement and (y) from Rothschild's perspective, (A) the material breach by the Company of its obligations under this Agreement which is not cured within ten days of notice thereof by Rothschild to the Company or (B) the gross negligence or willful misconduct by the Company relating to its performance of its obligations under this Agreement.

Section 9    Miscellaneous.

(a)    *Administrative Expense Priority.*  In a Bankruptcy Case of MNG or any of its direct or indirect subsidiaries, affiliates, partnerships, other similar entities with which it has joint operating arrangements or any combination thereof, the Company agrees that Rothschild's post-petition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly Rothschild the compensation and expense reimbursement contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. In addition, the Company shall use its reasonable best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Case permits the use of cash collateral and financing proceeds for the full and prompt payment of Rothschild's fees and expenses contemplated hereby.

(b)    *Survival, Successors & Assigns.*  Sections 4 through 9 hereof, inclusive, including the provisions set forth in Exhibit A hereto, shall survive the termination or expiration of this Agreement. The benefits of this Agreement and the indemnification and other obligations of the Company to Rothschild and certain related persons contained in Exhibit A hereto shall inure to the respective successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit A by the parties hereto and thereto shall be binding upon their respective successors and assigns. The Company shall use its reasonable best efforts to cause any purchaser of all or substantially all of the Company's assets to assume the Company's obligations hereunder.

(c)    *Benefit of Agreement; No Reliance by Third Parties.*  The advice (oral or written) rendered by Rothschild pursuant to this Agreement is intended solely for the benefit and use of the Company and its professionals in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Rothschild, which shall not be unreasonably withheld



or delayed. In addition, the Company agrees that it will not, and will not permit any of its affiliates to, make any public reference to Rothschild except with the prior consent of Rothschild, which shall not be unreasonably withheld or delayed, or as otherwise provided in this Agreement.

(d) *Nature of Relationship.* The relationship of Rothschild to the Company hereunder shall be that of an independent contractor and Rothschild shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Rothschild have the authority to manage money or property of the Company. The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Rothschild will not act, nor will it be deemed to have acted, in any managerial or fiduciary capacity whatsoever with respect to the Company or any third party including, without limitation, security holders, creditors or employees of the Company.

(e) *Rothschild Affiliates.* Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment banking institutions located worldwide (the "Affiliated Entities"). None of the Affiliated Entities is being retained hereunder nor will any professionals or employees of the Affiliated Entities provide services to the Company in connection with the matters contemplated hereby. The Affiliated Entities are involved in a wide range of investment banking and other activities. Rothschild can make no representation as to the "disinterestedness" (as defined in the Bankruptcy Code) of the professionals or employees of the Affiliated Entities. Information that is held by the Affiliated Entities will not for any purpose be taken into account in determining Rothschild's responsibilities to the Company hereunder. None of the Affiliated Entities will have any duty to disclose to the Company or any other party, or utilize for the Company's benefit, any non-public information acquired in the course of providing services to any other person engaging in any transaction or otherwise carrying on its business.

(f) *Required Information.* Since Federal law requires Rothschild to obtain, verify, and record information that identifies any entity not listed on the New York Stock Exchange, the American Stock Exchange or whose common stock or equity interests have not been designated as a National Market System security listed on the NASDAQ stock market that enters into a formal relationship with it, the Company agrees to provide Rothschild with its tax or other similar identification number and/or other identifying documents, as Rothschild may reasonably request, to enable it to comply with applicable law. For your information, Rothschild may also screen the Company against various databases to verify its identity.

(g) *Public Announcements.* The Company acknowledges that with the prior consent of MNG, which shall not be unreasonably withheld or delayed, Rothschild may at its option and expense, after announcement of a Transaction or a Financing, place announcements and advertisements or otherwise publicize the Transaction or the Financing in such financial and other newspapers and journals as it may choose, stating that Rothschild acted as financial advisor to the



Company in connection with such transaction. In addition, subject to the prior consent of MNG, which shall not be unreasonably withheld or delayed, the Company further consents to Rothschild's public use or display of Company's logo, symbol or trademark as part of Rothschild's general marketing or promotional activities, provided such use or display is in the nature of a public record or tombstone announcement in relation to a Transaction or a Financing.

