# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br><br> AFFILIATED MEDIA, INC.,[1] <br><br> Reorganized Debtor. | Chapter 11 <br><br> Case No. 10-10202 (KJC) <br><br> (Confirmed Plan) <br><br> Hearing Date: March 8, 2012 at 2:00 p.m. (ET) <br> Objections Due: March 1, 2012 at 4:00 p.m. (ET) |

### REORGANIZED DEBTOR'S VERIFIED MOTION FOR AN ORDER EXTENDING THE TERM OF THE FCC TRUST AGREEMENT

MediaNews Group, Inc. (f/k/a Affiliated Media, Inc.) (the "Reorganized Debtor"), hereby moves (this "Motion") this Court, pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, approving the extension of the term of the Affiliated Media, Inc. FCC Trust Agreement dated as of March 17, 2010 (the "FCC Trust Agreement"), among the Reorganized Debtor and each of the individuals party thereto as FCC Trustees (the "FCC Trustees"), so that the term of the FCC Trust Agreement shall terminate on the earlier of (i) March 17, 2014, subject to the approval of this Court and any required consents and approvals from the Federal Communications Commission ("FCC"), and (ii) thirty (30) days after the final distribution of all proceeds of the sale, pursuant to all required consents and approvals of the FCC, of all assets held by the FCC Trust in accordance with the terms of the FCC Trust Agreement and the First Amended Prepackaged Plan of Reorganization of Affiliated Media, Inc., dated as of March 2,

---

1. The Reorganized Debtor changed its name from "Affiliated Media, Inc." to "MediaNews Group, Inc." on March 19, 2010. The last four digits of the federal tax identification number of the Reorganized Debtor are 5553. The Reorganized Debtor's mailing address and corporate headquarters is 101 W. Colfax Avenue, Suite 1100, Denver, CO 80202.

61659481_3

2010 (the "Prepackaged Plan").[2] The FCC Trustees have informed the Reorganized Debtor that they support the relief requested in this Motion. In support of this Motion, the Reorganized Debtor respectfully submits as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. In addition, section 6.17 of the Prepackaged Plan provides that this Court shall retain jurisdiction over the Affiliated Media, Inc. FCC Trust (the "FCC Trust") after the effective date of the Prepackaged Plan, and section 11.1(l) of the Prepackaged Plan provides, in relevant part, that this Court shall retain exclusive jurisdiction "[d]uring the period of time that the FCC Trust is in place, to enter and implement such orders as may be necessary or appropriate regarding the actions of the FCC Trust pursuant to th[e] Prepackaged Plan and the FCC Trust Agreement." Furthermore, paragraph 5 of the *Order Pursuant to Sections 105(A), 363(B) and 365 of the Bankruptcy Code for Authority to (I) Establish the FCC Trust and (II) Subject to FCC Approval, Assume and Assign FCC Broadcast Licenses* [D.I. 87] (the "FCC Trust Order"), entered by this Court on February 12, 2010 provides:

> The FCC Trust shall be subject to the continuing jurisdiction of this Court notwithstanding the confirmation and consummation of any plan of restructuring of the Debtor. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of FCC Trust Agreement or this Order.

FCC Trust Order, ¶ 5.

---

2. Capitalized terms used, but not otherwise defined, in this Motion shall have the meanings ascribed to such terms in the Prepackaged Plan.

61659481_3

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief requested herein is section 105 of the Bankruptcy Code.

## BACKGROUND

4. On January 22, 2010 (the "Petition Date"), the Reorganized Debtor's predecessor in interest (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, seeking confirmation of a prepackaged plan of reorganization that already had the overwhelming support of all creditors entitled to vote. During the period between January 22, 2010 and March 19, 2010, the Debtor continued to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, creditors' committee or examiner was appointed in the Debtor's bankruptcy case, and the Debtor's bankruptcy case proceeded quickly to consideration of the Debtor's prepackaged plan of reorganization.

5. As of the Petition Date, Alaska Broadcasting, Inc., a subsidiary of the Debtor ("Alaska Broadcasting"), owned a CBS-affiliated television broadcast station licensed to serve Anchorage, Alaska (the "Television Broadcast Station"), and Graham Newspapers, Inc., a subsidiary of the Debtor ("Graham Newspapers"), owned four radio broadcast stations licensed to serve communities in Texas (the "Radio Broadcast Stations", and together with the Television Broadcast Station, the "Broadcast Stations"). Each of the Broadcast Stations operates pursuant to licenses, authorizations, waivers and permits (the "FCC Broadcast Licenses") issued from time to time by the FCC. The FCC regulates both the ownership and operation of television and

radio stations, and any licensee of a broadcast station must obtain the FCC's prior consent to effectuate a voluntary assignment or transfer of control of a FCC broadcast station license. *See* 47 C.F.R. § 73.3540.

