# **EXHIBIT B**

## **FCC Trust Agreement**

Execution Copy

**AFFILIATED MEDIA, INC.**
**FCC TRUST AGREEMENT**

This Liquidating Trust Agreement ("***FCC Trust Agreement***"), dated as of March 17, 2010, among Affiliated Media, Inc. ("***AMI***" or the "***Debtor***") and each of the individuals signatory hereto as FCC Trustees (the **"*FCC Trustees*"**), provides for the establishment of a liquidating trust evidenced hereby (the "***FCC Trust***"). Except with respect to the terms defined herein, all capitalized terms contained herein shall have the meanings ascribed to them in the Plan (as defined below).

**Premises**

**1.** On January 22, 2010, the Debtor filed that certain Prepackaged Plan of Reorganization of Affiliated Media, Inc. and on March 3, 2010, filed the First Amended Prepackaged Plan of Reorganization of Affiliated Media, Inc. dated March 2, 2010 (the "***Plan***"), at Docket No. 147 in Case No. 10-10202 (KJC) in the Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***") and confirmed by the Bankruptcy Court on March 4, 2010 by its entry of the order confirming the Prepackaged Plan [Docket No. 155] (the "***Confirmation Order***"), pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***").

**2.** The Plan contemplates the establishment of the FCC Trust to have the FCC Trustees, as successors to and representatives of the Debtor's estate in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, hold certain assets associated with the radio broadcast stations **("*Radio Broadcast Stations*")** and television broadcast station **("*Television Broadcast Station*")** of Alaska Broadcasting Company, Inc. ("***Alaska Broadcasting***") and Graham Newspapers, Inc. ("***Graham Newspapers***"), Subsidiaries of AMI, described in Schedule 1.1 (collectively, the "***Broadcast Stations***"), such assets consisting of the FCC Broadcast Licenses (as defined in the Plan) and the FCC Broadcast License Related Assets (as defined in the Plan) and such additional assets related to the operation of the broadcast stations authorized by the FCC Broadcast Licenses as may from time to time be assigned and delivered to the FCC Trust pursuant to the terms of this FCC Trust Agreement (collectively, as described in Schedule 1.1 hereto, as may be revised from time to time consistent with the provisions of this FCC Trust Agreement, the "***FCC Trust Assets***") at such time as the Bankruptcy Court shall have granted all necessary authority for the establishment and operation of the FCC Trust as provided herein and for the assignment of the FCC Trust Assets **(**"***Bankruptcy Court Approval***"**)** and the Federal Communications Commission (the "***FCC***") shall have approved the short-form applications to the *pro forma* involuntary assignment of the FCC Broadcast Licenses from the Subsidiaries of AMI currently authorized to hold the FCC Broadcast Licenses to AMI (as debtor-in-possession) and then immediately to the FCC Trust at a single closing (the "***FCC Trust Approval***"), the date of the consummation of the assignment of the FCC Trust Assets to the FCC Trust being referred to hereafter as the "***Commencement Date***." The initial trustees of the FCC Trust comprise all of the members of the Board of Directors of AMI as of the date of the filing of the Plan.

**3.** The Plan provides that, upon receipt of the Bankruptcy Court Approval and the FCC Trust Approval, the FCC Trust will hold the FCC Trust Assets pending the sale or other

disposition of the FCC Trust Assets to a qualified holder thereof pursuant to all required prior approvals and consents of the FCC. The establishment of the FCC Trust is intended to preserve continuity of service to the communities of the Broadcast Stations and facilitate AMI's expeditious emergence from bankruptcy pending such disposition of the FCC Trust Assets and the distribution of the proceeds of such sale or sales. Consistent with the Plan, the FCC Trust Agreement provides for the issuance of interests in the FCC Trust (the "***FCC Trust Interests***") to AMI and/or such other beneficiary or beneficiaries set forth in Schedule 1.2 hereto (the "***Beneficiaries***"). The FCC Trust Interests represent one hundred percent (100%) of the continuing beneficial interests in the FCC Trust.

**4.** As provided by the Plan, concurrent with the assignment of the FCC Trust Assets to the FCC Trust, the FCC Trust shall enter into time brokerage agreements (the ***"Time Brokerage Agreements***") with Alaska Broadcasting and with Graham Newspapers with respect to each of the Broadcast Stations pursuant to which such Subsidiaries of AMI will provide the FCC Trust with certain programming and related services in connection with the operation of the Broadcast Stations, subject to the oversight and ultimate control of the FCC Trustees.

**5.** The FCC Trust is established for the purposes of holding and maintaining the FCC Trust Assets pending disposition of the FCC Trust Assets by public or private sale pursuant to all necessary approvals and consents of the FCC and distribution of the proceeds of such sale for the sole benefit of the Beneficiaries.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, AMI and the FCC Trustees agree as follows:

## ARTICLE I

## ESTABLISHMENT OF THE FCC TRUST

1.01 Assignment of Property to the FCC Trust. As contemplated by the Plan, the Debtor and the FCC Trustees hereby establish, on behalf of the Beneficiaries, the FCC Trust; and AMI hereby agrees, upon grant of Bankruptcy Court Approval and FCC Trust Approval, that AMI shall cause Alaska Broadcasting and Graham Newspapers to assign and deliver the FCC Trust Assets to AMI and AMI immediately thereafter shall deliver and assign to the FCC Trust, on behalf of the Beneficiaries, the FCC Trust Assets. The FCC Trustees agree to accept and hold the FCC Trust Assets in trust for the Beneficiaries, subject to the terms of the Plan and this FCC Trust Agreement.

1.02 Status of FCC Trust Assets. The assignment and delivery of the FCC Trust Assets to the FCC Trust shall be made for the sole benefit of the Beneficiaries as contemplated by the Plan and as provided herein.

1.03 Valid Issuance. Upon issuance and delivery to the FCC Trust as contemplated by the Plan, the FCC Trust Assets shall be free and clear of any Liens, except as provided in the Plan and as set forth herein.

1.04 Appointment of the FCC Trustees. The initial FCC Trustees shall be the individuals listed on Schedule 1.04 hereto. Each FCC Trustee hereby accepts his or her

appointment as an FCC Trustee and agrees to hold the FCC Trust Assets for the sole benefit of the Beneficiaries pursuant to the terms of this FCC Trust Agreement and the Plan, and the supervision and oversight of the Bankruptcy Court as provided in the Plan and in the Bankruptcy Court Order.

1.05 Name of FCC Trust. The FCC Trust established hereby shall be known as the "Affiliated Media, Inc. FCC Trust."

1.06 Actions of Trustees. The Trustees shall act by majority vote, with each Trustee having a single vote. The Trustees may act by formal meeting (including telephonic meeting) or by written consent. The Trustees shall maintain a written record of all actions of the Trustees. If fewer than three FCC Trustees are available to vote with respect to any matter, as a result of death, incapacity or any other reason, then no vote shall take place until all three FCC Trustees are available, unless the available FCC Trustee or Trustees reasonably determine(s) in good faith that waiting to vote with respect to such matter (and taking the related action) could have significant adverse consequences with respect to the administration of the FCC Trust or the trust property.