(h) *CHOICE OF LAW: JURISDICTION.* THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAWS THAT WOULD RESULT IN THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN (A) ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK OR (B) THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY CONSENTS TO THE SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW, AND AGREES THAT JOSEPH (JODY) J. LODOVIC, IV SHALL BE AUTHORIZED TO ACCEPT SERVICE ON ITS BEHALF.

(i) *Waiver of Jury Trial.* Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement or any Transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented, expressly or otherwise, that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(j) *Entire Agreement.* This Agreement, including the exhibit(s) hereto, and the Confidentiality Agreement, embody the entire agreement and understanding of the parties hereto and supersede any and all prior agreements, arrangements and understandings relating to the



matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(k)     *Authority*.  Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and Exhibit A attached hereto and the transactions contemplated hereby.  Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate (or other entity) action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms.  Rothschild will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by, or is reasonably believed by Rothschild to be a director, officer, employee or authorized agent of MNG.

(l)     *Counterparts*.  This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Agreement by telecopier shall be effective as delivery of a manually executed counterpart to this Agreement.

(m)     *Notices*.  Any notice given pursuant to, or relating to, this Agreement shall be in writing and shall be mailed or delivered by courier (i) if to the Company, at the address set forth above, Attn: Joseph (Jody) J. Lodovic, IV and (ii) if to Rothschild, to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: David Resnick, with a copy to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: General Counsel.

*     *     *



If the foregoing correctly sets forth the understanding and agreement between Rothschild and the Company, please so indicate by signing the enclosed copy of this Agreement, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

ROTHSCHILD INC.

By: _____

David L. Resnick
Managing Director

Accepted and Agreed to as of
the date first written above on

behalf of itself and its direct

and indirect subsidiaries:

MEDIANEWS GROUP, INC.

By: _____

Joseph (Jody) P. Lodovic, IV
President

356896v4

## Exhibit A

The Company shall indemnify and hold harmless Rothschild and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Rothschild and each of such other persons, an "Indemnified Party" and, collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including, without limitation, stockholder actions, damages, judgments, assessments, investigation costs, settlement costs (if such services provided by Rothschild with the written consent of the Company, not to be unreasonably withheld or delayed), fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or an Indemnified Party provides to any person or entity or (ii) any other action or failure to act by the Company, the Company's employees or other agents or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to this Agreement, the retention of and services provided by Rothschild under this Agreement, or in connection with any Transaction or other transaction; or (b) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose because of the gross negligence, willful misconduct or fraud of Rothschild or any other Indemnified Party.

The Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any reasonable legal or other out-of-pocket fees, disbursements or expenses as they are incurred by such Indemnified Party (a) in investigating, preparing, pursuing or settling any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (each, an "Action") in connection with, arising out of, based upon, or in any way related to the services provided by Rothschild under this Agreement in connection with any Transaction, Financing or other transaction or financing involving the Company and (b) in connection with enforcing such Indemnified Party's rights under this Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose primarily because of the gross negligence, willful misconduct or fraud of Rothschild or any other Indemnified Party, Rothschild will promptly remit to the Company any amounts reimbursed under this paragraph.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall promptly notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (a) if an executive officer of the Company had actual notice of such Action or (b) unless and only to the extent that the Company is materially

prejudiced or harmed by such failure. If the Company so elects or is requested by Rothschild, the Company shall assume the defense of any such Action, including the employment of counsel reasonably satisfactory to Rothschild and will not, without the prior written consent of Rothschild, settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (i) contains an express, unconditional release of each Indemnified Party from all liability relating to such Action and (ii) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. No Indemnified Party seeking indemnification, reimbursement or contribution under this Agreement will, without, the Company's prior written consent, which consent shall not be unreasonably withheld or delayed, settle, compromise, consent to the entry of any judgment in or otherwise resolve or seek to terminate any pending or threatened Action. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed in a timely manner to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible under this Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Rothschild under this Agreement. Benefits received by Rothschild shall be deemed to be equal to the compensation paid by the Company to Rothschild in connection with this Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided

by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Rothschild on the other hand.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen because of the gross negligence, willful misconduct or fraud of such Indemnified Party in connection with any such advice, actions, inactions or services. In the event the Company commences a Chapter 7 or Chapter 11 case, the Company shall use its reasonable best efforts to require, as a condition of the Company releasing from liability any creditor or other party-in-interest in the case, that such creditor or other party-in-interest release all Indemnified Parties from all claims or other liabilities directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to obtain such release with respect to the gross negligence, willful misconduct or fraud of any Indemnified Party.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Agreement, if any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this Agreement.

# ROTHSCHILD INC.

## Non-Control Transaction Fee

(Dollars In Millions)

| Aggregate Consideration[a] | Non-Control Transaction Fee Percentage [b] |
|---|---|
| $25.0 | 2.50% |
| 50.0 | 2.20 |
| 100.0 | 1.75 |
| 200.0 | 1.30 |
| 300.0 | 1.10 |
| 400.0 | 1.00 |
| 500.0 | 0.90 |
| 500.0+ | 0.85 |

(a) For purposes hereof, the term "Aggregate Consideration" shall mean the total amount of all cash plus the total value (as determined pursuant hereto) of all securities, contractual arrangements (including, without limitation, any lease arrangements or put or call agreements) and other consideration, including, without limitation, the present value (as determined by the Company and Rothschild in good faith) of any contingent or earned consideration, paid or payable, directly or indirectly, in connection with a Non-Control Transaction (including, without limitation, amounts paid (i) pursuant to covenants not to compete, employment contracts, employee benefit plans, management fees or other similar arrangements, and (ii) to holders of any warrants, stock purchase rights or convertible securities of the Company and to holders of any options or stock appreciation rights issued by the Company, whether or not vested). Aggregate Consideration shall also include the amount of any short-term liabilities (including, without limitation, any trade or ordinary course liabilities) and any long-term liabilities of the Company (including, without limitation, the principal amount of any indebtedness for borrowed money and capitalized leases and the full amount of any off-balance sheet financings) (x) repaid, defeased or retired, directly or indirectly, in connection with or in anticipation of a Non-Control Transaction or (y) existing on the Company's balance sheet at the time of a Non-Control Transaction (if such Non-Control Transaction takes the form of a merger, consolidation or a sale of stock or partnership interests) or assumed in connection with a Non-Control

Transaction (if such Non-Control Transaction takes the form of a sale of assets). For purposes of calculating the amount of revolving credit debt in the preceding sentence, the arithmetic mean of the amount of revolving credit debt outstanding on the last day of each month during the 12 months preceding the closing of the Non-Control Transaction will be used in the event such Non-Control Transaction takes the form of a recapitalization, restructuring, spin-off, split-off or similar transaction, Aggregate Consideration shall include the fair market value of (i) the equity securities of the Company retained by the Company's security holders following such Non-Control Transaction and (ii) any securities received by the Company's security holders in exchange for or in respect of securities of the Company following such Non-Control Transaction (all securities received by such security holders being deemed to have been paid to such security holders in such Non-Control Transaction). The value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the consummation of a Non-Control Transaction. The value of securities that are not freely tradable or have no established public market, or if the consideration consists of property other than securities, the value of such property shall be the fair market value thereof as mutually agreed in good faith by the Company and Rothschild, provided, however, that all debt securities shall be valued at their stated principal amount without applying a discount thereto. If the consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable. Aggregate Consideration shall also include the face amount of any liabilities tendered as purchase price in connection with any credit bid.

(b) Percentages rounded to two decimal places. The applicable Non-Control Transaction Fee percentage for Aggregate Consideration value amounts which fall between the amounts listed above shall be calculated based on a straight line interpolation of the percentages in the Non-Control Transaction Fee Schedule. For Aggregate Consideration value amounts which fall below or above the amounts listed above, the applicable Non-Control Transaction Fee percentage shall be agreed upon by Rothschild and the Company in good faith consistent with the above fee schedule.