6.  As a result of the confirmation of the Prepackaged Plan, upon emergence of the Reorganized Debtor from bankruptcy, the lenders party to the Credit Agreement dated as of December 30, 2003, among the Debtor, the guarantors party thereto, the lenders party thereto and Bank of America, N.A., as Administrative Agent, as amended, restated, supplemented and/or otherwise modified from time to time, would own 88.9% of the equity of the Reorganized Debtor. Accordingly, in order for the Reorganized Debtor to emerge from bankruptcy with control of the FCC Broadcast Licenses (though its subsidiaries, Alaska Broadcasting and Graham Newspapers) the Reorganized Debtor would have been required to obtain the prior consent of the FCC, which could have significantly delayed the Reorganized Debtor's emergence from bankruptcy.

7.  In order to avoid delays associated with obtaining the consent of the FCC to a transfer of control of the FCC Broadcast Licenses to the Reorganized Debtor, section 6.17 of the Prepackaged Plan contemplated that prior to the Reorganized Debtor's emergence from bankruptcy, the Debtor would establish the FCC Trust pursuant to an order of this Court, and that upon receipt of all required consents and approvals of the FCC, the FCC Trust would take title to the FCC Broadcast Licenses. The assignment of the FCC Broadcast Licenses to the FCC Trust (and thus outside the control of the Debtor and the Reorganized Debtor) would obviate the need to obtain FCC consent to the transfer of control of the FCC Broadcast Licenses to the Reorganized Debtor. Instead, since the transfer of the FCC Broadcast Licenses to the FCC Trust would take place pursuant to an order of this Court and because the FCC Trust would remain

subject to the jurisdiction and oversight of this Court, the FCC could authorize such transfer using the streamlined "short form application" procedures applicable to *pro forma* ownership changes and "involuntary" transfer and assignment applications pursuant to FCC regulations. *See* 47 C.F.R. §§ 73.3540(f) and 73.3541.

8.  On February 12, 2010, this Court entered the FCC Trust Order, approving (a) the establishment of the FCC Trust, (b) the assignment of (i) all FCC Broadcast Licenses held by Alaska Broadcasting and Graham Newspapers and (ii) certain assets necessary to render broadcast services, such as transmission and antenna equipment and rights to use transmission sites (the "FCC Broadcast License Related Assets"), by Alaska Broadcasting and Graham Newspapers to the Debtor and (c) the assignment of all FCC Broadcast Licenses and FCC Broadcast License Related Assets by the Debtor to the FCC Trust.

9.  On March 4, 2010, this Court entered the *Findings of Fact, Conclusions of Law and Order (I) Approving the Debtor's (A) Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code, (B) Solicitation of Votes and Voting Procedures and (C) Forms of Ballots and (II) Confirming the Debtor's Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [D. I. 155], approving the Debtor's disclosure statement and confirming the Prepackaged Plan.

10. On March 17, 2010, following the receipt of all required consents and approvals of the FCC, (a) the FCC Trust was established pursuant to the FCC Trust Agreement, (b) Alaska Broadcasting and Graham Newspapers assigned all of the FCC Broadcast Licenses and FCC Broadcast License Related Assets to the Debtor and (c) the Debtor assigned all of the FCC Broadcast Licenses and FCC Broadcast License Related Assets to the FCC Trust. The FCC Trust is subject to the continuing jurisdiction and oversight of this Court (*see* Prepackaged Plan,

§ 11.1(l) and FCC Trust Order, ¶ 5), pending the disposition of all assets held by the FCC Trust related to the Broadcast Stations, including the FCC Broadcast Licenses and the FCC Broadcast License Related Assets (the "FCC Trust Assets"), by public or private sale pursuant to all required consents and approvals of the FCC and distribution of all proceeds thereof to the beneficiaries of the FCC Trust. Consistent with the Prepackaged Plan, one hundred percent (100%) of the continuing beneficial interests in the FCC Trust were issued to the Reorganized Debtor. The powers, authority, responsibilities and duties of the FCC Trust and the FCC Trustees are set forth in the FCC Trust Agreement. A copy of the executed FCC Trust Agreement is attached hereto as **Exhibit B**.

11. Concurrent with the assignment of the FCC Broadcast Licenses and the FCC Broadcast License Related Assets, Alaska Broadcasting and Graham Newspapers, on the one hand, and the FCC Trust, on the other hand, entered into Time Brokerage Agreements[3] pursuant to which Alaska Broadcasting and Graham Newspapers provide certain programming and related services for the broadcast operations of the FCC Trust, subject to the oversight and ultimate control of the FCC Trustees, pending final disposition of the FCC Trust Assets, thereby avoiding disruption of service to the public and preserving the value of the FCC Trust Assets as part of an ongoing business.

12. On March 19, 2010, the Prepackaged Plan became effective [D.I. 170].

13. On May 26, 2010, upon motion by the Reorganized Debtor, this Court entered the *Final Decree* [D.I. 207] (the "Final Decree"), which, *inter alia*, closed the bankruptcy case of the Reorganized Debtor.

---

3. A Time Brokerage Agreement is an arrangement pursuant to which the right to program a discrete block of time on a station is transferred by a licensee to a third party, subject to continuing oversight and control by the licensee. The third party also sells the commercial spot announcements within the programming time.