## ARTICLE II

## FCC TRUST INTERESTS

2.01 Identification and Certification of Holders of Beneficial Interests.

(a) All FCC Trust Interests and all LT Purchase Interests (as defined below) shall be uncertificated and shall be in book entry form. The initial holders of FCC Trust Interests shall be the Beneficiaries consistent with the Plan, and shall be recorded and set forth in a register maintained by the FCC Trustees expressly for such purpose. All references in this FCC Trust Agreement to holders of FCC Trust Interests shall be read to mean holders of record as set forth in the official register maintained by the FCC Trustees and shall not mean any beneficial owner not recorded on such official registry. Unless otherwise expressly provided herein, the FCC Trustees may establish a record date, which they deem practicable for determining the holders of FCC Trust Interests for a particular purpose.

(b) Upon the written request of any Person entitled to receive an FCC Trust Interest, the FCC Trustees shall issue to such Person instead a warrant to acquire an FCC Trust Interest (an **"*LT Purchase Interest*")**, such right to be assignable under the same terms as an FCC Trust Interest and to be exercisable by the holder thereof upon written request and payment of the reasonable administrative costs of the FCC Trustees associated with such conversion, except that such interest shall not be convertible at any time that conversion would result in a violation of the Federal Communications Laws (as defined below). The FCC Trustees may require that any party entitled to an FCC Trust Interest receive instead an LT Purchase Interest in exchange for an FCC Trust Interest (including that any such party upon notice surrender its FCC Trust Interest in exchange for an LT Purchase Interest) if the FCC Trustees conclude, in their sole discretion after consultation with counsel, that such action is necessary to avoid a violation of the Federal Communications Laws or to avoid delaying or impeding the obtaining of any required consent or approval of the FCC. As used herein, "***Federal Communications Laws***"

means any law of the United States now or hereafter in effect (and any regulation thereunder) pertaining to the ownership of, or the exercise of the rights of ownership with respect to, entities holding, directly or indirectly, FCC authorizations, including, without limitation, the Communications Act of 1934, as amended, and regulations thereunder.

(c)     Each FCC Trust Interest and each LT Purchase Interest shall represent rights to (or in the case of an LT Purchase Interest, a right to purchase) a percentage interest in and proportional right to receive the net proceeds of the sale of the FCC Trust Assets that are to be distributed to the Beneficiaries.  In the event LT Purchase Interests remain outstanding at the time set for final distribution of proceeds to holders of FCC Trust Interests, the percentage interest in the distribution represented by such unexercised LT Purchase Interests shall be distributed proportionately among the holders of FCC Trust Interests; provided that, before distribution of proceeds reserved in anticipation of the exercise of LT Purchase Interests by any holder of LT Purchase Interests entitled to purchase a five percent (5%) or greater interest, the FCC Trustees shall use their reasonable best efforts to obtain from such holder a written renunciation of any intention to exercise the LT Purchase Interest and shall postpone final distribution as necessary to obtain such confirmation.

(d)     If the FCC Trustees conclude that there is any reasonable possibility that all parties entitled to receive an FCC Trust Interest may request the issuance of LT Purchase Interests in lieu of FCC Trust Interests, the FCC Trustees, to ensure that the FCC Trust is not without designated beneficiaries, shall issue an FCC Trust Interest to a not-for-profit entity or fiduciary qualified to hold such FCC Trust Interest that shall agree to customary terms and conditions, including making applicable representations and warranties.

2.02   Transferability of FCC Trust Interests.

(a)     FCC Trust Interests shall be capable of being sold, transferred, assigned, pledged or hypothecated (collectively, "***Transferred***" and any of the foregoing, a "***Transfer***"), subject to compliance with applicable law.  No Transfer, even if otherwise permitted or required by this FCC Trust Agreement, shall be permitted or deemed effective, and any such Transfer shall be deemed null and void, if the FCC Trustees determine in their sole discretion that such transfer would violate applicable law or would impede, delay or frustrate the achievement of the objectives of the FCC Trust, including the grant of any authorization needed from the FCC.  The proposed transferee shall not be entitled to any rights as a holder of FCC Trust Interests with respect to the FCC Trust Interests that were the subject of such attempted Transfer in contravention of this Section 2.02.

(b)     If AMI or the FCC Trustees have reason to believe that the ownership of the FCC Trust Interests by any proposed transferee may be in violation of, or cause any violation of, any provision of the Federal Communications Laws, such proposed transferee, upon request of AMI or the FCC Trustees, shall furnish promptly to AMI or the FCC Trust such information on ownership as AMI or the FCC Trustees may reasonably request to respond to any inquiry from the FCC or to assess whether the ownership of FCC Trust Interests by a proposed transferee would be inconsistent with, or in violation of, the Federal Communications Laws.  If a proposed transferee does not furnish such information within ten (10) days to AMI or the FCC Trustees, or if ownership of FCC Trust Interests by a proposed transferee would be inconsistent with, or in

violation of, the Federal Communications Laws as determined by the FCC Trustees or AMI, then such proposed transferee of FCC Trust Interests shall receive, in lieu of FCC Trust Interests, an equivalent number of LT Purchase Interests and the Transferred FCC Trust Interests shall be canceled.

(c)     Any holder effecting a transfer of an FCC Trust Interest shall pay, or reimburse the FCC Trust for, all reasonable costs incurred by the FCC Trust in connection with the transfer of the FCC Trust Interest (including, without limitation, the actual, documented and reasonable legal fees and out of pocket expenses incurred in connection therewith) on or before the tenth (10th) day after the receipt by that Person of the FCC Trust's invoice for the amount due. If payment is not made by the date due, the proposed transferee owing that amount shall pay interest on the unpaid amount from the date due until paid at a rate equal to 1% per month, and the transfer shall not be effective until such amount shall have been paid.

(d)     The Beneficiaries and the holders of FCC Trust Interests shall have no legal title to any part of the FCC Trust Assets. Except as provided herein, no Beneficiary or holder of FCC Trust Interests shall have the right to request a partition or division of, or call for an accounting of, the FCC Trust Assets at any time.

## ARTICLE III

## PURPOSE, AUTHORITY, LIMITATIONS, AND DISTRIBUTIONS

3.01    Purpose of the FCC Trust.

(a)     The FCC Trust shall be established solely for the purpose of holding the FCC Trust Assets pending disposition of the FCC Trust Assets by public or private sale pursuant to all necessary approvals and consents of the FCC and distributing the proceeds of such sale for the sole benefit of the Beneficiaries pursuant to the provisions of the Plan and as provided herein.

(b)     The FCC Trustees, promptly after completion of the sale or series of sales constituting the final disposition of all of the FCC Trust Assets associated with Television Broadcast Station and/or the Radio Broadcast Stations, shall distribute the proceeds therefrom to the Beneficiaries consistent with this FCC Trust Agreement (and as contemplated by the provisions of the Plan), and shall not unreasonably prolong the duration of the FCC Trust. The proceeds of the sale of the FCC Trust Assets shall be distributed to the Beneficiaries in a single distribution or multiple distributions prior to the liquidation of the FCC Trust in accordance with Section 3.08.