14.     Section 7.01 of the FCC Trust Agreement provides, in relevant part, that the FCC Trust Agreement will terminate or be extended as follows:

> The FCC Trust will terminate on the earlier of (a) thirty (30) days after the final distribution of all proceeds of the sale(s), pursuant to all required consents and approvals of the FCC, of the FCC Trust Assets in accordance with the terms of this FCC Trust Agreement and the Plan; and (b) subject to the approval of the Bankruptcy Court and any required consents and approvals from the FCC, the second (2nd) anniversary of the Effective Date; provided, however, that, on or prior to a date less than thirty (30) days prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the FCC Trust if it is necessary to the sale of the FCC Trust Assets and distribution of the proceeds thereof. Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained on a date within the period six (6) months prior to the expiration of each extended term.

FCC Trust Agreement, Section 7.01, at 15-16.

15.     Given that the FCC Trust Agreement contemplates the potential extension of the term of the FCC Trust Agreement with the approval of this Court, the Reorganized Debtor is seeking by this Motion approval of the extension of the term of the FCC Trust Agreement to permit the FCC Trust to continue to hold the FCC Trust Assets pending the sale or other disposition of the FCC Trust Assets to a qualified holder or holders thereof pursuant to all required consents and approvals of the FCC and in the mean time protect the jobs of employees of the Broadcast Stations and preserve the continuity of the service provided by the Broadcast Stations to the respective communities that they serve. Because the sale of the FCC Trust Assets have not yet been completed, it is impossible to distribute the proceeds thereof within the initial term of the FCC Trust Agreement.

## RELIEF REQUESTED

16.     By this Motion, the Reorganized Debtor seeks the entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit A**, approving the extension of the FCC Trust Agreement so that the term of the FCC Trust Agreement shall

terminate on the earlier of (i) March 17, 2014, subject to the approval of this Court and any required consents and approvals from the FCC, and (ii) thirty (30) days after the final distribution of all proceeds of the sale, pursuant to all required consents and approvals of the FCC, of all assets held by the FCC Trust in accordance with the terms of the FCC Trust Agreement and the Prepackaged Plan, without prejudice to the right of the Reorganized Debtor, the FCC Trustees or any other interested party to seek further extensions.  No approvals from the FCC are required to so extend the term of the FCC Trust Agreement.

**BASIS FOR RELIEF REQUESTED**

17. Section 105(a) of the Bankruptcy Code, which confers broad powers to bankruptcy courts, provides in relevant part, as follows:  "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

18. Because the proceeds of the sale of the yet-unsold FCC Trust Assets cannot be distributed before the expiration of the initial term of the FCC Trust Agreement, the term of the FCC Trust Agreement must be extended in order for the FCC Trust to meet its intended purpose under the FCC Trust Agreement and Prepackaged Plan.

19. The Reorganized Debtor is filing this Motion out of an abundance of caution to remove any doubt as to the continuing existence of the FCC Trust after March 17, 2012.  The FCC Trustees have informed the Reorganized Debtor that they support the relief requested in this Motion.  No other party will be harmed by the extension of the term of the FCC Trust Agreement and the continuation of the *status quo* will protect the jobs of the employees of the Broadcast Stations and preserve the continuity of service provided by the Broadcast Stations for the communities that they serve.

## **NOTICE**

20. Notice of this Motion has been given, by hand delivery or United States first class mail (postage prepaid), to the U.S. Trustee, the FCC Trustees, the FCC and all other parties that have requested notice as of the date of this Motion subsequent to the entry of the Final Decree.

21. The Reorganized Debtor submits that such notice constitutes good and sufficient notice of this Motion, and that no other or further notice is necessary or required.

[*The remainder of this page is intentionally left blank.*]

## **NO PREVIOUS REQUEST**

22. No previous request for the relief sought herein has been made by the Reorganized Debtor to this or any other court.

WHEREFORE, the Reorganized Debtor respectfully requests that this Court enter an order, substantially in the form of the proposed order attached to this Motion as **Exhibit A,** approving the extension of the term of the FCC Trust Agreement so that the term of the FCC Trust Agreement shall terminate on the earlier of (i) March 17, 2014, subject to the approval of this Court and any required consents and approvals from the FCC, and (ii) thirty (30) days after the final distribution of all proceeds of the sale, pursuant to all required consents and approvals of the FCC, of all assets held by the FCC Trust in accordance with the terms of the FCC Trust Agreement and the Prepackaged Plan, and granting such other relief as is just and proper.

Dated: February 17, 2012
      Wilmington, Delaware

                                        */s/ Chad A. Fights*
                                        Derek C. Abbott (Bar No. 3376)
                                        Chad A. Fights (Bar No. 5006)
                                        MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                        1201 North Market Street, 18th Floor
                                        P.O. Box 1347
                                        Wilmington, Delaware 19899-1347
                                        Telephone:  (302) 658-9200
                                        Facsimile:  (302) 658-3989

                                        -and-

                                        Kathryn A. Coleman
                                        HUGHES HUBBARD & REED LLP
                                        One Battery Park Plaza
                                        New York, NY 10004-1482
                                        Telephone:  (212) 837-6000
                                        Facsimile:  (212) 422-4726