(c)     The liquidation of the FCC Trust shall only be accomplished through the distribution of the proceeds of the sale or other disposition of the FCC Trust Assets to the Beneficiaries pursuant to this FCC Trust Agreement (and as contemplated by the provisions of the Plan) following a minimum of thirty (30) days' written notice to the holders of FCC Trust Interests and LT Purchase Interests. The FCC Trust shall not hold itself out as an investment company. In no event shall the FCC Broadcast Licenses or the FCC Broadcast License Related Assets revert to AMI or to its Subsidiaries.

3.02 Authority of FCC Trustees. In connection with the administration of the FCC Trust, except as set forth in this FCC Trust Agreement or the Plan and subject to the retained jurisdiction of the Bankruptcy Court as provided in the Plan, the FCC Trustees are authorized to perform any and all acts necessary or desirable to accomplish the purposes of the FCC Trust and the Plan. Without limiting, but subject to, the foregoing and to Section 3.04 hereof, the FCC Trustees shall be expressly authorized but shall not be required, to:

(a) accept and hold legal title to any and all rights of the Beneficiaries in or arising from the FCC Trust Assets, including but not limited to, collecting, receiving any and all money and other property belonging to the FCC Trust;

(b) perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code (with the benefit of periods of limitation applicable to a trustee in bankruptcy), including, without limitation, commencing, prosecuting or settling any cause of action, enforcing contracts, and asserting claims, defenses, offsets and privileges;

(c) open and maintain bank accounts on behalf of the FCC Trust;

(d) negotiate, conduct, or otherwise arrange for a public or private sale of the FCC Trust Assets, take such actions as may be necessary in cooperation with the prospective purchaser to obtain all necessary approvals and consents of the FCC for the consummation of such sales, and distribute the proceeds from the sale(s) or other disposition of the FCC Trust Assets solely as provided for in this FCC Trust Agreement;

(e) take possession and control, administer, maintain and dispose of documents, books and records related to the FCC Trust Assets;

(f) protect and enforce the rights to the FCC Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(g) determine and satisfy any and all liabilities created or incurred by the FCC Trust;

(h) file, if necessary, any and all tax and information returns with respect to the FCC Trust and pay taxes properly payable by the FCC Trust, if any;

(i) assert or waive any privilege or defense on behalf of the FCC Trust;

(j) pay all expenses and make all other payments relating to the FCC Trust Assets;

(k) retain and pay such law firms as counsel to the FCC Trust as the FCC Trustees may select and to perform such other functions as may be appropriate. The FCC Trustees may commit the FCC Trust to and shall pay such law firms reasonable compensation for services rendered and expenses incurred upon receipt of detailed invoices which invoices have been provided to and approved by AMI. A law firm shall not be disqualified from serving

as counsel to the FCC Trust solely because of its retention or prior retention by the Debtor, the Beneficiaries, the Debtor's lenders, the administrative agent for such lenders or any other party of interest in the Debtor's bankruptcy case;

(l)      retain and pay an independent accounting firm to perform such reviews and/or audits of the financial books and records of the FCC Trust as may be appropriate and to prepare and file any tax returns or informational returns for the FCC Trust as may be required. The FCC Trustees may commit the FCC Trust to and shall pay such independent accounting firm reasonable compensation for services rendered and expenses incurred upon receipt of detailed invoices which invoices have been provided to and approved by AMI.  An accounting firm shall not be disqualified from serving as an independent public accounting firm to the FCC Trust solely because of its retention or prior retention by the Debtor, the Beneficiaries, the Debtor's lenders, the administrative agent for such lenders or any other party of interest in the Debtor's bankruptcy case;

(m)      retain and pay such third parties as the FCC Trustees may deem necessary to comply with FCC requirements for carrying out their powers and duties under this FCC Trust Agreement, it being understood, and AMI agrees, that the FCC Trustees may commit AMI to pay all such Persons reasonable compensation for services rendered and expenses incurred upon receipt of detailed invoices which invoices have been provided to and approved by AMI;

(n)      perform obligations and enforce the rights of the FCC Trust under any contracts, leases, or other agreements included in the FCC Trust Assets and assigned to and assumed by the FCC Trust;

(o)      invest any moneys held as part of the FCC Trust in accordance with the terms of Section 4.07 hereof, limited, however, to such investments that are (i) United States bonds or securities guaranteed by the United States federal government or any agency or instrumentality thereof, commercial paper with a Moody's Investors Service rating of "A" or better at the time of purchase, interest bearing certificates of deposit or similar obligations of any of AMI's lenders or any financial institutions organized in the United States having capital of at least $200 million, in each case, with the maturities of such investments required to be consistent with the FCC Trust's obligations to make distributions as and when required by this FCC Trust Agreement and Plan ("***Permitted Investments***") and (ii) permitted by section 345 of the Bankruptcy Code or as otherwise approved by the Bankruptcy Court;

(p)      represent the FCC Trust before the Bankruptcy Court and any other courts of competent jurisdiction with respect to the FCC Trust Assets;

(q)      appear as a party in interest in an action or proceeding over which the Bankruptcy Court has retained jurisdiction pursuant to the Plan;

(r)      request any appropriate tax determination, including, without limitation, a determination pursuant to Section 505 of the Bankruptcy Code;

(s)      exercise such other powers as may be vested in the FCC Trustees by the FCC Trust Agreement, the Plan, or an order of the Bankruptcy Court;

(t)     execute any documents, instruments, contracts and agreements necessary and appropriate to carry out their powers and duties, including without limitation contracts and agreements for the sale of the FCC Trust Assets;

(u)     take or refrain from taking any and all actions the FCC Trustees reasonably deem necessary for the continuation, protection and maximization of the FCC Trust Assets or to carry out the purposes hereof;

(v)     take any and all necessary actions as they shall deem appropriate to have the FCC Trust classified as a pass-through entity for federal tax purposes, including, if necessary, creating or converting it into a Delaware limited liability partnership or limited liability company that is so qualified (subject to any required consent of the FCC);

(w)     exercise all control over the FCC Trust Assets, subject to the jurisdiction of the Bankruptcy Court, provided that, notwithstanding anything contained herein to the contrary, the FCC Trustees shall not be permitted to take any action prohibited by Section 3.04 hereof;

(x)     maintain the register of holders of FCC Trust Interests and LT Purchase Interests pursuant to Section 2.01 hereof;

(y)     procure customary insurance policies pursuant to Section 8.03 hereof;

(z)     take any and all reasonably necessary actions to cause the FCC Trust and the businesses conducted by the FCC Trust Assets to be in compliance with all applicable laws and regulations; and

(aa)    take any and all necessary actions to dissolve and liquidate the FCC Trust as contemplated by the Plan.

3.03     Certain Actions by the FCC Trustees.

(a)     The FCC Trustees shall be empowered to take and (subject to Sections 2.02 and 3.04 hereof and this Section 3.03) may take all appropriate action with respect to the FCC Trust Assets consistent with the purpose of the FCC Trust.

(b)     Unless otherwise set forth herein, the FCC Trustees are authorized to consummate any action without consent from the holders of FCC Trust Interests and shall be held harmless by the FCC Trust in taking such action in accordance with the terms of this FCC Trust Agreement.

(c)     The Trustees shall provide written notice to AMI (or Reorganized AMI) of its entry into negotiations with any proposed purchaser of any of the Stations and shall not enter into any binding agreement for the sale or other disposition of the FCC Trust Assets associated with any of the Stations until AMI (or Reorganized AMI), Alaska Broadcasting (in the case of the sale or other disposition of the FCC Trust Assets associated with the Television Broadcast Station) and Graham Newspapers (in the case of the sale or other disposition of the FCC Trust

Assets associated with the Radio Broadcast Stations) shall, in writing, have waived or exercised their rights under Section 3.05(d) hereof.

3.04 Limitation of FCC Trustees' Authority. Notwithstanding anything herein to the contrary the FCC Trustees shall not and shall not be authorized to,

(a) vary or make any investment with respect to the FCC Trust Assets or any proceeds therefrom (other than as provided in Section 4.07 below), and shall take such actions consistent with the orderly liquidation of the FCC Trust Assets as are required by applicable law, and such actions permitted under Sections 3.02, 3.03, 3.06, 3.07 and 4.06 hereof;

(b) engage in any activities inconsistent with the treatment of the FCC Trust (or any successor limited liability company or limited liability partnership) as exempt from the provisions of the Investment Company Act of 1940, as amended;

(c) pledge, hypothecate, sell or transfer any FCC Trust Assets other than in accordance with Section 3.05 below and except for the disposition of the proceeds of the sale of the FCC Trust Assets to the holders of FCC Trust Interests as contemplated by the Plan subject to all necessary prior approvals and consents of the FCC;

(d) authorize or make any distributions or dividends upon the FCC Trust Assets; or

(e) seek to have the FCC Trust Interests listed on a nationally recognized stock exchange or any other inter-dealer quotation system after the Commencement Date or take any steps designed to facilitate the development of a secondary market in the FCC Trust Interests.

3.05 Sale of Broadcast Stations. The FCC Trustees shall have the authority and are hereby directed to sell the FCC Trust Assets as follows:

(a) The FCC Trustees shall have the authority and are hereby directed to use commercially reasonable efforts to sell the FCC Trust Assets associated with the Broadcast Stations to one or more legally qualified third parties in a manner intended to preserve the continuity of the service provided by such Broadcast Stations to their respective authorized communities of license and to maximize the value received by the FCC Trust.

(b) AMI may request that the FCC Trustees sell or exchange one or more Broadcast Stations to one or more third parties. Within 48 hours of receipt of such a request from AMI, the FCC Trustee shall promptly initiate all actions necessary or appropriate to effectuate such sale or exchange, including by cooperating in the execution and delivery of any sale agreements and in the obtaining of all governmental approvals and consents and all approvals and consents of third parties necessary to consummate such sale. AMI may withdraw any such request prior to closing, subject to the independent concurrence of the FCC Trustees to such withdrawal. The FCC Trustees shall be indemnified in accordance with Section 8.01 of this FCC Trust Agreement for any damages incurred by the FCC Trustees as a result of such withdrawal.

(c)    The FCC Trustees shall have the authority and are directed to take all other actions necessary or appropriate to effectuate a sale of the FCC Trust Assets, including execution and delivery of all appropriate agreements, submission to the FCC and prosecution of appropriate applications for all required approvals and consents of the FCC for the assignment of the FCC Broadcast Licenses associated with the FCC Trust Assets to be sold and, if applicable, notification to the United States Department of Justice and Federal Trade Commission of a proposed sale.

(1)    Each Broadcast Station sale agreement shall provide for AMI and/or Alaska Broadcasting (in the case of the sale or other disposition of the FCC Trust Assets associated with the Television Broadcast Station) or Graham Newspapers (in the case of the sale or other disposition of the FCC Trust Assets associated with the Radio Broadcast Stations) to be a party in order for it to provide reasonable and customary representations, warranties, and covenants and other appropriate agreements, and shall provide for the FCC Trustees to be a party to approve and direct the sale.

(2)    Each Broadcast Station sale agreement shall provide for the concurrent sale, along with the FCC Trust Assets, of those assets of Alaska Broadcasting (in the case of the sale or other disposition of the FCC Trust Assets associated with the Television Broadcast Station) or Graham Newspapers (in the case of the sale or other disposition of the FCC Trust Assets associated with the Radio Broadcast Stations) designated by AMI as used primarily to render service to such Broadcast Station pursuant to the Time Brokerage Agreement with respect to such Broadcast Station.  Upon request of the FCC Trustees in connection with negotiation, execution, or delivery of any sale agreement, AMI promptly shall provide the FCC Trustees with a schedule of such assets with respect to any Broadcast Station and permit reasonable inspection and assessment of such assets by any prospective purchaser.  No FCC Trust Assets may be sold without the concurrent sale of such assets designated by AMI.  For the avoidance of doubt, nothing herein shall compel AMI (or any of its Subsidiaries) to sell such assets, and AMI (or any of its Subsidiaries) retains in its sole discretion the ability to sell or otherwise dispose of such assets.

(3)    The FCC Trustee shall provide quarterly reports to AMI (or more frequent reports as the Bankruptcy Court may require or as the Trustees shall deem appropriate) describing the FCC Trustee's efforts to sell the Stations.  Prior to the execution of a binding agreement for a sale of the FCC Trust Assets with respect to any Broadcast Station, the FCC Trustees shall notify and provide AMI, Alaska Broadcasting (in the case of the sale or other disposition of the FCC Trust Assets associated with the Television Broadcast Station) and Graham Newspapers (in the case of the sale or other disposition of the FCC Trust Assets associated with the Radio Broadcast Stations) with details of the proposed transaction.

(d)    AMI, Alaska Broadcasting (in the case of the sale or other disposition of the FCC Trust Assets associated with the Television Broadcast Station) and Graham Newspapers (in the case of the sale or other disposition of the FCC Trust Assets associated with the Radio Broadcast Stations) shall have the right

(1)    to establish a minimum purchase price for the sale of any of the Broadcast Stations;

(2) to require that the entire purchase price (or, in AMI's, Alaska Broadcasting's (in the case of the sale or other disposition of the FCC Trust Assets associated with the Television Broadcast Station) and Graham Newspapers' (in the case of the sale or other disposition of the FCC Trust Assets associated with the Radio Broadcast Stations) sole discretion, a percentage thereof) be paid in cash or immediately available federal funds at closing;

(3) to require that the purchaser assume all of the liabilities, obligations, and commitments relating to the purchased Broadcast Station or Broadcast Stations after closing;

(4) to require that each sale and exchange include other customary and reasonable terms and conditions; and

(5) to establish a date by which each closing must occur.

3.06 Books and Records. The FCC Trustees shall maintain in respect of the FCC Trust and the holders of FCC Trust Interests separate historical books and records for each Broadcast Station for the period commencing on the date hereof through the term of this FCC Trust Agreement relating to the FCC Trust Assets and income of the FCC Trust and the payment of expenses of, and liabilities of claims against or assumed by, the FCC Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof in accordance with Article VIII of this FCC Trust Agreement and to comply with applicable provisions of law. Such books and records shall be maintained on modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the FCC Trust. Holders of FCC Trust Interests shall have the right upon thirty (30) days prior written notice delivered to the FCC Trustees to inspect such historical books and records (including financial statements) and the register maintained pursuant to Section 2.01 hereof, provided that, if so requested, such holder shall have (i) entered into a confidentiality agreement satisfactory in form and substance to the FCC Trustees in their sole discretion; and (ii) agreed to bear the costs of the FCC Trust incurred in connection with such inspection.

3.07 Additional Powers. Except as otherwise set forth in this FCC Trust Agreement or in the Plan, and subject to the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the FCC Trustees may control and exercise authority over the FCC Trust Assets and over the protection and conservation thereof. No Person dealing with the FCC Trust shall be obligated to inquire into the authority of the FCC Trustees in connection with the protection or conservation of the FCC Trust Assets.

3.08 Distributions.

(a) If there are holders of LT Purchase Interests, then upon the completion of the sale of all of the FCC Trust Assets, the FCC Trust shall, and the FCC Trustees shall cause the FCC Trust to, (i) set a date for a single distribution of the proceeds of the sale of the FCC Trust Assets to the holders of FCC Trust Interests, (ii) provide written notice to the holders of LT Purchase Interests at least thirty (30) days prior to the date set for the distribution or such longer time as may be necessary to provide a reasonable opportunity for holders of LT Purchase

Interests to exercise them; and (iii) distribute the FCC Trust's net income plus all proceeds from the sale of the FCC Trust Assets to the holders of FCC Trust Interests.

(b) If there are no holders of LT Purchase Interests, then upon completion of the sale of all of the FCC Trust Assets associated with the Television Broadcast Station and/or any of the Radio Broadcast Stations, the FCC Trust shall, and the FCC Trustees shall cause the Trust to, distribute the net proceeds from the sale of such FCC Trust Assets to the holders of FCC Trust Interests as soon as reasonably practicable following the consummation of any such sale.

3.09 FCC Trust Expenses. On and after the confirmation of the Plan by the Bankruptcy Court, AMI shall from time to time promptly upon request from the FCC Trustees upon receipt of detailed invoices which invoices have been provided to and approved by AMI, reimburse the FCC Trust for all reasonable, documented and actual costs and expenses incurred by the FCC Trust and the FCC Trustees in accordance with this FCC Trust Agreement.

3.10 Reporting Duties. The FCC Trustees shall also cause to be filed any other statements, returns or disclosures relating to the FCC Trust that are required by any governmental authority.

3.11 Compliance with Laws.

(a) Any and all distributions of FCC Trust Assets and proceeds of borrowings, if any, shall be made in compliance in all material respects with all applicable laws, including, but not limited to, applicable federal and state securities laws.

(b) The FCC Trustees shall administer the FCC Trust and make any and all distributions in compliance in all material respects with all applicable laws, including, but not limited to, the filing and withholding requirements of applicable federal and state taxation laws.

## ARTICLE IV

## THE FCC TRUSTEES

4.01 Generally. The FCC Trustees' powers are exercisable solely in a fiduciary capacity, as applicable, consistent with, and in furtherance of, the purposes of this FCC Trust and not otherwise.

4.02 Responsibilities of FCC Trustees. Subject to the provisions of the Plan and this FCC Trust Agreement, including but not limited to Article VIII hereof, the FCC Trustees shall be responsible for the FCC Trust Assets, with duties and responsibilities similar to those of a board of directors of a Delaware corporation, subject in all cases to the limitations set forth in this FCC Trust Agreement. Any and all proceeds generated from such FCC Trust Assets shall be held or disbursed by the FCC Trust in accordance with this FCC Trust Agreement. The FCC Trustees may incur reasonable and necessary expenses in protecting and conserving the FCC Trust Assets and liquidating the FCC Trust.

4.03 Number of FCC Trustees; Classes; Directors of AMI. The number of FCC Trustees shall be three (3).

4.04 Liability of FCC Trustees. In no event shall any FCC Trustee be personally liable for any claim asserted against the FCC Trust except for actions or omissions that constitute fraud, willful misconduct, or gross negligence, each as finally determined by an order of a court of competent jurisdiction from which no appeal can be or is taken. Notwithstanding anything to the contrary set forth herein, no provision of this FCC Trust Agreement shall be construed to relieve an FCC Trustee from liability for his or her own grossly negligent actions, his or her own grossly negligent failure to act, or his or her own fraud or willful misconduct, each as finally determined by an order of a court of competent jurisdiction from which no appeal can be or is taken, except that an FCC Trustee shall not be liable for any error of judgment made in good faith, or with respect to any action taken or omitted to be taken in good faith, unless the FCC Trustee was grossly negligent as finally determined as described above.

4.05 Reliance by FCC Trustees.

(a) The FCC Trustees may rely upon, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.

(b) The FCC Trustees may consult with any and all professionals to be selected by them or the FCC Trust, and the FCC Trustees shall not be liable for any action taken or omitted to be taken by them in accordance with the advice of such professionals, unless the FCC Trustees were grossly negligent.

(c) The FCC Trustees may rely upon, and shall be protected in acting upon, any order of the Bankruptcy Court.

(d) Persons dealing with the FCC Trustees shall look only to the FCC Trust Assets to satisfy any liability incurred by the FCC Trustees to such Person in carrying out the terms of this FCC Trust Agreement, and the FCC Trustees shall have no personal obligation to satisfy any such liability, except as described in Section 4.04 above.

4.06 Investment and Safekeeping of FCC Trust Assets.

(a) All property received by the FCC Trustees shall, until sold in one or more public or private sale transactions with the proceeds of such sale distributed or paid over as herein provided, be held in trust for the benefit of the Beneficiaries.

(b) The FCC Trustees shall maintain and account for FCC Trust Assets relating to the television Broadcast Station separate from the radio Broadcast Stations, but need otherwise not segregate the FCC Trust Assets, unless and to the extent required by law.

(c) The FCC Trustees shall be under no liability for interest or producing income on any property received hereunder and held for distribution or payment to the holders of FCC Trust Interests, except as such interest shall actually be generated by, through, or from the

FCC Trust Assets and received by the FCC Trustees.  Any cash received by the FCC Trust may only be invested in Permitted Investments.

4.07    Expense Reimbursement and Compensation.  The FCC Trustees shall be entitled to receive reimbursement of reasonable, documented and actual out-of-pocket expenses, including reasonable, documented and actual fees and expenses of legal counsel and other advisers, in connection with their service hereunder.  Any successor to the FCC Trustees shall also be entitled to the reimbursement of such reasonable out-of-pocket expenses.  The FCC Trustees shall not be entitled to any other compensation.

4.08    No Bond.  The FCC Trustees shall serve without bond.

4.09    Confidentiality.  Each FCC Trustee shall, during the period that he or she serves as an FCC Trustee under this FCC Trust Agreement and for a period of twelve (12) months following the termination of this FCC Trust Agreement, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the FCC Trust Assets relates or of which he or she has become aware in his or her capacity as an FCC Trustee, except as otherwise required by law.  In connection with any sale or proposed sale of FCC Trust Assets, the FCC Trustees shall require prospective purchasers to execute customary confidentiality agreements.

## ARTICLE V

## SUCCESSOR FCC TRUSTEES

5.01    Removal.  An FCC Trustee may be removed only for cause (including without limitation a good faith belief that such FCC Trustee is unable to act prudently and effectively with respect to financial matters because of accident, physical or mental illness, substance abuse, deterioration, injury or other similar cause) and only by the affirmative, unanimous vote of all other FCC Trustees then in office (excluding the FCC Trustee being removed).  The removal of an FCC Trustee pursuant to this Section 5.01 shall become effective immediately. In the event that an FCC Trustee is removed pursuant to this Section 5.01, the removed FCC Trustee, pursuant to Section 4.08, shall be paid any unreimbursed, reasonable, documented and actual out of pocket expenses incurred through the effective date of the removal of the applicable FCC Trustee.

5.02    Resignation.  An FCC Trustee may resign by giving not less than thirty (30) days' prior written notice thereof to the other FCC Trustees. Such resignation shall become effective on the earlier to occur of (i) the day specified in such notice; and (ii) the appointment of a successor by the applicable FCC Trustees in accordance with Section 5.03 hereof and the acceptance by such successor of such appointment. The resignation of all of the FCC Trustees prior to the appointment of any of their successors shall not cause the FCC Trust to terminate or be dissolved.

5.03    Appointment of Successor upon Removal, Resignation, or Death.  If an FCC Trustee is removed pursuant to Section 5.01 hereof, resigns pursuant to Section 5.02 hereof or dies or otherwise ceases to act as an FCC Trustee for any reason, the remaining FCC Trustees

shall appoint a successor FCC Trustee by majority vote.  The FCC Trust shall notify AMI, the Beneficiaries and all holders of an FCC Trust Interest, in writing, of the successor FCC Trustee within five (5) business days of his or her appointment.

5.04    Acceptance of Appointment by Successor FCC Trustees.  Any successor FCC Trustees appointed hereunder shall execute an instrument accepting such appointment hereunder and shall file such acceptance with the FCC Trust records.  Thereupon, such successor FCC Trustee shall, without any further act, become vested with all the rights, powers and duties of their predecessors in the FCC Trust with like effect as if originally named herein.

5.05    Continuation of Provisions.  The indemnity, exculpation, release and insurance provisions set forth in Section 4.04 and Article VIII of this FCC Trust Agreement shall survive for the benefit of the FCC Trustees subsequent to any removal or resignation or other cessation of any of the FCC Trustees or the termination of the FCC Trust for any reason.  Any amendment of such provisions will be, unless otherwise required by law, prospective only (except to the extent such amendment provides for broader rights on a retroactive basis than permitted prior thereto) and will not in any way diminish or adversely affect any right or protection existing at the time of such amendment in respect of any act or omission occurring prior to such amendment.

5.06    FCC Approval.  No replacement of the FCC Trustees pursuant to this Article V shall occur until such time as FCC approval is obtained, to the extent that the remaining FCC Trustees determine in their sole discretion that such FCC approval is required.

## ARTICLE VI

## REPORTS TO BE FILED BY THE FCC TRUSTEES

6.01    Other Reports.  Not later than forty-five (45) days following (i) the last day of the third full calendar month following the Effective Date; and (ii) the last day of every third calendar month thereafter until the dissolution of the FCC Trust (each of (i) and (ii), a "***Reporting Period***"), the FCC Trustees shall provide a report (a "***Report***") to AMI that discloses, for the applicable Reporting Period: (a) expenses of the FCC Trustees that have been reimbursed hereunder; and (b) such other reports and information as are necessary or appropriate to ensure that the parties hereto are apprised of any natural development affecting the sale process, the business or regulatory status of the FCC Trust Assets or such parties' respective obligations under this Agreement.

## ARTICLE VII

## TERMINATION OF FCC TRUST

7.01    Termination of FCC Trust.  The FCC Trust will terminate on the earlier of (a) thirty (30) days after the final distribution of all proceeds of the sale(s), pursuant to all required consents and approvals of the FCC, of the FCC Trust Assets in accordance with the terms of this FCC Trust Agreement and the Plan; and (b) subject to the approval of the Bankruptcy Court and any required consents and approvals from the FCC, the second (2nd) anniversary of the Effective

Date; provided, however, that, on or prior to a date less than thirty (30) days prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the FCC Trust if it is necessary to the sale of the FCC Trust Assets and distribution of the proceeds thereof. Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained on a date within the period six (6) months prior to the expiration of each extended term. The FCC Trustees shall effect the distribution of the proceeds of the sale of the FCC Trust Assets to the holders of the FCC Trust Interests following consummation of the sale of the FCC Trust Assets as contemplated by the Plan, any required FCC consents or approvals, and the terms hereof and terminate the FCC Trust thirty (30) days thereafter.

## ARTICLE VIII

## INDEMNIFICATION

8.01 Indemnification.

(a) None of the FCC Trustees, or any of their respective agents, professionals or representatives shall be personally liable in connection with the affairs of the FCC Trust to any of the Beneficiaries, holders of the FCC Trust Interests, or the FCC Trust, or any other Person, except for such of the FCC Trustee's acts or omissions as shall constitute fraud, willful misconduct or gross negligence, each as finally determined by an order of a court of competent jurisdiction from which no appeal can be or is taken. Except in those situations in which the FCC Trustees are not entitled to indemnification as set forth herein, the FCC Trustees, including any former FCC Trustees, shall be defended, held harmless and indemnified from time to time by the FCC Trust and AMI, to the fullest extent permitted by applicable law, against any and all losses, claims, costs, expenses and liabilities (including reasonable legal fees and expenses), any costs of defending any action to which the FCC Trustees may be subject in connection with any other action, suit, proceeding or investigation brought or threatened against the FCC Trustees in such FCC Trustees' capacity as FCC Trustees or in any other capacity contemplated by the Plan or the FCC Trust Agreement or in any manner arising out of or related to the Plan, the FCC Trust Agreement or the affairs of the FCC Trust. The FCC Trust and AMI may indemnify, defend and hold harmless the agents of the FCC Trust to the same extent as is provided for in this Section 8.01 for the FCC Trustees. The FCC Trust shall pay the expenses of parties indemnified pursuant to this Section 8.01 as they are incurred, subject to the execution and delivery to the FCC Trust of an undertaking providing that the party indemnified hereunder undertakes to repay such expenses to the extent it is ultimately determined as provided hereunder that such party is not entitled to be indemnified by the FCC Trust hereunder. Any amendment of this Section 8.01 will be, unless otherwise required by law, prospective only (except to the extent such amendment provides for broader indemnification rights on a retroactive basis than permitted prior thereto) and will not in any way diminish or adversely affect any right or protection existing at the time of such amendment in respect of any act or omission occurring prior to such amendment. The provisions of this Section 8.01 shall survive the termination of the FCC Trust for any reason.

(b) If (i) any Person entitled to indemnification under this Agreement (an "***Indemnified Party***") asserts a claim for indemnification for, or receives notice of the assertion or commencement of any third party claim as to which such Indemnified Party intends to seek

indemnification under this Agreement(a "***Third Party Claim***"), and (ii) AMI (or Reorganized AMI) could be obligated under this Agreement to provide indemnification, such Indemnified Party shall give reasonably prompt written notice of such claim to AMI or Reorganized AMI (the "***Indemnifying Party***"), together with a statement of any available information regarding such claim, provided that the failure to notify or a delay in notifying the Indemnifying Party as provided in this sentence will not relieve the Indemnifying Party of its obligations pursuant to Section 8.01(a), except to the extent the Indemnifying Party is materially prejudiced by such failure or delay.  The Indemnifying Party shall have the right, upon written notice to the Indemnified Party (the "***Defense Notice***") within fifteen (15) days after receipt from the Indemnified Party of notice of such claim, to conduct at its expense the defense against such Third Party Claim in its own name, or if necessary in the name of the Indemnified Party; provided, however, that (i) the Indemnified Party shall be entitled to participate in the defense of such Third Party Claim and to employ counsel at the Indemnified Party's own expense to assist in the handling of such Third Party Claim and shall have the right, but not the obligation, to assert any and all cross-claims and counterclaims the Indemnified Party may have and (ii) the Indemnifying Party shall obtain the prior written approval of the Indemnified Party, which shall not be unreasonably withheld or delayed, before entering into any settlement of such Third Party Claim, if such settlement involves non-monetary relief or does not include as an unconditional term thereof the giving by each claimant or plaintiff to the Indemnified Party of a release from all liability in respect of such Third Party Claim.  The parties hereto agree to cooperate fully with each other in connection with the defense, negotiation or settlement of any Third Party Claim.  If the Indemnifying Party delivers a Defense Notice to the Indemnified Party, the Indemnified Party will cooperate with and make available to the Indemnifying Party such assistance and materials as may be reasonably requested by the Indemnifying Party, all at the expense of the Indemnifying Party.  In the event the Indemnifying Party does not elect to assume control of such Third Party Claim or the Indemnifying Party shall fail to defend, contest or otherwise protect against the imposition of any liabilities as to such Third Party Claim, the Indemnified Party shall have the right, but not the obligation, to defend, contest or assert any cross-claim or counterclaim or otherwise protect against such Third Party Claim and may make any compromise or settlement thereof and recover from and be indemnified by the Indemnifying Party for the entire reasonable cost thereof, including from legal expenses, disbursements and all amounts paid as a result of such matter, provided, however, that the Indemnified Party shall not compromise, settle, default on, or admit liability with respect to a Third Party Claim without the prior written consent of the Indemnifying Party, which consent shall not be unreasonably withheld or delayed.  The parties shall use their commercially reasonable efforts to collect the proceeds of any insurance that would have the effect of reducing any losses (in which case such proceeds shall reduce such losses.)  To the extent any losses of an Indemnified Party are reduced by receipt of payment under insurance policies or from third parties not affiliated with the Indemnified Party, such payments (net of the expenses of the recovery thereof) shall be credited against such losses and, if indemnification payments shall have been received prior to the collection of such proceeds, the Indemnified Party shall remit to the Indemnifying Party the amount of such proceeds (net of the cost of collection thereof) to the extent of indemnification payments received in respect of such losses.  The Indemnification obligations hereunder shall survive any termination of this FCC Trust Agreement.

    8.02    Exculpation.  The FCC Trustees, together with their respective agents, professionals, and or representatives, hereby are exculpated by all Persons, including all holders

of Claims against and Equity Interests in the Debtor, and parties in interest in the Debtor's chapter 11 case, and each of them, from any and all claims, causes of action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon the FCC Trustees by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, the FCC Trust Agreement, or applicable law, except for any claims, causes of action or any other liabilities arising out of or related to their acts or omissions that constitute fraud, gross negligence or willful misconduct, each as finally determined by an order of a court of competent jurisdiction from which no appeal can be or is taken. Any amendment of this Section 8.02 will be, unless otherwise required by law, prospective only (except to the extent such amendment provides for broader exculpation rights on a retroactive basis than permitted prior thereto) and will not in any way diminish or adversely affect any right or protection existing at the time of such amendment in respect of any act or omission occurring prior to such amendment.

8.03    Insurance. The FCC Trustees may purchase at the expense of the FCC Trust and carry customary insurance policies, including errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs and expenses they may incur arising out of or due to their actions or omissions, or consequences of such actions or omissions with respect to the implementation and administration of the Plan or this FCC Trust Agreement and pay reasonable and necessary insurance premiums and costs subject to the terms and conditions set forth in Schedule 8.03 attached hereto.

## ARTICLE IX

## AMENDMENT AND WAIVER

9.01    Amendment. This FCC Trust Agreement may only be amended or waived with the prior approval of (i) two-thirds of the FCC Trustees and (ii) the holders of at least 75% of the outstanding FCC Trust Interests and LT Purchase Interests voting together. Notwithstanding this Section 9.01, any amendments to this FCC Trust Agreement shall not be inconsistent with the purpose and intention of the FCC Trust to liquidate in an orderly manner the FCC Trust Assets in accordance with Section 3.01 hereof, or in the alternative and solely in the event that the FCC Trust has merged or converted into a Delaware limited liability company or limited liability partnership pursuant to the terms hereof, as allowed under Delaware law applicable to limited liability companies or limited liability partnerships.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.01   Intention of Parties to Establish FCC Trust. This FCC Trust Agreement is intended to create a liquidating trust for the disposition of the Trust Assets and shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith. This FCC Trust Agreement shall, and is intended to empower, the FCC Trustees to take such action as they shall deem appropriate to have the FCC Trust classified as a pass-through entity for federal tax purposes, including, if necessary, creating or converting it into a Delaware limited liability partnership or limited liability company that is so qualified.

10.02 FCC Matters. To the extent that the taking of any action or the exercise of any right under this FCC Trust Agreement would affect the operational, voting, or other control of any of the FCC Broadcast Licenses so as to require the prior approval or consent of the FCC to a transfer of control or assignment of any of the FCC Broadcast Licenses, (a) it shall be a condition precedent to the taking of any such action or the exercise of any such right that all necessary consent or approval of the FCC shall have been obtained and (b) the parties agree to cooperating, diligently and in good faith, to obtain any such required consent or approval of the FCC.

10.03 Preservation of Privilege and Defenses. In connection with any rights, claims, or causes of action that constitute the FCC Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the FCC Trust shall vest in the FCC Trustees and their representatives, and the Debtor, the Reorganized Debtor and the FCC Trustees are authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses.

10.04 Cooperation. The Debtor (or the Reorganized Debtor) shall (and shall cause Alaska Broadcasting and Graham Newspapers to) provide the FCC Trustees with access to such of their books and records as the FCC Trustees shall reasonably require for the purpose of performing their duties and exercising their powers hereunder.

10.05 Laws as to Construction. This FCC Trust Agreement shall be governed and, construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws. The actual administration of the FCC Trust may be conducted in such location, and the location of the FCC Trust Assets may be changed as the FCC Trustees may determine from time to time.

10.06 Severability. If any provision of this FCC Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this FCC Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this FCC Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

10.07 Notices. Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the Person for whom such notice is intended:

If to the Debtor (or to Reorganized Debtor):

Affiliated Media, Inc.
101 West Colfax Avenue, Suite 1100
Denver, CO 80802
Attention: Joseph J. Lodovic, IV
Facsimile: (303) 954-6320

If to the FCC Trustees:

Affiliated Media, Inc., FCC Trust
c/o Joseph J. Lodovic, IV, Trustee
101 West Colfax Avenue, Suite 1100
Denver, CO 80802
Attention: Joseph J. Lodovic, IV
Facsimile: (303) 954-6320

If to a holder of a FCC Trust Interest:

To the name and address set forth on the register maintained by the FCC Trustees.

10.08 Headings. The section headings contained in this FCC Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this FCC Trust Agreement or of any term or provision hereof.

10.09 Tax Identification Numbers. The FCC Trustees may require any of the holders of FCC Trust Interests to furnish to the FCC Trustees (i) an IRS Form W-9 containing its, his or her employer or taxpayer identification number ("***TIN***") as assigned by the Internal Revenue Service, or (ii) in the case of holders of FCC Trust Interests that are not United States persons for federal income tax purposes, certification of foreign status on IRS Form W-8BEN or W-8ECI, and the FCC Trustees may condition any distribution to any of holders of FCC Trust Interests upon receipt of such identification number or certification. If any of the holders of FCC Trust Interests shall fail to provide the FCC Trustees with any requested TIN or IRS Form within ninety (90) days after the request, such failure shall be deemed a waiver of all of such holders interests in the FCC Trust and rights to distribution hereunder or under the Plan. Proceeds that would have been distributed to said holders shall be distributed to the other holders based on their pro rata interests.

10.10 Relationship to the Plan. The principal purpose of this FCC Trust Agreement is to aid in the implementation of the Plan and the Bankruptcy Court Approval and therefore this FCC Trust Agreement incorporates the provisions of the Plan and the Bankruptcy Court Approval. To that end, the FCC Trustees shall have full power and authority to seek any additional orders from the Bankruptcy Court in furtherance of implementation of the Plan and this FCC Trust Agreement. Notwithstanding the foregoing, in the event that any provision of this FCC Trust Agreement is found to be inconsistent with a provision of the Plan, the provision of the Plan shall control.

10.11 Counterparts, Execution and Delivery by Facsimile. For the purposes of facilitating the execution of this FCC Trust Agreement, as herein provided and for other purposes, this FCC Trust Agreement may be executed in counterparts, each of which counterpart shall be deemed to be an original, and all such counterparts shall constitute but one and the same instrument. Any original counterpart when executed and transmitted by electronic facsimile shall be deemed duly delivered to the other party upon confirmed receipt thereof by such other party.

10.12 Bankruptcy Court Jurisdiction. **THE PARTIES HERETO AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER**

**ALL DISPUTES AND OTHER MATTERS RELATING TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS FCC TRUST AGREEMENT AND/OR (ii) THE FCC TRUST AND EXPRESSLY CONSENT TO AND AGREE NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION.**

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this FCC Trust Agreement, or caused it to be executed and acknowledged on behalf of each by their duly authorized officers, all as of the date first above written.

**Affiliated Media, Inc.** (as Debtor)

By: [signature]

Name: Joseph J. Lodovic, IV

Title: President

[signature], as FCC Trustee
**William Dean Singleton**

[signature], as FCC Trustee
**Joseph J. Lodovic, IV**

_________________________, **as FCC Trustee**
**Howell E. Begle, Jr.**

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this FCC Trust Agreement, or caused it to be executed and acknowledged on behalf of each by their duly authorized officers, all as of the date first above written.

**Affiliated Media, Inc.** (as Debtor)

**By:**____________________________

**Name:** Joseph J. Lodovic, IV

**Title:** President

____________________, **as FCC Trustee**
**William Dean Singleton**

____________________, **as FCC Trustee**
**Joseph J. Lodovic, IV**

[signature], **as FCC Trustee**
**Howell E. Begle, Jr.**

**Schedule 1.01**
**FCC Trust Assets**


1.      FCC Licenses

    a.      Alaska Broadcasting Company, Inc.

        i.      Television Station KTVA, Anchorage, Alaska (FIN 49632)

            a)      TV Pickup Station KC26375

            b)      Broadcast Auxiliary Remote Pickup Station KPF869

            c)      TV Intercity Relay Station WHY684

            d)      TV Intercity Relay Station WPOQ877

            e)      TV Intercity Relay Station WPOQ878

            f)      Broadcast Auxiliary Remote Pickup Station WZZ770

            g)      Microwave Industrial/Business Pool Station WPOS651

            h)      Earth Station E060015

            i)      Earth Station E060291

        ii.     Television Translator Station K08IZ , BP Alaska Camp, Etc., Alaska (FIN 49630)

        iii.    K08LW , Kenai/Soldotna, AK (FIN 49641)

        iv.     K11VP, Homer-Seldovia, AK (FIN 130473)

        v.      K66CF, Palmer, AK (FIN 49625)

    b.      Graham Newspapers, Inc.

        i.      Radio Station KLXK(FM), Breckenridge, Texas (FIN 7702)

            a)      Broadcast Auxiliary Remote Pickup Station KA88721

            b)      Aural Studio Transmitter Link Station KA88721

            c)      Aural Studio Transmitter Link Station WPYD879

        ii.     Radio Station KROO(AM), Breckenridge, Texas (FIN 7703)

        a)        Broadcast Auxiliary Remote Pickup Station KA88720

iii.     Radio Station KSWA(AM), Graham, Texas (FIN 35644)

        a)        Broadcast Auxiliary Remote Pickup Station KC62908

        b)        Broadcast Auxiliary Remote Pickup Station KD4703

        c)        Broadcast Auxiliary Remote Pickup Station WQA947

iv.     Radio Station KWKQ(FM), Graham, Texas (FIN 35643)

        a)        Aural Studio Transmitter Link Station WPOT228

        b)        Broadcast Auxiliary Remote Pickup Station WPTA716

        c)        Broadcast Auxiliary Remote Pickup Station WPTA717

        d)        Aural Studio Transmitter Link Station WPWH506

2.    <u>FCC Broadcast License Related Assets</u>

The transmitter, antenna and transmission line for each of KTVA, KLKX(FM), KROO(AM), KSWA(AM) and KWKQ(FM).

**Schedule 1.02**
**Beneficiaries and Holders of LP Purchase Interests**

Affiliated Media, Inc. is the sole beneficiary of the FCC Trust.

**Schedule 1.04**
**<u>FCC Trustees</u>**


William Dean Singleton

Joseph J. Lodovic, IV

Howell E. Begel, Jr.

**Schedule 8.03**
**Insurance**

Insurance purchased by the FCC Trustees pursuant to Section 8.03 is described on the attachment hereto. Reimbursement for the purchase of insurance pursuant to Section 8.03 that is not described on the attachment hereto shall be subject to the approval of AMI.

[NONE]